IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATED OF AMERICA *ex rel.*, | § | |
| TIFFANY MONTCRIEFF, *et al.*, | § | |
| | § | |
| Relators, Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 5:17-CV-00317-XR |
| | § | |
| PERIPHERAL VASCULAR | § | |
| ASSOCIATES, P.A., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S ANSWER TO PLAINTIFFS' FIRST AMENDED
COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR
<u>VIOLATIONS OF THE FALSE CLAIMS ACT</u>**

COMES NOW Defendant Peripheral Vascular Associates, P.A. ("PVA" or "Defendant"), and submits its Answer to Plaintiffs' First Amended Complaint for Money Damages and Civil Penalties for Violations of the False Claims Act ("Amended Complaint"), as well as its affirmative defenses thereto. PVA denies all factual allegations not specifically admitted below.

**I.  INTRODUCTION[1]**

1. Paragraph 1 comprises legal conclusions that require no response. Out of an abundance of caution, PVA denies any allegations in Paragraph 1.

2. Paragraph 2 appears to state Plaintiffs' general theory of the case and thus requires no response. Out of an abundance of caution, PVA denies all allegations in Paragraph 2. PVA specifically denies any allegation that any of its billing practices are fraudulent.

---

[1]  For clarity, PVA's answer includes the headings that Plaintiffs used in their Amended Complaint, but PVA does not admit that the headings themselves are accurate as matters of fact or law, and out of an abundance of caution PVA denies any allegations that might be included in the headings.

1

3.  Paragraph 3 appears to state Plaintiffs' general theory of the case and thus requires no response. Out of an abundance of caution, PVA denies all allegations in Paragraph 3. PVA specifically denies any allegation that any it knowingly orders unnecessary diagnostic tests.

## II. JURISDICTION AND VENUE

4.  Based on its current understanding of Plaintiffs' claims, and the arguments set forth in PVA's Motion to Dismiss and Motion for Reconsideration that Plaintiffs have failed to state a valid claim, PVA denies that this Court has subject matter jurisdiction over Plaintiffs' claims. PVA denies any remaining allegations in Paragraph 4.

5.  PVA admits that venue is proper to the extent this Court has jurisdiction over Plaintiffs' claims.

## III. PARTIES

6.  PVA admits that several claims in this *qui tam* action are prosecuted by Tiffany Montcrieff, Roberta Martinez, and Alicia Burnett on behalf of the United States of America, which has declined to intervene as a party.

7.  PVA admits that Ms. Montcrieff worked at PVA for part of 2016. PVA lacks sufficient knowledge to confirm or deny the remaining allegations in Paragraph 7 and, out of an abundance of caution, denies those allegations.

8.  PVA admits that Ms. Martinez worked at PVA from early 2015 to late 2016. PVA denies that Ms. Martinez was wrongfully terminated and further denies that she alerted PVA to any of the allegations underlying her current claims. PVA lacks sufficient knowledge to confirm or deny the remaining allegations in Paragraph 8 and, out of an abundance of caution, denies those allegations.

9.  PVA admits that Ms. Burnett worked at PVA from early 2016 to late 2017. PVA lacks sufficient knowledge to confirm or deny the remaining allegations in Paragraph 7 and, out of an abundance of caution, denies those allegations.

10. PVA admits that it is incorporated and does business at several locations in Texas. PVA admits that it offers diagnostic and treatment services for vascular disease, which include providing ultrasound imaging in appropriate cases. PVA admits that it does business with hospitals in Texas. PVA is without sufficient knowledge to admit or deny the accuracy of Plaintiffs' unsupported definition of "peripheral vascular disease" offered in Footnote 1. PVA denies any remaining allegations in Paragraph 10.

## IV. OVERVIEW OF THE SCHEME

### A. THE UNITED STATES MEDICARE SYSTEM

11. PVA states that Paragraph 11 comprises legal conclusions about the scope and mechanics of the Medicare program that require no response. Out of an abundance of caution, PVA denies any allegations in Paragraph 11.

12. PVA states that Paragraph 12 comprises legal conclusions that require no response. Out of an abundance of caution, PVA denies any allegations in Paragraph 12.

13. PVA states that Paragraph 13 contains general claims about the mechanics of the Medicare program. PVA admits that the United States sometimes reimburses Medicare claims and that it contracts with carriers to carry out this process. Out of an abundance of caution, PVA denies any remaining allegations in Paragraph 13.

14. PVA states that Paragraph 14 contains general claims about the mechanics of the Medicare program. PVA admits that some Medicare payments are made directly to providers, and that some of PVA's Medicare claims are submitted directly to Medicare. Out of an abundance of caution, PVA denies any remaining allegations in Paragraph 14.

15. PVA states that Paragraph 15 contains general claims about the mechanics of the Medicare program. PVA admits that some Medicare claims are submitted using form CMS-1500. Out of an abundance of caution, PVA denies any remaining allegations in Paragraph 15.

16. PVA states that CMA-1500 is a document that speaks for itself. PVA denies any remaining allegations in Paragraph 16.

17. PVA states that Paragraph 17 comprises legal conclusions that require no response. PVA admits that it must comply with applicable statutes and applicable regulations to participate in Medicare. PVA denies any remaining allegations in Paragraph 17.

18. PVA states that Paragraph 18 comprises legal conclusions interpreting the cited statutes and regulation. PVA denies that the allegations contain a complete statement of the applicable law and denies any remaining allegations in Paragraph 18.

19. PVA states that Paragraph 19 contains general claims about the mechanics of the Medicare program that PVA lacks sufficient knowledge to admit or deny. Out of an abundance of caution, PVA denies all allegations in Paragraph 19.

### B. ULTRASOUND IMAGING

20. PVA states that Paragraph 20 comprises an unsupported description of ultrasound imaging. PVA admits that ultrasound imaging is non-invasive and can be used to diagnose a number of diseases and other physical conditions relating to blood flow. Out of an abundance of caution, PVA denies any remaining allegations in Paragraph 20.

21. PVA states that Paragraph 21 comprises legal conclusions about the scope and mechanics of the Medicare program that require no response. Out of an abundance of caution, PVA denies all allegations in Paragraph 21.

22. PVA states that Paragraph 22 contains legal conclusions about the scope and mechanics of the Medicare program that require no response. PVA states that Paragraph 22 also contains general claims about the mechanics of the Medicare program that PVA lacks knowledge to admit or deny. PVA admits that some of its imaging services are billed through Medicare, that such bills are often processed through a coding system common to the industry, and that billing and payment of such

claims are subject to applicable laws and regulations. Out of an abundance of caution, PVA denies any remaining allegations in Paragraph 22.

23. PVA states that Paragraph 23 comprises general claims about the mechanics of the Medicare program that PVA lacks knowledge to admit or deny. PVA admits that its imaging services include both technical and professional services that may be billed separately. Out of an abundance of caution, PVA denies any remaining allegations in Paragraph 23.

24. PVA admits that its bills for services sometimes include codes that are appropriate to specific aspects of the services provided. Out of an abundance of caution, PVA denies any remaining allegations in Paragraph 24.

25. PVA states that Paragraph 25 comprises legal conclusions about the scope and mechanics of the Medicare program, but PVA denies that it is a complete statement of the applicable regulations. Out of an abundance of caution, PVA denies any allegations in Paragraph 25.

    **C.    PVA'S ILLICIT BILLING PRACTICES**

26. PVA denies all allegations contained in Paragraph 26.

27. PVA admits that it employs a number of sonographers that generate several thousand ultrasound studies in an average month, but lacks sufficient information to admit to specific numbers. PVA admits that some of its patients receive Medicare benefits. PVA denies all other allegations contained in Paragraph 27.

28. PVA states that Paragraph 28 comprises vague claims about the an "appropriate process" that PVA lacks sufficient knowledge to admit or deny. PVA admits that ultrasound patients receiving Medicare benefits are referred to PVA from their primary care physicians, that such patients then see a PVA doctor who may order diagnostic tests such as ultrasound imaging, that sonographers may perform ordered ultrasound tests and compile results, and that doctors interpret the results of the tests prepared by the sonographers. PVA admits that it has a workflow and data

management system called MedStreaming that uses a variety of status levels. PVA denies any remaining allegations in Paragraph 28.

29. PVA lacks knowledge to admit or deny Relators' personal experience and therefore denies those allegations. PVA denies all allegations in Paragraph 29.

30. PVA lacks knowledge to admit or deny Relators' personal experience and therefore denies those allegations. PVA denies all allegations in Paragraph 30.

31. PVA denies that it has engaged in any regular or knowing submission of charges to Medicare for services before they were complete. PVA specifically denies any allegation or implication that it has engaged in a scheme to submit such charges. PVA denies any remaining allegations in Paragraph 31.

32. PVA denies that it has engaged in any regular or knowing submission of charges to Medicare for services that were incomplete due to technical failures. PVA specifically denies any allegation or implication that it has engaged in a scheme to submit such charges. PVA lacks knowledge to admit or deny Relators' personal experience and therefore denies those allegations. PVA denies any remaining allegations in Paragraph 32.

33. PVA denies that it has any practice if ordering unnecessary ultrasounds and denies any remaining allegations in Paragraph 33.

34. PVA lacks knowledge to admit or deny Ms. Montcrieff's personal experience and therefore denies the allegations contained in Paragraph 34. PVA specifically denies any allegation or implication that it regularly or knowingly files orders on behalf of sonographers who did not participate in a sonogram.

35. PVA admits that it bills for ultrasound services at certain rates and that the reimbursement for such services vary. PVA is without sufficient information to admit or deny the remaining allegations in Paragraph 35 and therefore denies the allegations in Paragraph 35.

36. PVA denies all allegations in Paragraph 36.

37. PVA is without sufficient information to admit or deny the allegations in Paragraph 37, and therefore denies the allegations in Paragraph 37.

38. PVA denies all allegations contained in Paragraph 38.

**V.   EVIDENCE OF THE SCHEME**

39. Paragraph 39, including the information listed in the associated table, appears to be based on records or other documents. At this time, PVA lacks sufficient knowledge to admit or deny the contents or accuracy of those documents, and therefore denies all allegations in Paragraph 39.

40. Paragraph 40, including the information listed in the associated table, appears to be based on records or other documents. At this time, PVA lacks sufficient knowledge to admit or deny the contents or accuracy of those documents and also lacks sufficient knowledge to admit or deny whether Ms. Martinez performed any of the studies identified in the table. PVA therefore denies all allegations in Paragraph 40.

41. PVA lacks sufficient knowledge to admit or deny the allegations regarding relators' observations in Paragraph 41, and therefore denies the allegations in Paragraph 41. PVA specifically denies that any alleged irregularities in documents or in its daily practice are part of any fraudulent scheme.

**VI.   ALICIA BURNETT'S WRONGFUL TERMINATION**

42. PVA admits that Ms. Burnett requested and was approved for family leave in July 2017.

43. PVA lacks sufficient knowledge to admit or deny any details of Ms. Burnett's relationship to her family members. Out of an abundance of caution, PVA denies the allegations in Paragraph 43.

44. PVA admits that Ms. Burnett was separated from employment with PVA as part of a reduction in staff related to an office closure and relocation of some staff to another office in

San Antonio. PVA is without sufficient knowledge to admit or deny the remaining allegations in Paragraph 44 and therefore denies the remaining allegations in Paragraph 44..

45. PVA admits that it retained some employees after the location. PVA is without sufficient knowledge to admit or deny the remaining allegations in Paragraph 45, and therefore denies the remaining allegations in Paragraph 45.

46. PVA denies the allegations in Paragraph 46.

**VII. ROBERTA MARTINEZ'S WRONGFUL TERMINATION**

47. PVA denies the allegations in Paragraph 47.

48. PVA lacks sufficient information to admit or deny whether Ms. Martinez notified her supervisor in September 2015 about any concerns regarding Ms. Martinez's workload, employee productivity, or any other policies relating to recordkeeping or billing, and also lacks sufficient information to admit or deny the details of any response by Ms. Martinez's supervisor. PVA specifically denies that any reports by Ms. Martinez were understood by PVA to relate to any submission of improper bills to Medicare, and further denies that any of its policies relating to sonographer productivity are or were related to any scheme to submit improper bills to Medicare. PVA therefore denies all allegations in Paragraph 48.

49. PVA lacks sufficient information to admit or deny whether Ms. Martinez notified her supervisor in January 2016 about any concerns regarding Ms. Martinez's workload or any other policies relating to employee productivity. PVA lacks sufficient information to admit or deny whether Ms. Martinez notified her supervisor in the summer of 2016 about any concerns regarding employee turnover or productivity policies. PVA specifically denies that any reports by Ms. Martinez were understood by PVA to relate to any submission of improper bills to Medicare, and further denies that any of its policies relating to sonographer productivity are or were related

to any scheme to submit improper bills to Medicare. PVA therefore denies all allegations in Paragraph 49.

50. PVA states that Paragraph 50 contains vague allegations of "regular[] complain[ts]" that PVA lacks sufficient information to admit or deny. PVA specifically denies that any complaints made by Ms. Martinez were understood by PVA to relate to any submission of improper bills to Medicare, and further denies that any of its policies relating to sonographer productivity are or were related to any scheme to submit improper bills to Medicare. PVA denies any remaining allegations in Paragraph 50.

51. PVA admits that Ms. Martinez was separated from her employment with PVA in September 2016. PVA denies that her separation was related to any of her alleged reports about PVA's policies, and further denies that PVA engaged in any scheme to submit improper bills to Medicare. PVA denies any remaining allegations in Paragraph 51.

## VIII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**On Behalf of the United States**

**Federal False Claims Act, Presenting False Claims**

**31 U.S.C. § 3729(a)(1)(A)**

52. PVA incorporates by reference all of its admissions and denials above.

53. PVA denies the allegations in Paragraph 53.

54. PVA denies the allegations in Paragraph 54.

55. PVA denies the allegations in Paragraph 55.

## SECOND CAUSE OF ACTION

### On Behalf of the United States

### Federal False Claims Act, Making or Using False Records or Statements

### Material to Payment or Approval of False Claims

### 31 U.S.C. § 3729(a)(1)(B)

56. PVA incorporates by reference all of its admissions and denials above.

57. PVA denies the allegations in Paragraph 57.

58. PVA denies the allegations in Paragraph 58.

59. PVA denies the allegations in Paragraph 59.

## THIRD CAUSE OF ACTION

### (In the Alternative)

### On Behalf of the United States

### Federal False Claims Act, Retention of Proceeds to Which Not Entitled

### 31 U.S.C. § 3729(a)(1)(G)

60. PVA incorporates by reference all of its admissions and denials above.

61. PVA denies the allegations in Paragraph 61.

62. PVA denies the allegations in Paragraph 62.

63. PVA denies the allegations in Paragraph 63.

## FOURTH CAUSE OF ACTION

### On Behalf of Alicia Burnett

### Federal Family and Medical Leave Act (FMLA), Intereference with FMLA Rights

### 29 U.S.C. § 2615(a)(1)

64. PVA incorporates by reference all of its admissions and denials above. PVA notes that the Court has dismissed this cause of action.

65. PVA is without sufficient knowledge to confirm or deny any details of Ms. Burnett's relationships with her family members. Out of an abundance of caution, PVA denies the allegations in Paragraph 65. PVA further notes that the Court has dismissed this cause of action.

66. PVA denies the allegations in Paragraph 66 and notes that the Court has dismissed this cause of action.

67. PVA denies the allegations in Paragraph 67 and notes that the Court has dismissed this cause of action.

68. PVA denies the allegations in Paragraph 68 and notes that the Court has dismissed this cause of action.

## FIFTH CAUSE OF ACTION

### On Behalf of Alicia Burnett

### FMLA RETALIATION

### 29 U.S.C. § 2615(a)(2)

69. PVA incorporates by reference all of its admissions and denials above.

70. PVA admits that requesting FMLA leave is a protected activity.

71. PVA admits that termination can qualify as a materially adverse action but denies that Ms. Burnett's separation from employment was related in any way to Ms. Burnett's request for FMLA leave.

72. PVA denies the allegations in Paragraph 72.

## SIXTH CAUSE OF ACTION

### On Behalf of Roberta Martinez

### WRONGFUL RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT

### 31 U.S.C. § 3730(h)

73. PVA incorporates by reference all of its admissions and denials above.

74. PVA admits that it bills medical services to the federal government and that it is subject to applicable state and federal laws. PVA denies any remaining allegations in Paragraph 74.

75. PVA denies the allegations in Paragraph 75.

76. PVA denies that Ms. Martinez is entitled to any relief and denies any remaining allegations in Paragraph 76.

## SEVENTH CAUSE OF ACTION

### On Behalf of Roberta Martinez

### RETALIATION

### Texas Human Resources Code § 36.115

77. PVA incorporates by reference all of its admissions and denials above.

78. PVA denies the allegations in Paragraph 78. PVA specifically denies that it engaged in any fraudulent scheme and further denies that Ms. Martinez alerted anyone at PVA that she believed PVA was engaging in any such scheme.

79. PVA admits that Ms. Martinez was separated from her employment at PVA and denies all remaining allegations in Paragraph 79.

80. PVA denies the allegations in Paragraph 80.

81. PVA denies that Ms. Martinez is entitled to any relief and denies any remaining allegations in Paragraph 80.

## EIGHTH CAUSE OF ACTION

### On Behalf of Roberta Martinez

### WRONGFUL RETALIATION IN VIOLATION OF PUBLIC POLICY

82. PVA incorporates by reference all of its admissions and denials above. PVA notes that the Court has dismissed this cause of action.

83. PVA denies the allegations in Paragraph 83 and notes that the Court has dismissed this cause of action.

84. PVA denies the allegations in Paragraph 83 and notes that the Court has dismissed this cause of action.

85. PVA denies the allegations in Paragraph 83 and notes that the Court has dismissed this cause of action.

## IX. **PRAYER FOR RELIEF**

1. PVA denies that the United States is entitled to judgment on the First, Second, or Third Causes of Action and denies that it is entitled to any relief therefor.

2. PVA denies that relators are entitled to any relief on the First, Second, or Third Causes of Action.

3. PVA denies that Ms. Burnett is entitled to judgment on her Fourth or Fifth Causes of Action or to any relief therefor, and notes that Ms. Burnett's Fourth Cause of Action has been dismissed by the Court.

4. PVA denies that Ms. Martinez is entitled to judgment on her Sixth Cause of Action or to any relief therefor.

5. PVA denies that Ms. Martinez is entitled to judgment on her Seventh Cause of Action or to any relief therefor.

6. PVA denies that Ms. Martinez is entitled to judgment on her Eighth Cause of Action or to any relief therefor, and notes that Ms. Martinez's Eighth Cause of Action has been dismissed by the Court.

7. PVA denies that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

COMES NOW the Defendant, Peripheral Vascular Associates, by counsel, and for its Affirmative Defenses to Plaintiffs' Complaint, states and alleges as follows:

1. Plaintiffs' Amended Complaint fails to state a claim on which relief can be granted.

2. Plaintiffs' claims brought under the False Claims Act are barred by that statute's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A).

3. Relators are not original sources of the information underlying their claims as that term is defined in the False Claims Act, 31 U.S.C. § 3730(e)(4)(B).

4. Plaintiffs' claims under the False Claims Act are barred, in whole or in part, because the regulations on which they rely are unconstitutionally vague as applied to Defendants to the extent the regulations require specific billing practices.

5. Plaintiffs' Fifth Cause Of Action is barred because Ms. Burnett would have been separated from her employment with PVA regardless of any requests for FMLA leave she made.

6. Plaintiffs' Sixth and Seventh Causes of Action are barred because Ms. Martinez would have been separated from her employment regardless of any reports she may have made regarding productivity or billing practices.

7. Plaintiffs' Seventh Cause of Action fails because Plaintiffs have made no allegations related to the Texas Medicaid program.

8. Plaintiffs' claims are barred, in whole or in part, by release, waiver, and/or estoppel.

9. Defendant PVA hereby reserves the right to supplement and amend its statement of Affirmative Defenses, as discovery in this matter is ongoing.

WHEREFORE, Defendant respectfully prays that this Court enter judgment in its favor and against Plaintiffs; order that Plaintiffs take nothing; award Defendant its costs arising from this lawsuit, and order any and all other relief that is just and proper.

Respectfully submitted,

By: /s/ *Sean McKenna*
    Sean McKenna
    State Bar No. 24007652
    sean@seanmckennalaw.com
Law Office of Sean McKenna, PLLC
8710 Greenville Avenue, Suite B
Dallas, Texas 75240
Telephone: 786-973-3762
Facsimile: 1-888-492-2847

    Stephen J. Romero
    State Bar No. 24046756
    stephen.romero@nortonrosefulbright.com
Norton Rose Fulbright US LLP
300 Convent Street, Suite 2100
San Antonio, Texas 78205-3792
Telephone: 210-224-5575
Facsimile: 210-270-7205

Counsel for Defendant
Peripheral Vascular Associates, P.A.

# CERTIFICATE OF SERVICE

   I hereby certify that on this 23rd day of May, 2019, I electronically caused the foregoing instrument to be filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Justin T. Berger
Adam M. Shapiro
Cotchett Pitre & McCarthy, LLP
840 Malcolm Road
Burlingame, CA 94010

Wallace M. Brylak, Jr.
Brylak & Associates
15900 La Cantera Pkwy, Suite 19245
San Antonio, TX 78256

AUSA Thomas A. Parnham, Jr.
United States Attorney's Office for the Western District of Texas
816 Congress Avenue, Suite 1000
Austin, Texas 78701
Thomas.Parnham@usdoj.gov

               */s/ Sean McKenna*
                Sean McKenna