# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., TIFFANY MONTCRIEFF, ROBERTA MARTINEZ, and ALICIA BURNETT,<br><br>Plaintiffs,<br><br>vs.<br><br>PERIPHERAL VASCULAR ASSOCIATES, P.A.,<br><br>Defendant. | Civil Action No. 5:17-cv-00317-XR |

REMOTE ORAL DEPOSITION

LOIS A. FIALA, M.D.

Thursday, June 4, 2020

Reported by

Rebecca Callow, RMR, CRR, RPR

REMOTE ORAL DEPOSITION OF LOIS A. FIALA, M.D., produced as a witness at the instance of the Relators and duly sworn, was taken in the above-styled and numbered cause on the 4th day of June 2020, from 10:05 a.m. to 12:33 p.m., before Rebecca J. Callow, Registered Merit Reporter, Certified Realtime Reporter, Registered Professional Reporter and Notary Public for the State of Texas, reported by computerized stenotype machine remotely in San Antonio, Texas, pursuant to the Federal Rules of Civil Procedure.

REMOTE APPEARANCES

FOR TIFFANY MONTCRIEFF, ROBERTA MARTINEZ,
AND ALICIA BURNETT:

Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road
Burlingame, California 94010
650-697-6000
By: Sarvenaz J. Fahimi
sfahimi@cpmlegal.com

FOR PERIPHERAL VASCULAR ASSOCIATES, P.A.:

Spencer Fane, LLP
6201 College Boulevard
Suite 500
Overland Park, Kansas 66211
913-345-8100
By: Mark A. Cole
mcole@spencerfane.com

REMOTE APPEARANCES
( CONTINUED )

FOR PERIPHERAL VASCULAR ASSOCIATES, P.A.

Norton Rose Fulbright US LLP
111 W. Houston Street
Suite 1800
San Antonio, Texas 78205
210-224-5575
By: Jeff Wurzburg
jeff.wurzburg@nortonrosefulbright.com

ALSO PRESENT:

Javiar Vazquez

# I N D E X

PAGE

LOIS FIALA, M.D.

Examination by Ms. Fahimi ........................8

Signature Page ..................................87

Changes and corrections  ........................88

Court Reporter's Certificate ....................91

* * * * *

EXHIBITS

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | 8/10/2017 email string: Burrow to Garcia, Re: List of reading cardiologists (Bates Nos. DEF026547 through DEF026556) | 28 |
| Exhibit 2 | Exhibit A to the Expert Report of James E. Alexander, Jr. M.D. | 38 |
| Exhibit 3 | Medical Documentation & Coding Compliance Pledge to Peripheral Vascular Associates (Bates Nos. DEF000693 through DEF000747) | 54 |
| Exhibit 4 | 4/21/2015 Cerebrovascular Duplex Scan for Juan Lopez (Bates No. PVA0005264) | 60 |

E X H I B I T S ( CONTINUED )

| | | |
|---|---|---|
| Exhibit 5 | 7/17/2018 Account Inquiry for Juan Lopez (Bates Nos. PVA0013205 through PVA0013206) | 61 |
| Exhibit 6 | Medical Chart of Juan Lopez (Bates Nos. PVA0005251 through PVA0005259) | 65 |
| Exhibit 7 | 5/30/2017 email: Burrow to Hembling, Re: Documents requested (Bates No. DEF007083 through PVA007088) | 68 |
| Exhibit 8 | 9/10/2017 email: Hembling to Rizvi, Re: Old Minutes, etc. (Bates Nos. DEF007690 through DEF007713) | 75 |

* * * * *

P R O C E E D I N G S

\- - - - -

MS. FAHIMI: Thank you very much for coming today. We appreciate you taking the time away from your practice.

As a preliminary matter, before I forget this, I want to put on the record, like we've been doing, that the parties have agreed to conduct this deposition by remote means. Everyone's in agreement to that.

LOIS FIALA, M.D.,

called as a witness herein, having been first duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION

BY MS. FAHIMI:

Q. So, Dr. Fiala, my name is Nazy Fahimi, and I'm an attorney with the firm of Cotchett, Pitre & McCarthy, who represents the plaintiffs or relators in this action.

And, as you know, the defendant is Peripheral Vascular Associates, which I will probably refer to as PVA throughout our discussion.

Is there any reason that you cannot give your best testimony today, such as illness or

understood you correctly?

A. Yes.

Q. Are you a partner or owner in the practice at PVA?

A. Yes. Both partner and owner.

Q. Does PVA have a board of directors?

A. It does.

Q. And are you on that board of directors?

A. Yes.

Q. And would you describe --

MS. FAHIMI: Did I hear somebody? Sorry.

BY MS. FAHIMI:

Q. Can you hear me okay?

A. Yes.

Q. And can you describe what kind of services PVA offers?

A. PVA is a full service vascular surgery practice. We offer anything from open operative procedures for peripheral vascular disease, endovascular treatment of vascular disease, clinical -- just a normal vascular practice.

We offer, you know, clinical evaluation of patients with vascular disease.

Q. And does PVA also offer within those

services diagnostic testing?
A. Yes.
Q. And that includes ultrasound?
A. Yes.
Q. And does PVA have multiple clinic locations?
A. We do.
Q. How many clinics are there?
A. We have two main clinics, and then we have multiple what we call satellite clinics. And I don't know all the -- the locations of our satellites.
Q. Okay. And, Dr. Fiala, do you know what a CPT code is?
A. Yes.
Q. What is it? Could you describe that?
A. I believe it's a code that you list when you are -- I think -- I think it's a billing code to bill.
Q. So does it provide a description of which service was provided by the provider in order to submit claims to payors?
A. Yes.
Q. And are these CPT codes used in conjunction with billing payors such as Medicare?

A. Yes.
Q. And are the ultrasounds that we just discussed, are they the type of services that are billed to Medicare?
MR. COLE: Object to the form.
You can answer.
A. Yes.
THE WITNESS: Excuse me?
MR. COLE: I was just saying you could answer. Sorry.
THE WITNESS: Oh, okay. Thank you. Thank you.
MR. COLE: I'll try to refrain from saying you can answer every time, but so just so you know --
THE WITNESS: All right. Thank you. Okay.
BY MS. FAHIMI:
Q. Okay. And does a bill for an ultrasound or a claim for an ultrasound typically contain a professional and a technical component?
MR. COLE: Object to the form.
A. Yes.
BY MS. FAHIMI:
Q. Well, do you know what a technical

component is, what that term means?
A. The technical component is actually the performance of the test itself.
Q. And who handles or completes that technical component you described?
A. I mean, it could be an RVT, which is a registered vascular technologist. It could be a physician who is trained to do ultrasound.
Q. And at PVA, is it the RVT you mentioned that completes the technical component?
A. I would say most of the time it is an RVT.
Q. And could you describe or do you know what the professional component is that we just discussed?
A. The professional component is when the interpretation of the study is performed, and that's usually by a physician.
Q. And is that done by the physician reading the study?
A. Yes. The physician who -- yes. Yes.
Q. And does that professional component have to be completed by a physician?
A. As far as I know, yes.
Q. And does the physician sign off and complete the interpretation of an ultrasound?

coming into the office for.

BY MS. FAHIMI:

Q. So could you walk through for me how a patient ends up at PVA and what the process is, generally, kind of from the intake and, you know, if they're seen, not seen?

A. Usually we have a patient who has been asked -- or we receive a consultation from a physician who wants us to evaluate -- or just a medical provider who wants us to evaluate the patient for peripheral vascular disease.

And the patient is -- can be a new patient, can be an established patient. It just depends on what type of patient they are when they come into the office.

An established patient, we would usually have ordered testing prior to that follow-up visit, and that test would be performed before we saw the patient.

And then we see the patient. We interpret and read the study at the time we see the patient. And then we talk to the patient and do their physical. We talk to the patient about their results of their testing.

Q. And prior to that scan being performed in

the circumstances you just described, does there need to be a determination by physicians that a scan is necessary?

MR. COLE: Object to the form of the question.

A. That determination is made either when we see the patient in the office or at the prior appointment.

BY MS. FAHIMI:

Q. The prior appointment at PVA?

A. If they're an established patient, yes.

Q. And what would be circumstances where they're not an established patient? Can you describe that?

A. A new consult from an outside -- either outside facility or medical provider.

Q. So in either of those situations, does there need to be an order for an ultrasound scan to be completed?

MR. COLE: Object to the form and foundation.

A. Yes. There is always an order.

BY MS. FAHIMI:

Q. And who provides the order?

A. A lot of times it is the physician who sent

the consultation to us.
Q. And that would be like a referring physician at times. Is that correct?
A. Right. That's correct.
Q. And how is that communicated to PVA from a referring physician?
A. I don't -- I don't know the ins and outs of how these are sent over. There's a lot of different ways nowadays that you can, you know, get a -- receive a consultation and an order.
I have -- I don't know, but I know that there is -- we do not perform testing without orders.
Q. And that would also be the same, the statement you just made, for the patients that you see initially at PVA that weren't just referred. Correct?
MR. COLE: Object to form.
A. I'm not following you. Initially at PVA, meaning an established patient? A new patient?
BY MS. FAHIMI:
Q. Yes. An established patient.
A. Yes. And --
Q. Go ahead.
A. I'm sorry. Go ahead. Go ahead. I'm

sorry. I'm done.
Q. And in addition to the established patient, would that also be the case for a new patient?
MR. COLE: Object to the form.
A. Ordering a test before the test is performed? Is that the question? I'm not exactly understanding.
BY MS. FAHIMI:
Q. So we're talking about that there would be an order in place. You just stated there would be an order in place?
A. Yes. That's right. Yes.
Q. So to make it easier, let me just say it this way.
In all cases ultrasounds are conducted at PVA, would it be your understanding that an order must be in place for that ultrasound?
A. Yes.
Q. And that order needs to come from a physician. Correct?
MR. COLE: Object to the form and foundation.
A. Yes.
BY MS. FAHIMI:
Q. And are the orders that we're talking

about, are they documented at PVA?
A. They're documented in the medical record.
Q. Okay. And does PVA use -- well, do you know what an EMR database is?
A. Yes.
Q. And what is that? Could you describe that?
A. Electronic medical records.
Q. So a form of a database to keep those records?
A. Yes.
Q. Does PVA use an EMR-type database or system?
A. We use Allscripts as our medical record -- electronic medical records.
Q. And does PVA use any other databases in conjunction with the services they're providing?
MR. COLE: Object to the form.
A. We use -- in our cath lab, we use Braintree and -- which is a radiologic database. And we use MedStreaming, which is a database for vascular testing.
BY MS. FAHIMI:
Q. So is the purpose of MedStreaming to keep track of the testing you just described?
A. To keep track, yes. I would say, yes.

BY MS. FAHIMI:

Q. So it's a formality to establish the actual standalone report. Is that accurate?

MR. COLE: Object to the form.

A. Yes.

BY MS. FAHIMI:

Q. Well, when you speak to that -- or strike that.

Is it used -- what we're discussing, is it used then to complete the professional component associated with an ultrasound?

MR. COLE: Object to the form and foundation.

A. Like I previously stated, when I see a patient in the office, and the testing is done while they're in the office, I have already looked and interpreted the study and made a notation in the medical record that shows what the study has shown.

So for me, the professional component was completed when I interpreted the study in the office right after the study was performed and I've talked to the patient about the final report.

BY MS. FAHIMI:

Q. So are you saying that this does not complete the professional component once you review

could you, please, go to DEF 7085?

A. Okay.

Q. Do you see where it states on the top "Vascular lab billing/coding"?

A. Yes.

Q. Okay. And you are on the vascular committee at PVA. Correct?

A. Yes.

Q. And what does that committee do?

A. We look at a wide variety of things with the vascular lab, personnel, financial issues, changing protocols on testing, all -- I mean, that's pretty much it.

Q. Okay. And do you recall having seen this document before?

A. I do not remember seeing this, no.

Q. And do you know what is?

Is it meeting minutes?

MR. COLE: Objection to the form and foundation of the question. She's told you she's never seen it.

A. No.

BY MS. FAHIMI:

Q. Let me rephrase that.

Are you familiar with the format of

CERTIFICATE OF DEPONENT

I hereby certify that I have read the foregoing pages of my deposition testimony in this proceeding, and with the exception of changes and/or corrections, if any, find them to be a true and correct transcription thereof.

[signature]
Deponent

7/23/20
Date

NOTARY PUBLIC

Subscribed and sworn to before me this 23 day of July, 2020.

[signature]
Notary Republic

My Commission Expires: 9-16-2023

JOSE CHAPA JR.
Notary Public, State of Texas
Comm. Expires 09-16-2023
Notary ID 132174181

CERTIFICATE OF REPORTER

I, Rebecca J. Callow, Registered Merit Reporter and Notary Public of State of Texas, hereby certify to the following.

That the witness, LOIS A. FIALA, M.D., was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the original deposition was delivered to ________________________________.

That a copy of this certificate was served on all parties and/or the witness shown herein on ____________.

I further certify that pursuant to FRCP Rule 30(f)(1) that the signature of the deponent:

[ ] was requested by the deponent or a party before the completion of the deposition and is to be returned within 30 days from date of receipt of the transcript. If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

[ ] was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys to the action in which this proceeding was taken. Further, I am not a relative or employee of any attorney or record in this cause, nor am I financially or otherwise interested in the outcome of the action.

SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 19th day of June 2020.

______________________________

Rebecca J. Callow, RMR, CRR, RPR
Notary Public, Travis County, Texas
My Commission No. 12955701-3
Expires: 09/12/2021