## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. TIFFANY MONTCRIEFF,<br>ROBERTA MARTINEZ, and ALICIA<br>BURNETT, | §<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | § | Civil Action No. SA-17-CV-00317-XR |
| | § | |
| v. | § | |
| | § | |
| PERIPHERAL VASCULAR<br>ASSOCIATES P.A., | §<br>§ | |
| | § | |
| Defendant. | § | |

## UNITED STATES' STATEMENT OF INTEREST

Although the government did not intervene in this case and is not a party, the government remains the real party in interest. *See* 31 U.S.C. § 3730(d). Moreover, because the False Claims Act is the government's primary civil tool for prosecuting fraud, it has a substantial interest in the development of FCA law. Accordingly, the government submits this statement of interest to address certain issues raised by Defendant Peripheral Vascular Associates, P.A., in its summary judgment briefing. *See* 28 U.S.C. § 517 (authorizing statements of interest).

***First***, PVA cites *United States v. AseraCare, Inc.*, 938 F.3d 1278 (11th Cir. 2019), for the proposition that "[l]iability must be predicated on an objective falsehood and not a difference in judgment or reasonable interpretation." Dkt. 94 at 10-11. But the court in *AseraCare* did not hold that the FCA generally requires objective falsity. Rather, the court explicitly limited its holding to the hospice services at issue there in light of the special statutory and regulatory requirements applicable to Medicare reimbursement—none of which apply here. The Court should, therefore, not apply *AseraCare* to this case—let alone expand its holding.

**Second**, PVA contends that the relators cannot establish materiality because the government declined to intervene in this matter, was aware of the allegations, and continued to pay PVA for the disputed services.  *See* Dkt. 94 at 3-4, 23-24, 25-26; Dkt. 112 at 3, 20-24.  To start, the government's decision to decline intervention is irrelevant to the merits of this case, specifically materiality.  Further, the governments' awareness of the allegations of the case and any continued payments are not dispositive of the materiality inquiry, which is holistic and requires the consideration of several factors.  The government urges the Court to follow the materiality standard stated in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003-04 (2016).

**Third**, PVA contends that "Relator's claims fail because their pursuit of non-intervened FCA claims is a violation of the appointments clause and constitutional requirement of separation of powers."  Dkt. 112 at 24.  As PVA concedes, the Fifth Circuit (siting *en banc*) long ago rejected these arguments, and this precedent binds the Court.  *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 752-758 (5th Cir. 2001).

Aside from the issues discussed in this statement, the government takes no position as to the merits of the parties' motions for summary judgment.  Neither the Court nor the parties should construe the fact that the government is not providing its views on other arguments or issues as support or opposition.

## ARGUMENT

I.    *AseraCare* **Does Not Apply to This Case.**

In *AseraCare*, the court stated the issue, "This case requires us to consider the circumstances under which a claim for hospice treatment under Medicare may be deemed 'false' for purposes of the federal False Claims Act."  938 F.3d at 1281.  The court specified, "[T]he sole

question is whether the claims AseraCare submitted were reimbursable under the Medicare framework for hospice care—that is, whether AseraCare's certifications that patients were terminally ill satisfied Medicare's statutory and regulatory requirements for reimbursement.  If not, the claims are capable of being 'false' for FCA purposes." *Id.* at 1291.

The court held that "when a hospice provider submits a claim that certifies that a patient is terminally ill 'based on the physician's or medical director's clinical judgment regarding the normal course of the individual's illness,' 42 U.S.C. § 1395f(7), 42 C.F.R. § 418.22(b), the claim cannot be 'false'—and thus cannot trigger FCA liability—if the underlying clinical judgment does not reflect an objective falsehood." *AseraCare*, 938 F.3d at 1296-97.  The court added that "in order to show objective falsity as to a claim for hospice benefits, the Government must show something more than the mere difference of reasonable opinion concerning the prognosis of a patient's likely longevity."  *Id.* at 1297-98.

Subsequently, courts have recognized that *AseraCare* is limited to the unique Medicare rules governing hospice care.  *See United States ex rel.  Bell v. Garden Cross Care Center, LLC*, 16-cv-961, 2019 WL 6493972, *5 n. 5 (M.D. Fla. Dec. 3, 2019) ("the language in *AseraCare* limited its application to the context of Medicare reimbursement for hospice services").  Circuit courts have rejected arguments based on *AseraCare* that the FCA generally requires "objective" falsity.  *See United States v. Care Alternatives*, 952 F.3d 89, 100-01 (3d Cir. 2020) ("[R]egarding FCA falsity, we reject the objective falsehood standard. . . .  We also find that a physician's judgment may be scrutinized and considered 'false.'"); *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1113 (9th Cir. 2020) ("[A] plaintiff need not allege falsity beyond the requirements adopted by Congress in the FCA. . . .  Congress imposed no requirement of proving "objective falsity," and we have no authority to rewrite the statute to add

3

such a requirement.  A doctor's clinical opinion must be judged under the same standard as any other representation.").

PVA selectively quotes *AseraCare*, writing, "'[A]bsent a showing of an objective and knowing falsehood, the FCA is an inappropriate instrument to serve as the Government's primary line of defense against questionable claims . . . .'"  Dkt. 94 at 15 (quoting *AseraCare*, 938 F.3d at 1301).  But PVA's ellipsis leave out the limiting clause:  "for reimbursement of **hospice** benefits." *AseraCare*, 938 F.3d at 1301 (emphasis added).  This Court should reject PVA's invitation to apply *AseraCare* to this case, which does not relate to hospice care and its special statutory and regulatory requirements.  Moreover, this Court should reject the invitation to expand *AseraCare* to hold that the FCA requires objective falsity.

## II.    PVA Misconstrues the Materiality Standard.

### A.  Materiality under *Escobar*

In *Escobar*, the Supreme Court explained that "materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation."  136 S. Ct. at 2002 (internal alterations omitted).  A matter is material if:  (1) a reasonable person would attach importance to it in determining a choice of action in the transaction, or (2) the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter in determining his choice of action, regardless whether a reasonable person would do so.  *Id.* at 2002-03.

One of the factors identified by the Court was "the Government's decision to expressly identify a provision as a condition of payment," which the Court viewed as "relevant, but not automatically dispositive."  *Id.* at 2003.  Additional relevant factors include whether the alleged violation is significant or "minor or insubstantial," *id.*, whether it goes to the "essence of the

bargain," *id.* at 2003 n.5, and what actions the United States took in this or other cases when it had "actual knowledge" of such violations, *id.* at 2003-04.

The Supreme Court was careful to note that "materiality cannot rest on a single fact or occurrence as always determinative[.]" *Id.* at 2001 (citation omitted).  It therefore did not hold that any particular factor is dispositive.  Courts have repeatedly recognized that *Escobar* set forth "a holistic approach to determining materiality in connection with a payment decision, with no one factor being necessarily dispositive."  *E.g.*, *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 109 (1st Cir. 2016) (*Escobar II*).

### B.  Declination Is Irrelevant to Materiality.

PVA wrongly suggests that the United States' decision not to intervene in this case indicates that the alleged falsities were immaterial.  *See* Dkt. 94 at 23-24; *see also* Dkt. 83 at 2 ("[T]he government declined to intervene.  Notably the government did not attempt to negotiate a monetary settlement indicating there was no actionable FCA violations.").  But "[t]here is no reason to presume that a decision by the Justice Department not to assume control of the suit is a commentary on its merits.  The Justice Department may have myriad reasons for permitting the private suit to go forward including limited prosecutorial resources and confidence in the relator's attorney."  *U.S. ex rel. Chandler v. Cook Cty., Ill.*, 277 F.3d 969, 974 n.5 (7th Cir. 2002), *aff'd*, 538 U.S. 119 (2003).  Indeed, the FCA "does not require the government to proceed [even] if its investigation yields a meritorious claim."  *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 455 (5th Cir. 2005).

"[T]he False Claims Act is designed to allow relators to proceed with a qui tam action even after the United States has declined to intervene.  If relators' ability to plead sufficiently the element of materiality were stymied by the government's choice not to intervene, this would

undermine the purposes of the Act." *United States ex rel. Prather v. Brookdale Senior Living Communities. Inc.*, 892 F.3d 822, 836 (6th Cir. 2018). Congress expressly contemplated that if the government declined to pursue an FCA action, the relator would have "the right to conduct the action[]" on behalf of the United States. 31 U.S.C. § 3730(c)(3). When a relator proceeds in a declined case, the United States still receives the bulk of any recovery from the action, as the relator's share is limited to no more than 30 percent of the recovery. *Id.* § 3730(d)(2). Through these provisions, the FCA expressly incentivizes and leverages the power of private citizens to protect the federal fisc from fraud.

"[T]he simple fact that the government did not intervene has no probative value and is not relevant." *United States ex rel. El-Amin v. George Washington University*, 533 F. Supp. 2d 12, 21-22 (D.D.C. 2008). To illustrate, *Escobar* was a declined case, and the Supreme Court did not mention the government's declination decision as a factor in its materiality analysis. 136 S. Ct. at 2001-04. Nor did the First Circuit, on remand, consider the government's declination as relevant to the materiality inquiry. *Escobar II*, 842 F.3d at 112. Other courts have followed suit, and with good reason. *E.g.*, *Prather*, 892 F.3d at 836.

Accordingly, the decision to decline to intervene in a qui tam does not give rise to any inferences regarding the materiality of the alleged violations. The Court should "put little weight on the fact that the DOJ was aware of the allegations and declined intervention. To infer much, if anything, from such a declination would undermine the purposes of the FCA, which is explicitly designed to permit private persons to litigate suits in lieu of the Government." *See United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 542 n.12 (10th Cir. 2020).

**C.  Actual Knowledge or Continued Payment Is Not Dispositive of Materiality.**

PVA also contends that the relators cannot establish materiality as a matter of law because the government "continues to pay to this day despite being well aware of the alleged violations." Dkt. 94 at 3-4; *see also id.* at 25-26 ("[T]he Government has consistently paid Medicare claims submitted by PVA all with actual and constantly updated knowledge of Relators' allegations."); Dkt. 112 at 3, 20-24 (arguing the same).

Actions of the paying agency may bear on materiality only when that agency has "actual knowledge that certain requirements were violated[.]"  *Escobar*, 136 S. Ct. at 2003.  Actual knowledge is not the same as awareness of allegations of violations.  On remand in *Escobar*, the First Circuit rejected the defendant's arguments that the government's continued payment of Medicaid claims despite its knowledge of the relator's allegations warranted dismissal on materiality grounds.  *Escobar II*, 842 F.3d at 112 ("mere awareness of allegations concerning non-compliance is different from knowledge of actual non-compliance"); *see also United States ex rel. Rahimi v. Rite Aid Corp.*, 2019 WL 1426333, *8 (E.D. Mich. Mar. 30, 2019) ("Rite Aid's argument conflates actual knowledge that certain requirements were violated with actual knowledge of allegations that certain requirements were violated" (internal quotation marks and alteration omitted)); *United States ex rel. Brown v. Pfizer, Inc.*, 2017 WL 1344365, *11 (E.D. Pa. April 17, 2017) ("mere knowledge of allegations regarding noncompliance is insufficient to prove actual knowledge of noncompliance").

Even where the government is actually aware of the full extent of a defendant's misconduct and does not stop payment, these facts are not proof *per se* that the misconduct is immaterial under the FCA.  There are many good reasons, including important public health and safety considerations, why the government might continue to pay claims in such circumstances.  *See U.S.*

*ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 917 (4th Cir. 2003) (government might have good reason to pay because the contract is "advantageous to the government" or is too far along to terminate).

The government must ensure the delivery of health care to many millions of Americans enrolled in Medicaid, Medicare, and other health insurance programs. "The Government does not enjoy the luxury of refusing to reimburse health care claims the moment it suspects there may be wrongdoing." *United States v. Berkeley HeartLab, Inc.*, No. 14-cv-230, 2017 WL 4803911, at *7 (D.S.C. Oct. 23, 2017) (appeal filed). While there are circumstances in which the government may properly halt payments in the face of fraudulent conduct, such decisions are necessarily tempered by the need to ensure adequate access to health care, including considerations such as the unavailability of similar services from different providers. As a result, courts have long held that an FCA defendant is "not automatically exonerated by any overlapping knowledge by government officials." *United States ex rel. Kreindler v. United Technology Corp.*, 985 F.2d 1148, 1156 (2d Cir. 1993).

The Fifth Circuit and this Court (along with many other courts) have held that continued payment by the government is not dispositive of materiality—which (as explained above) is a holistic analysis involving multiple factors. *See United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017) (holding that "continued payment by the federal government after it learns of the alleged fraud" is "not dispositive," even if it "substantially increases the burden on the relator in establishing materiality"); *United States ex rel. Campbell v. KIC Dev., LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, at *10 (W.D. Tex. Dec. 10, 2019) (rejecting defendant's argument that "because the Government continued to make payments on both . . . contracts well after the Relator's suit was filed, it 'obviously did not find the alleged false

certifications sufficiently material to cancel the contracts or withhold payments.'"); *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 907 (9th Cir. 2017) (holding that relators "sufficiently plead[ed] materiality" at the motion-to-dismiss stage, despite continued government payment for noncompliant medication); *United States ex rel. Longo v. Wheeling Hospital, Inc.*, No. 5:19-CV-192, 2019 WL 4478843, at *6 (N.D.W. Va. Sept. 18, 2019) (rejecting the defendants' argument that the United States' continued payment of claims rendered the alleged violations immaterial).  And the cases cited by PVA (*see* Dkt. 94 at 24-26, Dkt. 112 at 22-24) do not state that actual knowledge and continued payment by the government establish immateriality *per se*.[1]

The government urges the Court to refrain from adopting PVA's narrow interpretation of materiality.  The government takes no position as to whether the relators have met the materiality standard under the proper holistic approach, or whether such an analysis is necessary to resolve PVA's motion for summary judgment.

---

[1] *See Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017) (affirming summary judgment on materiality, where the relevant federal agency investigated certain allegations by the relator, issued a report finding them without merit, and allowed the defendant to continue the activity at issue, because the relator did not rebut these "strong facts"); *United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1033 (D.C. Cir. 2017) (affirming summary judgment on materiality, where relator alleged that Army contractor inflated the "headcount" of Army personnel using its contracted-for facilities, because "such headcount data (false or not) had no bearing on costs billed to the Government" and there was other "very strong evidence" that the headcount data was not material—namely the Army investigated the allegations, did not disallow costs, and gave the contractor an award for "exceptional performance"); *United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 865 F.3d 29, 35 (1st Cir. 2017) (affirming dismissal or certain FCA claims and reversing the dismissal of other FCA claims and holding that government's continued payment "despite its actual knowledge that certain requirements were violated" is "very strong evidence that those requirements are not material" (quoting *Escobar*)); *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447-48 (7th Cir. 2016) ("At bottom, even assuming Nelson's allegations are true, the most he has shown is that SBC's supposed noncompliance and misrepresentations would have entitled the government to decline payment."); *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016) ("The fact that CMS has not denied reimbursement for Onyx in the wake of D'Agostino's allegations casts serious doubt on the materiality of the fraudulent representations that D'Agostino alleges."); *United States ex rel. Cressman v. Solid Waste Servs., Inc.*, No. CV 13-5693, 2018 WL 1693349, at *6-7 (E.D. Pa. Apr. 6, 2018) (granting summary judgment for the defendant, where defendant allegedly failed to disclose certain environmental violations, because the government did not intervene after it had investigated and the alleged misconduct did not go "to the very essence of the bargain"—which was to transport the government's waste and which the defendant accomplished).

**III.    It Is Constitutional for a Relator to Pursue a Non-Intervened FCA Suit.**

In *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 751 (5th Cir. 2001), the Fifth Circuit

held:

> We took this case en banc to reconsider the issue of whether the qui tam provisions
> of the False Claims Act ('FCA'), which permits private citizens, or relators, to
> pursue actions for fraudulent claims in the name of the federal government, violate
> the constitutional separation of powers doctrine under the Take Care and
> Appointments Clauses of Article II.  Because we find no such unconstitutional
> intrusion, we reverse and remand to the district court.

Accordingly, the Court is bound by this precedent and cannot reconsider the issue.  PVA concedes

this point, stating that it included the argument to preserve it for potential appellate review.

Dkt. 112 at 24.

**CONCLUSION**

For all of the foregoing reasons, the Court should not apply *AseraCare* to the present case

and follow the *Escobar* materiality standard and the holding in *Riley*.

Dated: September 18, 2020

Respectfully submitted,

JOHN F. BASH
United States Attorney

By:   */s/ John M. Deck*             
JOHN M. DECK
Assistant United States Attorney
Texas Bar No. 24074120
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
Tel: (210) 384-7388
Fax: (210) 384-7322
Email: john.deck@usdoj.gov
*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to:

| | |
|---|---|
| Justin T. Berger | Sean R. McKenna |
| Sarvenaz J. Fahimi | Mark A. Cole |
| Cotchett Pitre & McCarthy LLP | SPENCER FANE LLP |
| 840 Malcolm Road | 2200 Ross Avenue, Suite 4800 West |
| Burlingame, CA 94010 | Dallas, Texas 75201 |
| | |
| Wallace M. Brylak, Jr. | Stephen J. Romero |
| Brylak Law | Jeff Wurzburg |
| 15900 La Cantera Pkwy., | Norton Rose Fulbright US LLP |
| Suite 19245 | Frost Tower 111 W. Houston Street, |
| San Antonio, TX 78256 | Suite 1800 |
| | San Antonio, TX 78205 |

*/s/ John M. Deck*            
John M. Deck
Assistant United States Attorney