# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA )
ex rel., TIFFANY MONTCRIEFF, )
ROBERTA MARTINEZ, and )
ALICIA BURNETT, ) Civil Action No.
Plaintiffs, ) 5:17-cv-00317-XR
vs. )
PERIPHERAL VASCULAR )
ASSOCIATES, P.A., )
Defendant. )

REMOTE ORAL DEPOSITION

ROBERT D. CHURCH, JR.

July 24, 2020

Reported by

Rebecca Callow, RMR, CRR, RPR

REMOTE ORAL DEPOSITION OF

ROBERT D. CHURCH, JR., produced as a witness, appearing via Zoom from Oxford, Mississippi, at the instance of the Defendants and duly sworn, was taken in the above-styled and numbered cause on the 24th day of July 2020, from 10:25 a.m. to 3:26 p.m., before Rebecca J. Callow, Registered Merit Reporter, Certified Realtime Reporter, Registered Professional Reporter and Notary Public for the State of Texas, reported by computerized stenotype remotely from Austin, Texas, pursuant to the Federal Rules of Civil Procedure.

REMOTE APPEARANCES

FOR TIFFANY MONTCRIEFF, ROBERTA MARTINEZ,
AND ALICIA BURNETT:

Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road
Burlingame, California 94010
650-697-6000

By: Sarvenaz J. Fahimi
sfahimi@cpmlegal.com
Justin T. Berger
jberger@cpmlegal.com

FOR PERIPHERAL VASCULAR ASSOCIATES, P.A.:

Spencer Fane, LLP
6201 College Boulevard
Suite 500
Overland Park, Kansas 66211
913-345-8100

By: Mark A. Cole
mcole@spencerfane.com

REMOTE APPEARANCES
( CONTINUED )

FOR PERIPHERAL VASCULAR ASSOCIATES, P.A.:

Norton Rose Fulbright US LLP
111 W. Houston Street
Suite 1800
San Antonio, Texas 78205
210-224-5575
By: Jeff Wurzburg
jeff.wurzburg@nortonrosefulbright.com

ALSO PRESENT:

Javier Vazquez

Tim Patterson

# I N D E X

PAGE

ROBERT D. CHURCH, JR.

Examination by Mr. Cole ..........................7

Court Reporter's Certificate ....................150

Signature Page ..................................153

Changes and corrections ........................154

*********

E X H I B I T S


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Document production PDF (Bates Nos. CHURCH000002 through CHURCH002204) | 11 |
| Exhibit 2 | Church document production for deposition (Bates Nos. CHURCH000002 through CHURCH002220) | 11 |
| Exhibit 3 | Defendant's Notice of Intention to Take Oral/Videotaped Deposition Duces Tecum of Robert D. Church, Jr. | 13 |
| Exhibit 4 | Expert Witness Report of Robert D. Church, Jr. | 17 |
| Exhibit 5 | Supplemental Expert Witness Report of Robert D. Church, Jr. | 17 |
| Exhibit 6 | Seven Tips for Diagnostic Radiology Coding - AAPC Knowledge Center | 59 |
| Exhibit 7 | Section 6401 Affordable Care Act | 141 |


*********

R E M O T E

P R O C E E D I N G S

\- - - - - -

ROBERT D. CHURCH, JR.,

called as a witness herein, having been first duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION

BY MR. COLE:

Q. Good morning, Mr. Church. Like I said before, my name is Mark Cole. And I represent Peripheral Vascular Associates and I'm here to take your deposition today. Okay?

A. Okay.

Q. Approximately how many times have you been deposed before?

A. Over the years, I'm sure it's well over 20. I don't have a good count. It started back in 1985 or '6, so it's been several times since.

Q. So you're probably pretty familiar with how depositions work and the general sort of rules, if you will, that we try to follow. I'll repeat a couple of those, which I'm sure you've heard before.

A. Okay.

Q. It's particularly important, because we're

Q. Well -- yeah.
At the top -- there's a full paragraph that you have beginning at the top. Right?
A. Yes, sir.
Q. And then you have a link to a site that's at the website apsmedbill.com. Is that right?
A. Yes.
Q. That's not a governmental website. Right?
A. No.
Q. That's not a CMS website?
A. Not that I'm aware of, no.
Q. The third paragraph down, it starts, "The final written ultrasound report." Do you see that?
A. Third paragraph starting where?
Q. It starts, "The final written ultrasound report."
A. Oh, okay. Okay.
Q. And I should ask. Sometimes I'm saying these things while looking down. Can you hear me okay when I do that?
A. Yeah. I'm fine. Yeah.
Q. Okay. You say there in the third sentence, "Anything short of a final stand-alone report by the physician is considered incomplete."
Do you see that?

A. Yes.
Q. Can you identify for me any federal Medicare regulations that specifically requires a stand-alone report?
A. Well, as a condition of enrollment in -- as a provider within Medicare, you're bound to -- and this is in my exhibits as well. But you are bound to abide by all Medicare, CMS rules, regulations, promulgations, manuals, et cetera, et cetera, which requires, first, medical necessity, and then it requires the appropriate documentation of the patient's care and the -- any procedure or examination or any -- any other type of test requires a written report so that the diagnosis may be established and can be billed properly to Medicare.
You know, just like your ICAVL has a two-day period for interpretation and a four-day period for a stand-alone report. And you are accredited by that group, so it's there. As well as the American College of Radiology, that says you can't bill it until the final report is issued by the physician who performed the service or who oversaw the -- supervised the service.
And it all falls into the same -- same

documentation of what you've done, parameters that Medicare requires.

Q. Can you identify for me any federal Medicare regulation that specifies that a stand-alone report is required for vascular studies?

A. Well, you know, that's -- I think that -- you know, all the -- all the guidance that we have cited, I've cited in my report over and over.

And I'll get to your -- the balance of your question in just a second.

But all the guidance that we've cited is that if you're missing -- if you're missing that information and you're bound to -- again, you're bound to comply with all Medicare regulations and rules regarding the documentation of services.

And if the service wasn't documented, meaning a final report, then that means it wasn't done and it can't be billed to Medicare.

Q. You believe the final report -- and I'm trying to specify. You say "stand-alone report" there, and that's what I'd like to know.

I'd like for you to either identify for me or say you don't know, where, in a federal regulation, it says that a stand-alone report is required.

MS. FAHIMI: Object to form. And I believe he's answered it two or three times.

A. CMS, in its requirements, were documenting services to be paid, as it's reported on the back of the Form CMS-1500, that the doctor attests to the fact that he knows the rules, regulations.

He attests to the trueness and -- trueness, accuracy, and correctness of the claim, and that includes all the documentation requirements related thereto.

And all this documentation that's attached to this report, regardless of source, refers back to it. Even your accrediting body refers back to a stand-alone report is required. And the ACR does as well.

And that's what some of these diagnostic imaging findings fall under is ACR practice, or ICAVL practice. And so it all falls -- all falls under CMS rules.

And if you're trying to just pin it down to one specific rule, then you're kind of missing the whole point of abiding by what Medicare requires in terms of documentation to enable to bill a service.

Because it's not --

BY MR. COLE:
Q. Okay. We'll get to the rules, we'll get to the guidelines. I'm specifically -- I am just specifically right now asking you about regulations.
So, yes or no, can you identify any federal Medicare regulation that specifically requires a stand-alone report for a vascular study?
MS. FAHIMI: Object to form. Asked and answered. And you interrupted his answer.
MR. COLE: I will contend very clearly he did not answer my question, because he keeps referring to rules and guidelines.
So I will ask my question again.
BY MR. COLE:
Q. Can you reference a specific federal Medicare regulation that says that a stand-alone report is required for a vascular study?
MS. FAHIMI: Same objection.
A. And what I'm trying to relay to you is, is there a specific statute, C.F.R. 442.508, or whatever, that says you do this? No. Not that I'm aware of.
However, what I am trying to communicate is that that is not the point of this. That is not the point of -- whether one is required

or not. You are required by Medicare to report -- to report.

And the only way you can report is to have a stand-alone final report, whichever phrase you want to use, by following the guidelines of documenting the services that were provided to that patient.

And until you have that stand-alone report, you can't satisfy those -- those parameters that Medicare requires -- and everybody else has required, even your own accrediting body has required.

BY MR. COLE:

Q. Can you identify a local coverage determination, issued by a MAC with jurisdiction over Texas, that says a stand-alone report is required for vascular studies?

A. That would be the last place I would go for a -- a definitive ruling. Because it -- you would assume -- if there was one there and there wasn't one in the national coverage determination, you would assume that it would supercede it, and it does not.

It is the last --

Q. Can you identify a national coverage

and that's as much as I can tell you.
BY MR. COLE:
Q. Mr. Church, it's your opinion that the technical component for a vascular study can be billed immediately after that study is performed. Right?
A. After service is rendered, that's correct.
Q. And when the service is rendered is when the study is actually performed. Right?
A. That would be my assumption, yes.
Q. I'm sorry. I -- you blanked out there.
A. Yeah. That would be what I would assume to be true.
Service, the study. And that's the technical component can be billed on the day that it's -- that it's performed. The day that service is rendered.
Q. And then it's your opinion that, in order to bill for the professional component, you must have a stand-alone final report that's signed?
A. That's correct.
Q. And your criticism of PVA is that, in some instances, PVA billed for services before a stand-alone final report was signed. Is that a fair summary?

memorize that significant, separately identifiable term. But, no. I'm not reading from anything.

Q. So is it your opinion, then, that in certain instances PVA shouldn't have billed for the E&M service or that they shouldn't have billed for the scan?

A. Well, if you bill for the scan, you shouldn't be billing for the E&M service.

Q. You can't bill for both?

A. Unless you have that significant, separately identifiable evaluation and management service.

Q. Have you examined any medical records for patients at PVA to determine whether, in any instance, there was or was not that significant event that you're mentioning?

A. No.

Reviewing medical records is outside the scope of my work. I'm not a -- I'm not prepared to determine --

Q. In order to make that -- sorry. I apologize.

In order to make that determination, you'd have to go look at the medical records. Right?

A. One would presume that that would be one

way of getting that information.

But if you see a code billed on the same day as a -- as a study, then the first answer is, you shouldn't be billing both of those.

Q. But you can bill both of them. Right?

A. If you properly document it and if there is a separately identifiable significant evaluation and management event that causes you to have to give more care.

Not just -- not just walk in the office and say, Okay, how are you feeling? Here's this, that, and the other, and now we're going to send you for some studies.

It's not -- that's not what it's talking about.

Q. Yeah. In order to -- in order to determine that, like you said, you'd have to go look at the medical records. Right?

MR. BERGER: Objection. Form.

A. No. I think if you see the -- if you see those, then you might want to look, but I'm not -- I don't know that you necessarily have to look.

I think it's up to the -- up to the provider to properly document why that would be charged; otherwise, it's not allowed. On the whole,

it's not allowed.
If you see it, then, you know, it's probably worth asking, but it's not -- on the whole, the first -- the first piece of it it's not allowed.
BY MR. COLE:
Q. Where would that be documented?
MR. BERGER: Form.
A. Where would the separate significant event be documented? In the medical record, I would hope.
And because of the extenuating circumstances, it would go into the final report that the doctor would, after being interpreted -- interpreted all of the events and the studies that occurred in that visit, it would be documented in his final report.
BY MR. COLE:
Q. Will you turn with me, please, to page 16 of your supplemental report.
A. Okay.
Q. There is a paragraph slightly below the middle there, maybe right at it, that begins, "My opinion in regard." Do you see that?
A. Yes.
Q. And you say there that it's your opinion in regard to the coding for imaging ultrasounds that

C E R T I F I C A T E

I, Rebecca J. Callow, Registered Merit Reporter and Notary Public of State of Texas, hereby certify to the following.

That the witness, ROBERT D. CHURCH, JR., was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the original deposition was delivered to ________________________________.

That a copy of this certificate was served on all parties and/or the witness shown herein on _____________.

I further certify that pursuant to FRCP Rule 30(f)(1) that the signature of the deponent:

[ ] was requested by the deponent or a party before the completion of the deposition and is to be returned within 30 days from date of receipt of the transcript. If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

[ ] was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys to the action in which this proceeding was taken. Further, I am not a relative or employee of any attorney or record in this cause, nor am I financially or otherwise interested in the outcome of the action.

SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 28th day of July 2020.

________________________________

Rebecca J. Callow, RMR, CRR, RPR
Notary Public, Travis County, Texas
My Commission No. 12955701-3
Expires: 09/12/2021