# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA )
ex rel., TIFFANY MONTCRIEFF, )
ROBERTA MARTINEZ, and )
ALICIA BURNETT, ) Civil Action No.
Plaintiffs, ) 5:17-cv-00317-XR
vs. )
PERIPHERAL VASCULAR )
ASSOCIATES, P.A., )
Defendant. )

REMOTE ORAL DEPOSITION
JAMES E. ALEXANDER JR., M.D.
Tuesday, July 21, 2020

Reported by
Rebecca Callow, RMR, CRR, RPR

REMOTE ORAL DEPOSITION OF

JAMES E. ALEXANDER JR., M.D., produced as a witness, appearing via Zoom from Fort Worth, Texas, at the instance of the Defendant and duly sworn, was taken in the above-styled and numbered cause on the 21st day of July 2020, from 10:09 a.m. to 3:53 p.m., before Rebecca J. Callow, Registered Merit Reporter, Certified Realtime Reporter, Registered Professional Reporter and Notary Public for the State of Texas, reported by computerized stenotype remotely from Austin, Texas, pursuant to the Federal Rules of Civil Procedure.

REMOTE APPEARANCES

FOR TIFFANY MONTCRIEFF, ROBERTA MARTINEZ,
AND ALICIA BURNETT:
Cotchett, Pietre & McCarthy, LLP
840 Malcolm Road
Burlingame, California 94010
650-697-6000
By: Justin T. Berger
jberger@cpmlegal.com

FOR PERIPHERAL VASCULAR ASSOCIATES, P.A.:
Spencer Fane, LLP
6201 College Boulevard
Suite 500
Overland Park, Kansas 66211
913-345-8100
By: Mark A. Cole
mcole@spencerfane.com

REMOTE APPEARANCES

FOR PERIPHERAL VASCULAR ASSOCIATES, P.A.:

Norton Rose Fulbright US LLP
111 W. Houston Street
Suite 1800
San Antonio, Texas 78205
210-224-5575
By: Jeff Wurzburg
jeff.wurzburg@nortonrosefulbright.com

ALSO PRESENT:

Javier Vazquez

I N D E X

PAGE

JAMES E. ALEXANDER JR., M.D.

Examination by Mr. Cole ..........................8
Examination by Mr. Berger .......................165
Further Examination by Mr. Cole .................169

*******

# E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Defendant's Notice of Intention to Take Oral/Videotaped Deposition Duces Tecum of James E. Alexander, Jr. | 10 |
| Exhibit 2 | File materials from James Alexander (Bates Nos. ALEXANDER000001 through ALEXANDER001593) | 15 |
| Exhibit 3 | Expert Witness Report of James E. Alexander, Jr., M.D. | 21 |
| Exhibit 4 | Supplemental Expert Witness Report of James E. Alexander, Jr., M.D. | 22 |
| Exhibit 5 | Exhibits to Expert Report of James E. Alexander, Jr., M.D. | 24 |
| Exhibit 6 | Account Inquiry - Santos Estrada: DOS 03/01/2017 | 86 |
| Exhibit 7 | 08/16/2017 Cerebrovascular Duplex Scan - Santos Estrada | 91 |

E X H I B I T S
( CONTINUED )

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 8 | Account Inquiry - Santos Estrada: DOS 08/16/2017 | 95 |
| Exhibit 9 | 6/23/2020 Expert Report of Melissa Scott, CPC, CHC, CHIAP | 141 |

*******

R E M O T E
P R O C E E D I N G S
- - - - -
JAMES E. ALEXANDER JR., M.D.,
called as a witness herein, having
been first duly sworn by a Notary Public,
was examined and testified as follows:

EXAMINATION

BY MR. COLE:
Q. Good morning, Dr. Alexander. My name is Mark Cole. I represent Peripheral Vascular Associates, the defendants in this case, and I'm here today to conduct -- to take your deposition in this matter. Okay?
Have you been deposed before, Dr. Alexander?
A. Yes.
Q. Approximately how many times?
A. Approximately four times.
Q. And is that in the past ten years? Five years?
A. It is within the last six -- well, actually, within the last -- yes. Eight years.
Q. Okay. So you're probably familiar with, you know, the sort of rules as we talk about with

Q. Let's move on to page 20 of your report and your Opinion Number 5.
A. Okay. I'm there.
Q. So you're saying here that in many circumstances PVA improperly billed for both the patient visit and a scan. Right?
A. Correct.
Q. And in this section you're critical of situations where PVA physicians are the treating physicians, not where they're not the treating physicians.
A. Yes.
Q. In the second paragraph, about midway through, you start a sentence that says, "Medicare and other guidance." Right?
A. Yes.
Q. Okay. You say, "Medicare and other guidance," and then you -- below it says, "It's very clear that PVA can only bill for both the office visit and the scan if there is a stand-alone final written report of the scan in the patient's file." Right?
A. Correct.
Q. Okay. Can you point me to a statute that says there must be a stand-alone report?

A. Well, we've kind of gone over already a good bit about, you know, statutes versus regulations versus joint projects with AMA CPT and CMS.

I would say that I cannot point to a particular statute by definition, as you seem to be referring to it, by name or number. But I can tell you there's ample information in the manuals and -- as well as the ultrasound and radiology guidelines for appropriate reporting relating to imaging that -- you know, about the separate -- the need for a separate, stand-alone, personalized report.

Q. Can you point to any regulation that says there must be a stand-alone report?

A. I think I'd explained that earlier, is that there are -- a number of areas -- well, yes. Actually, there is -- if you're talking about a code of federal regulations, there is a particular section.

It is in Exhibit 8 of my report. And -- and this is, again, like so many of the regulations are, it's not -- it's fairly general. And, again, it is -- do you have that, sir?

Q. I do.

A. Okay. Page 97. And it's C.F.R.

Section 415.120, condition for payment, radiology services. And which includes ultrasound procedures if you'll see.

And it says the carrier pays for interpretations only if there is a written report prepared for inclusion in the patient's medical record.

Now, that just says there needs to be a written report, and in the patient's medical record. Now, when you get into the issues related to some of the -- well, first of all, I already mentioned the AMA citation that's in the body of my report that talks about a separate report.

But there are -- you know, in my Exhibit 10 -- let's see. And this one is -- and it is basically from an official medical coding letter of MiraMed for -- a global services company.

And it basically references various procedures -- I mean, citations, including the one we just talked about from the C.F.R., where they talk about what the professional component, you know, includes.

And that's at -- on -- that's -- in looking at Exhibit 10, on page -- there's a page 6 and a page 7. And it's kind of all through the

highlighted areas in this article.

It said -- let's take the first one from the CPT. Again, use of ultrasound without thorough evaluation of organ or anatomic region, image documentation and final written report is not separately reportable.

So then you go down to -- and I think the reference on this one is a citation from regulations and guidance manuals from the -- the interpretive manuals.

And it's the one that says professional component billing, based on a review of the findings, these procedures, without a complete written report similar to that would be prepared by a specialist in the field, does not meet the conditions for separate payment of the service. So ...

And then we go on and on. There's several good citations there. And that one's right out of the -- you know, the interpretive manual. And then the written report is out of the C.F.R.

So -- and then there's a citation from the American -- again, AMA related to -- I think this is related to -- that's similar to the citation that's already written out in my report in one section -- I'm not sure which one it is -- about

the -- you know, you need to -- if you're going to -- a citation in the E&M service does not substitute for a separate, distinctly identifiable signed written report.

So we can go on. There are other areas here, but if you want to go on.

Q. Well, Doctor, I've asked you about regulations, and so you've identified one for me, which was the 415.120 that's your Exhibit 8. And that does not say "stand-alone report." Right?

A. It says -- do you mean for the C.F.R.?

Q. That's right. And the --

A. It says the written report. Yes. It says a written report.

And then the written report in the regulations is further interpreted in the interpretation manuals for Medicare, which is what they're for.

Q. Sir, does the regulation say "stand-alone report"?

A. Not in that -- not in the C.F.R. one. It does not.

Q. Okay. And then you reference another C.F.R. in Exhibit 9, 415.102. Right?

A. Right.

C E R T I F I C A T E

I, Rebecca J. Callow, Registered Merit Reporter and Notary Public of State of Texas, hereby certify to the following.

That the witness, JAMES E. ALEXANDER JR., M.D., was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the original deposition was delivered to ________________________________.

That a copy of this certificate was served on all parties and/or the witness shown herein on _____________.

I further certify that pursuant to FRCP Rule 30(f)(1) that the signature of the deponent:

[ ] was requested by the deponent or a party before the completion of the deposition and is to be returned within 30 days from date of receipt of the transcript. If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

[ ] was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys to the action in which this proceeding was taken. Further, I am not a relative or employee of any attorney or record in this cause, nor am I financially or otherwise interested in the outcome of the action.

SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 23rd day of July 2020.

____________________________

Rebecca J. Callow, RMR, CRR, RPR
Notary Public, Travis County, Texas
My Commission No. 12955701-3
Expires: 09/12/2021

CERTIFICATE OF DEPONENT

I hereby certify that I have read the foregoing pages of my deposition testimony in this proceeding, and with the exception of changes and/or corrections, if any, find them to be a true and correct transcription thereof.

J. E. Alexander Jr. MD

Deponent

Aug. 20, 2020

Date

NOTARY PUBLIC

Subscribed and sworn to before me this 20th day of August, 2020.

COURTNEY CUMBIE
My Notary ID # 132083216
Expires July 11, 2023

Notary Republic

My Commission Expires: July 11, 2023

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

ERRATA SHEET

PAGE -- LINE -- CORRECTION/REASON → * ALL REASONS ARE CORRECTIONS OF INCORRECT WORDING IN TRANSCRIPT

73 21 "IMPLEMENTING" SHOULD READ "INTERPRETIVE"/ *

74 7 "IMPLEMENTING" SHOULD READ "INTERPRETIVE"/ *

106 1 "NM GUIDELINES" SHOULD READ "E + M GUIDELINES"/ *

107 17 "MEDICAL DIRECTORS." SHOULD READ "MEDICARE."/ *

114 15 DELETE "A --" / *

114 16 "SOMETIMES WHAT" SHOULD READ "SOMETHING THAT"/ *

115 19 "THE REGULATION IN THE C.F.R" SHOULD READ "THE DEFINITION IN MEDICARE LAW"/ *

115 20 DELETE "I BELIEVE THAT SAME DEFINITION IS" AND ADD "THE REGULATION"/ *

138 16 "EVALUATION MANAGEMENT" SHOULD READ "EVALUATION AND MANAGEMENT SERVICES" + DELETE "STUDIES"/ *

~~140~~ 156 10 DELETE "MEDICAL" SUBSTITUTE "MEDICARE" (WITH CAPITAL M)/ *

174 20 DELETE "EXPECTS". SUBSTITUTE "EXPECTATIONS"/ *



NO ADDITIONAL CORRECTIONS.

[signature] M.D.

AUG. 20, 2020