IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATED OF AMERICA *ex rel.*, TIFFANY MONTCRIEFF, *et al.*, | § | |
| Relators, Plaintiffs, | § | |
| v. | § | Case No. 5:17-CV-00317-XR |
| PERIPHERAL VASCULAR ASSOCIATES, P.A., | § | |
| Defendant. | § | |

**<u>DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Peripheral Vascular Associates, P.A. ("PVA" or "Defendant") respectfully seeks reconsideration of portions of the Court's December 14, 2020 Order ("Order") granting, in part, Relators' Motion for Summary Judgment with regard to the "Wrong Provider Tranche." PVA specifically requests the Court reconsider and reverse its finding "that there is no genuine issue of material fact as to the materiality of claims that encompass the Wrong Provider Tranche." ECF No. 123 at p. 47. In turn, the Court should grant summary judgment to PVA because without materiality there cannot be liability under the False Claims Act ("FCA").

Critical to this decision, the Court incorrectly determined that the submission of claims with an incorrect provider name met the FCA's materiality requirement. The Court stated that "language from CMS, viewed in conjunction with American courts' understanding that the submission of claims under the wrong physician's name generally leads to FCA liability…leads the Court to conclude that the Government would not have paid these claims if it knew of their falsity." ECF No. 123 at p. 48. Such a conclusion improperly substitutes the Court's subjective belief for that of the Centers for Medicaid & Medicaid Services ("CMS" or "Medicare"). Both

CMS (the client agency overseeing the Medicare program) and the U.S. Department of Justice (charged with bringing FCA cases on behalf of CMS) routinely take the opposite position, absent some compelling reason not present here. In addition to the cases cited by PVA previously, a recent decision from the U.S. District Court for the Eastern District of Pennsylvania demonstrates the false premise underlying the Court's holding regarding materiality. In that case, "[t]he claims' alleged falsity was not material because the government would have paid them regardless of whose NPI was on the form." *U.S. ex rel. Alejandro v. Philadelphia Vision Ctr.*, No. CV 20-2027, 2021 WL 3051908, at *3 (E.D. Pa. July 20, 2021) (internal quotations omitted). This case is no different.

Respectfully, the Court committed reversible error in finding against PVA on the Wrong Provider Tranche. PVA therefore seeks to correct that error to promote justice and judicial efficiency and avoid having the Order reversed on appeal.

## STANDARD OF REVIEW

A court may reconsider and "revise at any time" "any order or other decision ... [that] does not end the action." Fed. R. Civ. P. 54(b). As the Fifth Circuit has clarified, when a district court is asked to reconsider an order, and not a judgment, the court should reconsider the order under Rule 54(b), and that rule's own discretionary standards. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336–38 (5th Cir. 2017). It is an abuse of discretion to apply the Rule 59(e) standard to the reconsideration of an interlocutory order. *Cook v. Flight Servs. & Sys., Inc.*, No. CV 16-15759, 2019 WL 2067640, at *1 (E.D. La. May 10, 2019) (citing *Kroger*, 864 F.3d at 336). Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence," and it is "an extraordinary remedy that should be used sparingly." *Id*. (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)).

By contrast, under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, ***even in the absence of new evidence or an intervening change***

***in or clarification of the substantive law***." *Id.* at 336 (citation omitted). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015) (internal citations omitted).

Whereas Rule 59(e) has a strict prohibition against considering new arguments that could have been raised before the district court's ruling, Rule 54(b) has no such prohibition. *Id.* at 337 (vacating district court order for improper use of Rule 59(e) standard instead of "more flexible Rule 54(b)" standing; and remanding for district court to "construe the procedural rules with a preference toward resolving the case on the merits and avoiding any dismissal based on a technicality," per Fed. R. Civ. P. 1); *see also Saint Annes Dev. Co. v. Trabich*, 443 Fed. App'x 829, 831–32 (4th Cir. 2011) (vacating a partial summary judgment order and remanded for reconsideration of a Rule 54(b) motion where district court erroneously denied the motion for failing to satisfy the requirements of Rule 59(e), explaining that "[t]he power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders.").

**REASONS FOR RECONSIDERATION**

The FCA "is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2004 (2016). Nor is it a catchall for mere regulatory transgressions. *See U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) *(quoting U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997)) ("The FCA is not a general 'enforcement device' for federal statutes, regulations, and contracts."). The Court's ruling

"unjustifiably broaden[s] the scope of liability under the FCA," much like arguments rejected in a recent case involving allegedly false claims based on allegations that claims were submitted representing an incorrect rendering physician. *U.S. ex rel. Swafford v. Borgess Medical Center*, 98 F. Supp.2d 822, 828 (2000), *aff'd*, 24 Fed. App'x 491, 2001 WL 1609913 (6th Cir. Dec. 12, 2001).

The decision in *United States ex rel. Alejandro v. Philadelphia Vision Center* illustrates why this Court's materiality finding regarding the Wrong Provider Tranche claims is incorrect and should be revised. In *Alejandro*, the relator was a patient of Philadelphia Vision Center from 2009 to 2016. *Alejandro*, 2021 WL 3051908 at *1. Similar to this case, the defendant in *Alejandro* submitted claims for reimbursement using the CMS-1500 form. *Id.*; *see also* ECF No. 123 at p. 3. The relator alleged the owner of Philadelphia Vision Center submitted claims for Medicare and Medicaid reimbursements under the National Provider Identifier ("NPI") number of one optometrist, even though the actual care was provided by a different optometrist. *Alejandro*, 2021 WL 3051908 at *1. According to the relator's allegations, "for years for multiple patients and on [a] regular basis" submitted bills using the NPI numbers for two optometrists for services they did not perform. *Id.* The defendant acknowledged submitting reimbursement requests using an NPI number that did not match the optometrist that saw a particular patient because it was "much more simple to keep it all under one NPI number." *Id.*

The Court in *Alejandro* noted that the relator did "not allege facts to show Defendants ever billed for services that were not provided or for services provided by an optometrist with an expired license or by anyone who was unlicensed." *Id.* This is exactly the same situation here. Relators allege PVA submitted bills to Medicare representing the wrong "rendering" physician. ECF No. 95 at 31. They contend PVA submitted 1,690 claims that contained the wrong physician's signature based on the review of a vascular study using MedStreaming—PVA's

picture archiving system. ECF No. 95 at 31. In its Opinion on the parties' cross-summary judgment motions, this Court held that PVA submitted false claims where an incorrect physician was listed on the claim and stated that "[s]ubmitting bills to Medicare that represent the wrong rendering physician is plainly a false claim." ECF No. 123 at p. 42-43 (citing *United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001) ("a claim may be false even if the services billed were actually provided, if the purported provider did not actually render or supervise the service.")). The Court went on to find that "[a]ny bills submitted under the name of a physician who did not render the services described therein are false." ECF No. 123 at p. 43.

Based on PVA's prior submission, and recent trends supporting its position, PVA submits the Court erred in its assessment there was no genuine issue of material fact regarding the Wrong Provider Tranche claims. This Court has previously acknowledged that *Escobar* instructs courts to consider whether: "(1) the alleged violations are conditions of payment;" (2) "the Government would deny [d]efendants reimbursements payments if it had known of these alleged violations;" and (3) noncompliance is minor or substantial. *U.S. ex rel. Integra Med Analytics, LLC v. Creative Sols. In Healthcare Inc.*, 2019 WL 5970283 at *8 (W.D. Tex. Nov .13, 2019); citing *Escobar*, 136 S. Ct. at 2003. No one factor is dispositive, and the analysis is holistic. *Id.*; *citing* Lemon, 924 F.3d at 161.

A holistic analysis makes clear that Relators fail to meet the materiality standard. Here, the Court found that "[s]trong evidence shows that the Government probably would not have reimbursed PVA for claims which listed the name of a physician who did not render the services described therein had it known such claims had been submitted." ECF No. 123 at p. 47. The Court points to language from the Medicare Program Integrity Manual relating to the misrepresentation of the identity of the individual who furnished the services, stating "[t]hat this particular conduct is listed as an example of Medicare fraud is telling." ECF No. 123 at p. 47 (citing to ECF No. 95

Ex. 205 § 4.2.1). Finding in favor of Relators on the issue of materiality in relation to the Wrong Provider Tranche, the Court stated:

> This language from CMS, viewed in conjunction with American courts' understanding that the submission of claims under the wrong physician's name generally leads to FCA liability, *see Mackby*, 261 F.3d at 826, leads the Court to conclude that the Government would not have paid these claims if it knew of their falsity.

ECF No. 123 at p. 48. But *Mackby* is entirely distinguishable from the allegations in this case.

In *Mackby*, the government alleged that an owner of a physical therapy clinic submitted false claims using his physician father's Provider Identification Number ("PIN"). *U.S. v. Mackby*, 261 F.3d 821, 824 (9th Cir. 2001).[1] Medicare pays for physical therapy services rendered by a physician, a qualified employee of a physician, or a qualified physical therapist in independent practice ("PTIP"). *Id.* Importantly, Medicare caps the amount it will pay a PTIP per year on behalf of any one patient, but there are no payment caps on amounts Medicare will pay for physical therapy services provided by or under the supervision of a physician. *Id.* at 825. The owner of the physical therapy clinic was a layperson - he was not licensed or qualified to provide any medical services. *Id.* After he purchased the clinic, the owner was knowingly using his father's PIN in boxes 24 and 33 of the HCFA 1500 form, which allowed him to avoid the Medicare payment cap and collect payment in excess of what he would have received as a PTIP. In other words, the owner's use of his father's PIN directly affected the reimbursement paid by Medicare.

Here, Relators made baseless allegations without providing actual medical record documentation to show that the physician under whose NPI was used on the CMS-1500 was not the physician that read and interpreted a patient's vascular ultrasound. Even assuming Relators' allegations as true, the inclusion of an incorrect NPI would not be a false claim because it would

[1] Of note, which may be applicable to this case in the future, the Ninth Circuit in *Mackby* held "the civil sanctions provided by the False Claims Act are subject to analysis under the Excessive Fines Clause because the sanctions represent a payment to the government, at least in part, as punishment." 261 F.3d 821, 830 (9th Cir. 2001).

not affect reimbursement from Medicare. In every claim submission, box 33 of the CMS-1500 contained PVA's NPI. Every single physician is within the PVA group practice and therefore each claim was correctly submitted to Medicare and other federal health care programs using the correct group provider number.[2] While the name of a specific physician may be different, given the dynamics of a large physician practice, geographical disparities, and on-call schedules, the uncontroverted fact remains that PVA alone performed the services, submitted the Medicare claims, and identified the right group practice's NPI, name, and address to Medicare. An incorrect name in box 24 on the same CMS-1500 that lists to correct group practice NPI in box 33 is not a false claim, and is not material - it would have no impact on payment.

There simply is no argument that Relators can satisfy materiality for the Wrong Provider Tranche. A misrepresentation is only material if it "goes 'to the very essence of the bargain.'" *U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 489 (3d Cir. 2017) (quoting *Escobar*, 136 S. Ct. at 2003 (n.5)). As in *Alejandro,* Relators here failed "to allege facts which could plausibly show that the relevant claims would not have been paid if the correct NPI number, as opposed to that of a different [provider], had been used instead." *Alejandro*, 2021 WL 3051908, at *3. The Court in *Alejandro* concluded while use of a single NPI "was perhaps sloppy, lazy, or even wrong, nothing suggests 'Congress intended conduct such as this to morph into an actionable fraud against the government.'" *Id.* at *3.(quoting *Spay v. CVS Caremark Corp.*, 875 F.3d 746,765 (3d Cir. 2017)). Even taking those allegations as true, the Court held claim submissions would not have influenced the "payment or receipt of money." *Id.* (quoting *United States ex rel. Rockey v. Ear Inst. of Chicago, LLC*, 92 F. Supp. 3d 804, 822 (N.D. Ill. 2015)). Minor or insubstantial noncompliance cannot be "material." *Id.* (*citing* to *Escobar*, 136 S. Ct. at 2003). The same is true

---

[2] *NPI: What You Need to Know*, Centers for Medicare & Medicaid Services Medicare Learning Network, March 2021, available at: https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/NPI-What-You-Need-To-Know.pdf.

here. Relators provided no proof or allegations that PVA ever billed for services that weren't provided, or billed for services provided by a physician outside of PVA's group practice. Relators' allegations regarding the Wrong Provider Tranche would not have influenced the payment or receipt of money, and are therefore immaterial.

The *Alejandro* decision examines other cases that support reversal of this Court's materiality finding with regard to the Wrong Provider Tranche. In *Spay*, the U.S. Court of Appeals for the Third Circuit held that the use of "dummy Prescriber IDs" to submit prescription claims did not sufficiently allege materiality where the dummy IDs "were intended as a technical, formulaic way of preventing a computer program from denying legitimate claims for reimbursement and payment for prescriptions that were actually disbursed to Medicare recipients" and "the claims themselves were neither false nor fraudulent." *Id.*; quoting *Spay*, 875 F.3d at 765. Further, the Court referenced the *Rockey* case, in which the Northern District of Illinois found that a relator's claims "founder[ed] on materiality" where it was alleged claims for audiologists' services were submitted using a physician's NPI, but the claims were "limited to those for which Medicare would have reimbursed the Ear Institute even if the audiologists' NPIs had been listed on the claims forms." *Id.*; quoting *Rockey*, 92 F. Supp. 3d at 822. The Court held the alleged falsity "was not material" "because the government would have paid [them] regardless of whose NPI was on the form." *Id.*

This Court's granting of summary judgment regarding the Wrong Provider Tranche goes against the cases examining identical issues and does just what the *Alejandro* court refused to do, significantly broadening the scope of the FCA materiality standard where Relators' have failed to "show that the relevant claims would not have been paid if the correct NPI number, as opposed to that of a different [provider], had been used instead." *See Alejandro*, 2021 WL 3051908 at *3.

Indeed, the evidence in this case supports a finding that as a matter of law, Relators' cannot prove materiality for the Wrong Provider Tranche.

**CONCLUSION**

There is reversible error in this case as the Order incorrectly determined the submission of claims with an incorrect provider name met the materiality standard under the FCA. Now the Court has the opportunity to address this oversight. For the foregoing reasons, PVA asks the Court to enter an order granting PVA's motion to reconsider, deny Relators' Motion for Summary Judgment with respect to the Wrong Provider Tranche claims, and grant PVA summary judgment on those claims.

Respectfully submitted,

*/s/ Sean McKenna*
Sean McKenna
Texas Bar No. 24007652
smckenna@spencerfane.com
Mark A. Cole
Admitted Pro Hac Vice
mcole@spencerfane.com
SPENCER FANE, LLP
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
Telephone: 214-459-5890
Facsimile: 214-750-3612

Jeff Wurzburg
Texas Bar No. 24105140
LOCKE LORD, LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701
Telephone: 512-305-4840
Facsimile: 512-305-4800

Stephen J. Romero
State Bar No. 24046756
stephen.romero@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US, LLP
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone: 210-224-5575
Facsimile: 210-270-7205

*Attorneys for Defendant Peripheral Vascular Associates, P.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2021, I caused this pleading to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Justin T. Berger
Sarvenaz J. Fahimi
Cotchett Pitre & McCarthy, LLP
840 Malcolm Road
Burlingame, California 94010

Wallace M. Brylak, Jr.
Brylak & Associates
15900 La Cantera Parkway, Suite 19245
San Antonio, Texas 78256

AUSA John M. Deck
Brian McCabe
U.S. Department of Justice
United States Attorney's Office for the Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

*/s/ Sean McKenna*
Sean McKenna
Spencer Fane, LLP