**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. TIFFANY MONTCRIEFF, ROBERTA MARTINEZ, and ALICIA BURNETT,**<br><br>Plaintiffs,<br><br>vs.<br><br>**PERIPHERAL VASCULAR ASSOCIATES P.A.,**<br><br>Defendant. | Civil Action No. SA-17-CV-00317-XR |

# RELATORS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING, IN PART, RELATORS' MOTION FOR SUMMARY JUDGMENT WITH REGARD TO THE WRONG PROVIDER TRANCHE

## I. INTRODUCTION

Defendant Peripheral Vascular Associates, P.A. ("PVA") seeks reconsideration of portions of the Court's December 14, 2020 Order ("Order") granting, in part, Relators' Motion for Summary Judgment with regard to the "Wrong Provider Tranche." Specifically, PVA requests the Court reverse its finding of materiality as related to those claims, based on an unpublished and factually distinguishable case from the Eastern District of Pennsylvania, *U.S. ex rel. Alejandro v. Philadelphia Vision Ctr.*, No. CV 20-2027, 2021WL 3051908 (E.D. Pa. July 20, 2021).

PVA uses *Philadelphia Vision* as a launching pad to rehash materiality arguments addressed at length on summary judgment. Worse yet, PVA cites cases and makes expanded argument that it could have raised at summary judgment. PVA has already had at least three bites at the apple on the issue of materiality—in its Motion to Dismiss (ECF No. 27) its Motion for Summary Judgment (ECF No. 94), and its Opposition to Relators' Motion for Summary

Judgment (ECF No. 112). The Court's rulings on those motions were correct, and PVA has not provided any new authority or other grounds for reconsideration under Federal Rule of Civil Procedure 54(b).

As the Court's Order accurately reflects, *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 (2016), and the Fifth Circuit cases following *Escobar*, require only that a violation under the False Claims Act ("FCA") *could have* impacted the Government's decision to reimburse a provider's claim. Recent cases only further confirm this principle. Moreover, in addition to the established caselaw, as previously briefed and correctly ruled, the Centers for Medicare and Medicaid Services ("CMS") manual directly defines the conduct relating to the "Wrong Provider Tranche" at issue here as fraudulent, and thus material.

PVA had its opportunity to fully brief and argue the issue of materiality in the Parties' cross-motions for summary judgment last year. A non-binding, unpublished, and fully distinguishable case from the Eastern District of Pennsylvania does not give PVA a license to relitigate arguments already carefully and correctly considered by the Court. PVA's motion is a waste of judicial and party resources, substantively flawed, and should be denied.

## II. ARGUMENT

### A. PVA Has Not Provided Any Basis for Reconsideration under Rule 54(b)

PVA misstates the reach of Rule 54(b), and mistakenly believes it can merely rehash its prior arguments relating to materiality.

The Federal Rules of Civil Procedure do not explicitly recognize a motion for reconsideration. *See Dos Santos v. Bell Helicopter Textron, Inc. Dist*., 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (denying motion for reconsideration) (citing *St. Paul Mercury Ins. Co. v. Fair Grounds Corp*., 123 F.3d 336, 339 (5th Cir.1997)). However, Rules 54(b), 59(e) and 60(b) allow revision under limited circumstances. Rule 59(e) and Rule 60(b) apply only to final judgments. *Id.* (citations omitted). Rule 54(b) applies to interlocutory orders. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or

the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

Rule 59(e) only permits a party "to correct manifest errors of law or fact or to present newly discovered evidence." *Cook v. Flight Servs. & Sys., Inc.*, No. CV 16-15759, 2019 WL 2067640, at *1 (E.D. La. May 10, 2019) (citations omitted). Rule 59(e) is used "sparingly" as an "extraordinary remedy." *Id.* (citations omitted).

While the standard under Rule 54(b) (applicable to this case) appears on its face to be "less exacting" than that imposed by Rules 59 and 60, "considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Dos Santos*, 651 F. Supp. 2d at 553 (citations omitted). "That is, considerations such as whether the movant is attempting to rehash its previously made arguments or is attempting to raise an argument for the first time without justification bear upon the Court's review of the motion for reconsideration." *Id.* (citations omitted)

"Under Rule 54(b), the district court possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient. . . . However, Rule 54(b) motions are **not the proper vehicle for *rehashing evidence, legal theories, or arguments***." *Minyard v. Double D Tong, Inc.*, 237 F. Supp. 3d 480, 490 (W.D. Tex. 2017), *on reconsideration*, No. MO:16-CV-00313-RAJ, 2017 WL 5640818 (W.D. Tex. Mar. 22, 2017) (emphasis added.) (citations and internal quotations omitted).

This Court has stated that "many of the same policy considerations apply both to motions for reconsideration under Rule 54(b) and to motions for reconsideration under Rule 59(e)." *WorkSTEPS, Inc. v. ErgoScience, Inc.*, 88 F. Supp. 3d 752, 758 (W.D. Tex. 2015); *see also eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 748–49 (E.D. Tex. 2012) (denying motion for reconsideration).

The Fifth Circuit clarified the standard for evaluating reconsideration of an interlocutory order in *Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017). While the Court confirmed

that the Rule 54(b) standard applies to interlocutory orders, and not Rule 59(e), in also confirmed that reconsideration is purely in the District Court's discretion. *See id.* at 336.

Since *Austin*, this Court has clarified the standard and stated,

> [t]he mere fact that Rule 54(b) provides for a more flexible approach to reviewing motions for reconsideration does not mean that such motions should automatically be granted. Rather, Rule 54(b)'s approach "reflect[s] the 'inherent power of the rendering district court to afford such relief from interlocutory judgments *as justice requires*.' " *Austin*, 864 F.3d at 336 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)). That analysis should include, for example, *any subsequent evolution in the case at hand*. Indeed, the Austin opinion itself noted that the district court, had it applied Rule 54(b), 'would have had the discretion to reconsider the motion for leave to file a surreply in light of both the newly filed expert report and Austin's equitable arguments.'

*Halprin v. Fed. Deposit Ins. Corp*., No. 5:13-CV-1042-RP, 2017 WL 9808438, at *2 (W.D. Tex. Oct. 17, 2017) (denying reconsideration) (emphasis added).

Further, post-*Austin* Courts in this Circuit have made clear that reconsideration must be warranted by new caselaw or developments and cannot be based on the same arguments previously set forth. *See, e.g., Cook v. Flight Servs. & Sys., Inc.,* No. CV 16-15759, 2019 WL 2067640, at *2 (E.D. La. May 10, 2019) (holding that reconsideration was not warranted, stating, "[e]ven under a Rule 54(b) standard, a court need not rehash arguments it has already considered.").

Here, PVA is merely "rehashing" the materiality argument it made in opposition to Relators' Motion for Summary Judgment. Indeed, PVA has not shown a "subsequent evolution in the case," or any other factor that would warrant reconsideration. Rather, PVA has merely cited to non-binding authority from the Eastern District of Pennsylvania as its only ground for relitigating the same arguments relating to materiality of the "Wrong Provider Tranche." As explained further below, PVA's attempt to rely on this recent case is misplaced.

**B. Billing the Wrong Provider Is Material Under the FCA**

The Court correctly ruled that PVA's claims were materially false when it billed numerous claims under the wrong physician's name. *See United States v. Mackby*, 261 F.3d 821,

826 (9th Cir. 2001) ("a claim may be false even if the services billed were actually provided, if the purported provider did not actually render or supervise the service.") (citing *Peterson v. Weinberger*, 508 F.2d 45, 52 (5th Cir.1975)).

PVA continues to assert the wrong test for materiality, arguing that Relators have "failed to 'show that the relevant claims *would not have been paid* if the correct NPI number, as opposed to that of a different [provider], had been used instead.'" Mot. at 8 (quoting *Alejandro*, 2021 WL 3051908 at *3) (emphasis added). But even post-*Escobar*, Relators are not required to show that the government *would not have paid* the claims but for the fraud. The Fifth Circuit still requires "proof only that the defendant's false statements *could have influenced* the government's pay decision or had the potential to influence the government's decision, not that the false statements actually did so." *U.S. ex rel. Harman v. Trinity Industries Inc.*, 872 F.3d 645, 661 (5th Cir. 2017) (emphasis added); *see also U.S. ex rel. Longhi Lithium Power Technologies*, 575 F.3d 458 (5th Cir. 2009) (same standard prior to *Escobar*). Other recent cases confirm this standard. *See, e.g., United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315, 324 (3d Cir. 2021).

As thoroughly explained in the summary judgment context, Medicare makes clear that it considers billing under the wrong provider to be a quintessential example of fraud and abuse. For example, the Medicare Program Integrity Manual, Chapter 4 – Program Integrity, provides a detailed list of "Examples of Medicare Fraud," including "Misrepresenting dates and descriptions of services furnished *or the identity of . . . the individual who furnished the services*."[1] ECF No. 115 at 11 and ECF No. 95-14 at Ex. 205, § 4.2.1 (emphasis added).

[1] PVA argues that all of its claims to Medicare included PVA's entity NPI, and therefore its claims were not false. Mot. at 6-7. As an initial matter, PVA cites to no evidence in the record to support its assertion that it always included PVA's NPI in box 33 of the CMS-1500. Even if there was such evidence, however, PVA cites no authority for the proposition that Medicare cares only about box 33, as opposed to the field identifying the individual who furnished the services. The "Examples of Medicare Fraud" specifically call out misrepresentation of the identify of "the individual who furnished the services." ECF No. 115 at 11. PVA's sole citation is to a CMS manual related to NPI numbers. That manual describes how a group practice can obtain an NPI number, but nowhere does it address what NPI number is material or important for purposes of billing.

Moreover, as previously briefed, an internal 2013 e-mail string confirms that PVA knew the importance of billing under the correct physician's identifier. *See* ECF. No. 115 at 11, Ex. 16. ("Dr. Macris is the one who read the study, so the lab should be billed under him."). PVA further confirmed the importance of billing under the correct physician in internal documents related to its 2017 compliance project. In those documents, PVA's Vascular Lab Committee laid out three motives for the "[t]ransition to billing after studies are read," as (1) "**Ensure billed to appropriate physician**," (2) "Ensure no audit requests for incomplete medical records," and (3) "Allow for docs to read each others stuff." ECF No. 95-5, Ex. 31 at DEF007698; ECF No. 95-1, App. No. 47 (emphasis added). PVA thus knew these issues were important, and even understood why.[2]

PVA's reliance on *United States ex rel. Alejandro v. Philadelphia Vision Center*, No. CV 20-2027, 2021 WL 3051908 (E.D. Pa. July 20, 2021) does not alter the analysis, for several reasons. First, *Philadelphia Vision* is an Eastern District of Pennsylvania case which relies primarily on Third Circuit law, and therefore, is not binding authority. *Id.* at *3-4.

Second, *Philadelphia Vision* was decided at the judgment on the pleadings stage, and the Court granted Relator leave to amend. *Id.* at *1, *4.

Third, the district court in *Philadelphia Vision* applied a heightened "would not have been paid" standard for materiality that is at odds with the standard in the Fifth Circuit. The court explained: "The Complaint fails to allege facts which could plausibly show that the relevant claims **would not have been paid** if the correct NPI number, as opposed to that of a different optometrist, had been used instead." *Id.* at *3 (emphasis added). As detailed above, in

[2] The Government routinely prosecutes cases where the wrong physician bills Medicare and publicly declares the practice as a violation of the FCA. *See, e.g.,* https://www.justice.gov/usao-sdca/pr/san-diego-eye-doctors-pay-950000-settle-medicare-billing-fraud-allegations ("The United States also alleged that Drs. Smith and Robinson improperly received Medicare payments when another San Diego Retina Associates physician provided care to Medicare patients but Drs. Smith and Robinson submitted claims that misidentified the treating physician."); https://www.justice.gov/usao-wdok/pr/oklahoma-doctor-agrees-pay-580000-settle-allegations-submitting-false-claims-medicare ("First, the United States alleges that in 2011, he allowed Prevention Plus to use his National Provider Identifier numbers (NPIs) to bill Medicare for evaluation and management physical therapy services that he did not provide or supervise.")

the Fifth Circuit (and most others), Relators are not required to establish that the government would not have paid a claim but for the falsity, but instead need only show "that the defendant's false statements *could have influenced* the government's pay decision or had the potential to influence the government's decision, not that the false statements actually did so." *U.S. ex rel. Harman v. Trinity Industries Inc.*, 872 F.3d 645, 661 (5th Cir. 2017) (emphasis added).

Fourth, *Philadelphia Vision* is factually distinguishable in multiple ways. In that case, the relator was an optometry patient treated by the defendant. *Philadelphia Vision*, 2021 WL 3051908 at *3. Unlike the instant case, only the services of optometrists were at issue—not physicians. *Id.* Specific guidelines and rules associated with optometry were considered by the court, including a Pennsylvania statute pertaining to optometrists. *Id.*

More importantly, *Philadelphia Vision* did not involve Medicare or its requirements. Instead, the claims at issue were submitted to a private company that administered the relator's *Medicaid* benefits. *Id.* at *1 ("Defendants did not directly bill Medicaid for services rendered to relator [] Instead, Barco submitted a claim to Alejandro's vision plan, Superior Vision Benefit MGT.").

Most critically, the defendant in *Philadelphia Vision* submitted evidence showing that it had explicitly notified the vision plan ("Superior Vision") of the allegedly false billing practices, and that Superior Vision had taken no remedial action in response. *Id.* at *2. As summarized by the district court,

> [Defendant] emailed Superior Vision to explain he had "been billing services under Dr. Brooks as it is more efficient" but said in the future he would log out and log back in "to separate the claims for each doctor's exams." He asked whether Superior Vision required him to do so and sought "any written guidelines ... to explain exactly how the billing should be done." . . . Superior had taken no adverse action after he notified it of his billing practices. [] Instead, it offered "retraining on billing procedures to ensure that the correct coding was done on future submissions."

*Id.* (quotations and citations omitted).

In this case, of course, there is no comparable evidence that PVA ever informed Medicare that it was billing under the wrong providers' names. Accordingly, *Philadelphia Vision* is not a valid basis for reconsideration, and the Court ruled correctly on the "Wrong Provider Tranche."

## III. CONCLUSION

For the foregoing reasons, Relators respectfully request the Court deny PVA's motion.

Dated: September 23, 2021

By: *_/s/ Sarvenaz J. Fahimi_*

Justin T. Berger (*pro hac vice*)
Sarvenaz J. Fahimi (*pro hac vice*)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jberger@cpmlegal.com
sfahimi@cpmlegal.com

Wallace M. Brylak, Jr. (Bar No. 03283360)
BRYLAK LAW
15900 La Cantera Parkway, Suite 19245
San Antonio, Texas 78256
Telephone: (210) 733-5533
Facsimile: (210) 558-4804
wbrylak@brylaklaw.com

*Counsel for Relators*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of September, 2021, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Wallace M. Brylak, Jr.
Brylak & Associates
15900 La Cantera Pkwy, Suite 19245
San Antonio, TX 78256
wbrylak@brylaklaw.com

Sean McKenna
Mark A. Cole
Spencer Fane LLP
2200 Ross Avenue
Suite 4800 West
Dallas, TX 75201
smckenna@spencerfane.com
mcole@spencerfane.com

Stephen J. Romero
Jeff Wurzburg
Norton Rose Fulbright US LLP
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, TX 78205
stephen.romero@nortonrosefulbright.com
jeff.wurzburg@nortonrosefulbright.com

John M. Deck
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216
John.deck@usdoj.gov

*/s/ Sarvenaz J. Fahimi*
Sarvenaz J. Fahimi