IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., TIFFANY MONTCRIEFF, et al., | § | |
| | § | |
| Relators, Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:17-CV-00317-XR |
| | § | |
| PERIPHERAL VASCULAR ASSOCIATES, P.A., | § | |
| | § | |
| Defendant. | § | |

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PVA seeks reconsideration of this Court's mistaken determination that the submission of claims with a misaligned provider name meets the False Claims Act's ("FCA") materiality requirement for three simple reasons: (1) The Court in *Alejandro*[1] highlights the lack of materiality in Relators' allegations and correctly held that inclusion of the wrong provider on a CMS-1500 form, relating to a claim for care stemming from the same medical practice, would have had no impact on the government's determination to remit a payment to PVA; (2) Minor or insubstantial compliance cannot be material; and (3) The *Mackby* case relied upon by the Court is clearly distinguishable and should be limited in application when considering the materiality of the allegations in this case. PVA respectfully requests that the Court enter an order granting PVA's Motion for Reconsideration, deny Relators' Motion for Summary Judgment with respect to the Wrong Provider Tranche claims, and grant PVA summary judgment on those claims.

[1] *U.S. ex rel. Alejandro v. Philadelphia Vision Ctr.*, No. CV 20-2027, 2021 WL 3051908 (E.D. Pa., July 20, 2021).

PVA brings the *Alejandro* case before the Court not to rehash arguments, as Relators' incorrectly allege, but in support of the clear principle that "[t]he claims' alleged falsity was not material because the government would have paid them regardless of whose NPI was on the form." In *Alejandro,* the defendant acknowledged using the NPI numbers for two optometrists for services they did not perform because it "was must more simple to keep it all under one NPI number." *Alejandro*, 2021 WL 3051908 at *1. The decision in *Alejandro* highlights a straightforward determination regarding materiality with synonymous facts, and underscores the need to correct a clear error here. Relators fail "to allege facts which could plausibly show that the relevant claims would not have been paid if the correct NPI number, as opposed to that of a different [provider], had been used instead." *Alejandro*, 2021 WL 3051908, at *3.

Relators' primary assertion is the analysis by the *Alejandro* court has no bearing because the 5th Circuit Court of Appeals takes a relaxed view of materiality, which has not changed since *Escobar* and is always satisfied if the wrong provider's name is included on a claim. Relators' contention is not legally or factually correct and directly conflicts with controlling U.S. Supreme Court precedent. *Escobar* makes clear that the materiality requirement is demanding, and requires more than the ability to deny a claim based on noncompliance. *See, Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 136 S. Ct. 1989, 2003 (2016). The U.S. Supreme Court stated clearly that it is ***not*** "sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id*. Even if this Court were to ignore *Escobar's* explicit direction to evaluate whether the government would have paid a claim and only looks to a possibility that the government might not pay—the so-called "could have" influenced standard emphasized by Relators[2] - the inescapable conclusion remains:

[2] There is only one test for materiality under *Escobar* and it is a demanding test.

including a different PVA physician on a claim form was not material. There is no factual basis to allege including an incorrect provider in these circumstances would be material. Substituting the correct provider would have made no difference in the payment. There is no difference in the government's view, and, therefore, the wrong provider could not have influenced the payment decision here. *Alejandro* makes this clear.

In every claim submission, box 33 of the CMS-1500 form contained PVA's NPI. Every physician so named is within PVA's group practice. Therefore each claim was correctly submitted to Medicare and other federal health care programs using the correct group provider number.[3] While the name of a specific physician may be different, given the dynamics of a large physician practice, geographical disparities, and on-call schedules, the uncontroverted fact remains that PVA alone performed the services, submitted the Medicare claims, and identified the right group practice's NPI, name, and address to Medicare. An incorrect name in box 24 on the same CMS-1500 that lists to correct group practice NPI in box 33 is not a false claim, and is not material - it would have <u>no</u> impact on payment. Relators' response focuses on the Medicare Program Integrity Manual to surmise the government would be entitled to refuse payment when the wrong provider is listed on a claim form. That same conjecture was considered and expressly rejected by the U.S. Supreme Court:

> These rules lead us to disagree with the Government's and First Circuit's view of materiality: that any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation.

*Escobar*, 136 S. Ct. at 2004. The claims arising from the wrong provider tranche are not material and foreclose a finding of liability under the FCA.

---

[3] *NPI: What You Need to Know, Centers for Medicare & Medicaid Services Medicare Learning Network*, March 2021, available at: https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/NPI-What-You-Need-To-Know.pdf.

Relators have offered at most minor or insubstantial noncompliance, which cannot be "material." *Escobar*, 136 S. Ct. at 2003. In an ill-fated attempt to distinguish the *Alejandro* case from the facts of this case, Relators highlight a critical distinction that further illustrates the lack of materiality here. Namely, in *Alejandro* defendant knowingly submitted claims where the provider listed did not render the services. *Alejandro*, 2021 WL 3051908 at *2. Contrast a knowing presentment in *Alejandro* with the facts here – Relators allege, but did not prove with any underlying patient medical records, PVA submitted 1,690 claims with the incorrect physician's signature. In each of these instances the CMS-1500 contains PVA's NPI. Further, this represents a miniscule fraction of the claims submitted during this time period by PVA. Even if the Court agrees that limited instances of an incorrect physician NPI on the CMS-1500 "was perhaps sloppy, lazy, or even wrong, nothing suggests 'Congress intended conduct such as this to morph into an actionable fraud against the government.'" *Id.* at *3. (quoting *Spay v. CVS Caremark Corp.*, 875 F.3d 746,765 (3d Cir. 2017)).

Relators' additional attempts to distinguish *Alejandro* fall flat. Relators contend *Alejandro* was decided at the judgment on the pleadings stage. That only supports PVA's arguments because the plaintiff's allegations must be taken as true, and not proven, at that stage. Yet they still could not satisfy the materiality standard. Relators next point out *Alejandro* involved Medicaid services delivered by optometrists, not Medicare services rendered by physicians. Relators are plain wrong. *Alejandro* involved Medicare and Medicaid services rendered by optometrists, who are treated as physicians under Medicare billing guidelines. *See id.* at *1 ("Alejandro alleges Rubin submitted claims for Medicare/Medicaid reimbursements") and *3 n.4 (noting that the plaintiff alleged that optometrists were treated as physicians under Medicare billing guidelines).

Finally, Relators make no attempt to defend application of the *Mackby* case because it has no relevance to the facts here. In *Mackby*, the owner of a physical therapy clinic, a layperson without qualification to provide medical services, knowingly used his physician father's provider identification number in boxes 24 and 33 of the HCFA 1500 form to collect payments from Medicare. *U.S. v. Mackby*, 261 F.3d 821, 825 (9th Cir. 2001). Relators, without examining the medical records, put forth unsupportable allegations that the CMS-1500 contains incorrect information about the PVA physician that rendered the services that were in fact provided. Even if the allegation were true, this does not make a false claim since the reimbursement amount from Medicare would not be impacted or otherwise affected. A more germane analysis of materiality is provided by the Eastern District of Pennsylvania in *Alejandro* and within the case law cited in the decision.[4]

PVA offers these arguments, and the recently decided *Alejandro* decision, to request the Court reconsider its finding regarding the materiality of the wrong provider tranche claims in order to promote justice and judicial efficiency and avoid having the Order reversed on appeal. Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to "revise[ ] at any time" "any order or other decision ... [that] does not end the action," FED. R. CIV. P. 54(b). *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id., quoting Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*. Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the "inherent power of the rendering

---

[4] *See Spay v. CVS Caremark Corp.*, 875 F.3d 746 (3d Cir. 2017), *United States ex rel. Rockey v. Ear Inst. of Chicago, LLC*, 92 F. Supp. 3d 804 (N.D. Ill. 2015).

court to afford such relief from interlocutory judgments as justice requires." *Id.*, quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015).

For these reasons, PVA asks the Court to enter an order granting PVA's motion to reconsider, deny Relators' Motion for Summary Judgment with respect to the Wrong Provider Tranche claims, and grant PVA summary judgment on those claims.

Respectfully submitted,

*/s/ Sean McKenna*
Sean McKenna
Texas Bar No. 24007652
smckenna@spencerfane.com
Mark A. Cole
Admitted Pro Hac Vice
mcole@spencerfane.com
SPENCER FANE LLP
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
Telephone: 214-459-5890
Facsimile: 214-750-3612

Jeff Wurzburg
Texas Bar No. 24105140
LOCKE LORD LLP
600 Congress Ave., Suite 2200
Austin, Texas 78701
Telephone: 512-305-4840
Facsimile: 512-305-4800

Stephen J. Romero
State Bar No. 24046756
stephen.romero@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
Frost Tower 111 W. Houston Street, Suite
1800 San Antonio, Texas 78205
Telephone: 210-224-5575
Facsimile: 210-270-7205

*Attorneys for Defendant Peripheral Vascular Associates, P.A.*

CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2021, I caused this pleading to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Justin T. Berger
Sarvenaz J. Fahimi
Cotchett Pitre & McCarthy, LLP
840 Malcolm Road
Burlingame, California 94010

Wallace M. Brylak, Jr.
Brylak & Associates
15900 La Cantera Parkway, Suite 19245
San Antonio, Texas 78256

AUSA John M. Deck
United States Attorney's Office for the Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

*/s/ Sean McKenna*
Sean McKenna
Spencer Fane, LLP