IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, EX. REL.; TIFFANY MONTCRIEFF, RELATOR; ROBERTA A. MARTINEZ, RELATOR; AND ALICIA BURNETT, RELATOR,<br>　　　　*Plaintiffs*<br><br>v.<br><br>PERIPHERAL VASCULAR ASSOCIATES, P.A.,<br>　　　　*Defendant.* § § § § § § § § § § § § § § |  SA-17-CV-00317-XR |

## ORDER

On this date, the Court considered Defendant's motion for reconsideration (ECF No. 140), Relators' response (ECF No. 141), and Defendant's reply (ECF No. 142). For the reasons discussed more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### BACKGROUND

This False Claims Act case arises out of the alleged fraudulent billing practices of Defendant Peripheral Vascular Associates, P.A. ("PVA"), a healthcare provider. Relators filed their initial complaint under seal in April 2017. ECF No. 1. They filed their first amended complaint, also under seal, in December 2017. ECF No. 8. Relators brought this action under the authority granted by 31 U.S.C. § 3730(b), which authorizes private persons to sue for violations of the False Claims Act, 31 U.S.C. §§3729 *et seq.*, on behalf of the United States Government. Relators allege that PVA falsely billed Medicare for services it did not perform. *See* ECF No. 8.

On August 21, 2020, the parties filed cross-motions for summary judgment. ECF Nos. 94, 95. In their motion, Relators identified three distinct tranches of false claims that PVA allegedly

made, including, as is relevant here, a Wrong Provider tranche. *See* ECF No. 95, at 30–31. Relators describe false claims under the Wrong Provider tranche as those claims that PVA submitted under the wrong "rendering" physician's name. *Id.* at 31. Relators allege that PVA submitted 1,690 claims containing the wrong physician's signature. *Id.*

On December 14, 2020, the Court issued an order resolving the parties' cross-motions for summary judgment. *See* ECF No. 124. Therein, the Court denied PVA's motion for summary judgment and granted in part and denied in part Relators' motion for summary judgment. *See id.* Significantly for purposes of the instant motion, the Court found "that there is no genuine issue of material fact as to the materiality of claims that encompass the Wrong Provider Tranche." *Id.* at 47. The Court explained:

> Strong evidence shows that the Government probably would not have reimbursed PVA for claims which listed the name of a physician who did not render the services described therein had it known such claims had been submitted. As Relators point out, the Medicare Program Integrity Manual's list of "Examples of Medicare Fraud" include "Misrepresenting . . . the identity of the beneficiary or **the individual who furnished the services**." ECF No. 95 at 32–33 (citing ECF No. 95 Ex. 205 § 4.2.1) (emphasis added). That this particular conduct is listed as an example of Medicare fraud is telling. CMS uses less forceful language in its CMS Manual when it provides a list of "[e]xamples of **improper** claims." *See* ECF 95 Ex. 204 at 11 (emphasis added). Put simply, identifying conduct as "fraud" as opposed to "improper" implies a greater level of culpability associated with that conduct. This language from CMS, viewed in conjunction with American courts' understanding that the submission of claims under the wrong physician's name generally leads to FCA liability, *see Mackby*, 261 F.3d at 826, leads the Court to conclude that the Government would not have paid these claims if it knew of their falsity.

*Id.* at 47–48. As a result, the Court granted summary judgment in favor of Relators on the issue of materiality only as to the claims that encompass the Wrong Provider Tranche. *Id.* at 48.

On September 9, 2021, PVA filed the instant motion for reconsideration pursuant to FED. R. CIV. P. 54(b). ECF No. 140. On September 23, 2021, Relators filed a response. ECF No. 141. Thereafter, on September 30, 2021, PVA filed a reply. ECF No. 142.

## DISCUSSION

### I. Legal Standard

The Federal Rules of Civil Procedure do not recognize a "motion for reconsideration" by that name. However, the Federal Rules of Civil Procedure do permit the Court to reconsider an interlocutory order. Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). Rule 54(b) "reflect[s] the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Austin*, 864 F.3d at 336 (quoting *Covell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

### II. Analysis

PVA argues that the Court committed reversible error in finding that claims with an incorrect provider name, as alleged in this case, are materially false under the False Claims Act ("FCA"). ECF No. 140, at 9. PVA submits that "Relators made baseless allegations without providing actual medical record documentation to show that the physician [identified in the

3

submitted claims] was not the physician that read and interpreted a patient's vascular ultrasound." *Id.* at 6. Even if Relators' allegations are true, PVA contends, any allegedly false claims under the Wrong Provider tranche would not be material because "[e]very single physician is within the PVA group practice and therefore each claim was correctly submitted to Medicare and other federal health care programs using the correct group provider number." *Id.* at 7. According to PVA, "While the name of a specific physician may be different, given the dynamics of a large physician practice, geographical disparities, and on-call schedules, the uncontroverted fact remains that PVA alone performed the services, submitted the Medicare claims, and identified the right group practice's NPI, name, and address to Medicare." *Id.* Thus, PVA argues, the allegedly false claims under the Wrong Provider tranche "fail to meet the materiality standard." *Id.* at 5. PVA therefore asks the Court to reconsider its order granting Relators' motion for summary judgment on the issue of materiality with respect to the allegedly false claims under the Wrong Provider tranche; deny Relators' motion for summary judgment on this issue; and grant summary judgment in its favor on these allegedly false claims. *Id.* at 9.

For a false claim to violate the FCA, it must be material. *Universal Health Servs., Inc. v. United States ("Escobar")*, 579 U.S. 176, 191 (2016). The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). In the Fifth Circuit, the FCA requires "proof only that the defendant's false statements could have influenced the government's pay decision or had the potential to influence the government's decision, not that the false statements actually did so." *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 661 (5th Cir. 2017). "[T]he False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations." *Escobar*, 579 U.S. at 196.

4

The Court finds that justice requires reconsideration of its order granting summary judgment in favor of Relators on the issue of materiality with respect to the allegedly false claims under the Wrong Provider tranche.[1] To be sure, American courts have understood "that the submission of claims under the wrong physician's name *generally* leads to FCA liability[.]" ECF No. 123, at 48 (emphasis added); *see United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001) (citing *Peterson v. Weinberger*, 805 F.2d 45, 52 (5th Cir. 1975)). But not always. *See U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997)) ("The FCA is not a general 'enforcement device' for federal statutes, regulations, and contracts.'"); *see also U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999) ("But the FCA is not an appropriate vehicle for policing technical compliance with administrative regulations."). Indeed, the FCA "does not adopt such an extraordinarily expansive view of liability." *Escobar*, 579 U.S. at 196. The Court is therefore persuaded that materiality is not established as a matter of law as to the allegedly false claims under the Wrong Provider tranche merely because the Medicare Program Integrity Manual's list of examples of Medicare fraud include misrepresenting "the identity of the beneficiary or the individual who furnished the services." ECF No. 95-14, at 542.

Nevertheless, reconsideration does not, *ipso facto*, establish that summary judgment in favor of the party requesting reconsideration is warranted. It is well established that the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving

---

[1] Relators argue that the motion must be denied because "PVA is merely 'rehashing' the materiality argument it made in opposition to Relators' Motion for Summary Judgment." ECF No. 141, at 4. "Indeed," Relators submit, "PVA has not shown a 'subsequent evolution in the case,' or any other factor that would warrant reconsideration." *Id.* The Court disagrees. And, in any event, the Court is within its discretion to reconsider its decision even in the absence of new evidence or an intervening change in or clarification of the substantive law. *See Austin*, 864 F.3d at 336.

party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmovants' claims or defenses, or, if the crucial issue is one for which the nonmovants will bear the burden of proof at trial, point out that the evidence in the record is insufficient to support an essential element of the nonmovants' claims or defenses. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994). Once the moving party meets this burden, the nonmoving parties must "go beyond the pleadings" and designate specific facts in the record showing that there is a genuine issue for trial. *Access Mediquip, L.L.C. v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).

To conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovants, or, in other words, that the evidence favoring the nonmovants is insufficient to enable a reasonable jury to return a verdict for the nonmovants. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovants as well as the "evidence supporting the moving part[ies] that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving parties, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

Here, Relators have presented sufficient evidence showing that there is a genuine issue for trial on the issue of whether claims with an incorrect provider's name, as alleged in this case, are materially false under the FCA. For instance, Relators rely on the Medicare Program Integrity Manual's list of examples of Medicare fraud, which explicitly states that misrepresenting "the identity of the beneficiary or the individual who furnished the services" constitutes fraud. ECF No. 95, at 32–33 (citing ECF No. 95-14, at 542). Relators also point to an internal 2013 e-mail thread, indicating that PVA knew the importance of billing under the correct physician's identifier. *See* ECF No. 94-9, at 348. Relators also cite to internal documents from 2017, wherein PVA's Vascular Lab Committee identified "[e]nsure billed to appropriate physician" as a purported motive for "[t]ransition to billing after studies are read[.]" ECF No. 95-5, at 24.

In the Fifth Circuit, the FCA requires "proof only that the defendant's false statements could have influenced the government's pay decision or had the potential to influence the government's decision, not that the false statements actually did so." *Harman*, 872 F.3d at 661.[2] Giving credence to the evidence Relators have presented, the Court finds that a reasonable trier of fact could find that PVA's submission of claims under the wrong physician's name, as alleged in this case, could have influenced the Government's pay decision or had the potential to influence

---

[2] PVA relies heavily on *United States ex rel. Alejandro v. Philadelphia Vision Ctr.*, No. CV 20-2027, 2021 WL 3051908, at *3 (E.D. Pa. July 20, 2021). *See* ECF No. 140, at 2, 4–5, 7–9. In *Alejandro*, the relator identified "the submission of a claim for physician services under the NPI number of a doctor who did not perform these services as a 'misleading half-truth[.]'" 2021 WL 3051908, at 3. The court found that the relator's complaint failed "to allege facts which could plausibly show that the relevant claims would not have been paid if the correct NPI number, as opposed to that of a different optometrist, had been used instead." *Id.* The court further found that the relator had "not alleged the Government paid for any services that were not provided or for services provided by an unlicensed professional." *Id.* "These omissions[,]" the court held, "preclude [the relator] from sufficiently alleging materiality." *Id.* As Relators in this case correctly note, the *Alejandro* court assessed the materiality of the allegedly false claims under a distinct legal standard. *See* ECF No. 141, at 5. Indeed, the *Alejandro* court determined that "[t]he claims' alleged falsity 'was not material' 'because the government *would have* paid [them] regardless of whose NPI was on the form.'" 2021 WL 3051908, at *3 (citing *United States ex rel. Spay v. CVS Caremark Corp.*, 875 F.3d 746, 765 (3d Cir. 2017)) (emphasis added). The Fifth Circuit, however, requires "proof only that the defendant's false statements *could have* influenced the government's pay decision or had the potential to influence the government's decision, not that the false statements actually did so." *Harman*, 872 F.3d at 661 (emphasis added). The Court is bound by Fifth Circuit precedent; therefore, PVA's reliance on *Alejandro* is both misplaced and unavailing.

7

the Government's decision. In other words, a reasonable trier of fact could find that the claims under the Wrong Provider tranche, as Relators allege, are materially false.[3]

## CONCLUSION

Accordingly, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant PVA's motion for reconsideration (ECF No. 140). Having reconsidered its order on the parties' cross-motions for summary judgment, Relators' motion for summary judgment is hereby **DENIED** on the issue of materiality with respect to the allegedly false claims under the Wrong Provider tranche. All other rulings resolving the parties' cross-motions for summary judgment remain in effect.

It is so **ORDERED**.

**SIGNED** this January 7, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[3] PVA's contention that Relators made baseless allegations without providing actual medical record documentation to show that the physician identified in the submitted claims was not the physician that read and interpreted a patient's vascular ultrasound, *see* ECF No. 140, at 6, goes to the weight of the evidence Relators have presented. "In determining whether there is a dispute regarding a material fact, [the Court] consider[s] all evidence in the record but do[es] not make credibility determinations or weigh the evidence." *Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 478 (5th Cir. 2006) (citing *Reeves*, 530 U.S. at 150).