**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. TIFFANY MONTCRIEFF, ROBERTA MARTINEZ, and ALICIA BURNETT,** | |
| Plaintiffs, | |
| vs. | Civil Action No. SA-17-CV-00317-XR |
| **PERIPHERAL VASCULAR ASSOCIATES P.A.,** | |
| Defendant. | |

## FINAL JOINT PRETRIAL ORDER

Relators Tiffany Montcrieff, Roberta Martinez, Alicia Burnett and Defendant Peripheral Vascular Associates, P.A, ("PVA") (collectively, "the Parties") respectfully submit the following Final Joint Pretrial Order pursuant to this Court's March 22, 2021 Amended Scheduling Order.

**1.     STATEMENT IDENTIFYING COURT'S JURISDICTION**

The Court has jurisdiction over the claims raised in this complaint under 28 U.S.C. § 1331 as they arise under Federal law.  This Court also has jurisdiction over this action pursuant to 31 U.S.C. § 3732, which confers jurisdiction for claims brought under the False Claims Act on the District Courts of the United States.  Venue is proper pursuant to 31 U.S.C. § 3732(a), as Defendant transacts business in this district.

**2.     STATEMENT OF THE CASE**

**Relators' Proposal**:

The name of this case is United States of America, ex rel. Tiffany Montcrieff, Relator; Roberta A. Martinez, Relator; and Alicia Burnett, Relator, versus Peripheral Vascular Associates, P.A.

1

This case is brought under a federal statute called the False Claims Act.  The parties bringing this lawsuit assert that the Defendant, Peripheral Vascular Associates, violated the False Claims Act.

The False Claims Act allows the United States Government to recover money it has lost as a result of false or fraudulent claims for payment.  The False Claims Act allows a person, who is called the "relator," to bring a False Claims Act case on behalf of the United States.  Ms. Montcrieff, Ms. Martinez, and Ms. Burnett, the Plaintiffs, are the relators in this case.

The Defendant, Peripheral Vascular Associates, is a medical practice. You may hear Peripheral Vascular Associates referred to simply as "PVA."

Relators allege that PVA violated the False Claims Act by systematically charging the Medicare and TriCare Programs for ultrasound services that it had not provided.

 Relators allege the Current Procedural Terminology ("CPT") codes that are used to bill payors such as Medicare for vascular studies (i.e. vascular ultrasounds) were incomplete when submitted, and therefore, were not eligible for reimbursement.  These codes explicitly require a physician's interpretation, and documentation of that interpretation in the form of a report.  The interpretation and report are an integral part of the ultrasound service, and the service is not complete without it.  Relators allege that Medicare does not reimburse for an incomplete and/or delayed service.  This physician service is independent of, and separate from the patient evaluation and management service, which is also billed to Medicare.  Relators further allege that PVA's practices resulted in Medicare being billed under the wrong providers' names for many claims.

The Defendant, PVA, denies Relators' characterization of events and asserts that it billed Medicare appropriately. PVA denies that any of the claims for payment were fraudulent.

Based on prior rulings in the case, there are only two issues remaining for the jury to decide:  (1) whether PVA's false claims could have influenced the government's pay decision or had the potential to influence the government's decision (this may be referred to as the

"materiality" requirement); and (2) the number of false claims submitted by PVA and resulting damages to the United States.

**<u>Defendant's Proposal</u>**:

The name of this case is United States of America, ex rel. Tiffany Montcrieff, Relator; Roberta A. Martinez, Relator; and Alicia Burnett, Relator, versus Peripheral Vascular Associates, P.A.

This case is brought under a federal statute called the False Claims Act. The parties bringing this lawsuit assert that the Defendant, Peripheral Vascular Associates, violated the False Claims Act.

The False Claims Act allows the United States Government to recover money it has lost as a result of fraud. The word "claims" in the title refers to claims for payment: that is, bills or invoices submitted to the Government. When someone presents the Government with a bill, and that bill turns out to be fraudulent, the False Claims Act creates a particular kind of lawsuit by which the Government can pursue money damages.

In a False Claims Act lawsuit, private citizens who believe fraud has been committed against the Government may file a lawsuit on the Government's behalf. The Plaintiffs in the lawsuit are called "Relators." If the lawsuit is successful, the Relators receive a share in of the Government's monetary recovery.

In this case, there are three Relators: Ms. Montcrieff, Ms. Martinez, and Ms. Burnett.

The Defendant, Peripheral Vascular Associates, is a medical practice. You may hear Peripheral Vascular Associates referred to simply as "PVA."

The Relators assert that PVA engaged in fraudulent billing practices when it billed Medicare for vascular ultrasound services that it had not provided.

Generally speaking, there are two steps in a vascular study. The first step is the technical component, which is doing the ultrasound. The second step is the professional component, which is the physician's analyzing and interpreting the results of the test.

Healthcare professionals and insurance providers throughout the United States use a system of billing codes to describe medical procedures and services. These codes, called Current Procedural Terminology codes, or CPT codes for short, identify the services and procedures that a doctor, hospital, or medical lab has performed on the patient. Just as there are thousands of different medical services and procedures, there are thousands of different CPT codes. The list of CPT codes is updated every year as new codes are added and older ones are revised or deleted.

Federal payers, such as Medicare, require the use of CPT codes. Whenever a doctor's office, a lab, or a hospital submits a claim to Medicare for reimbursement, that bill must include the CPT codes for the services or procedures being billed. Vascular ultrasound studies can be billed using CPT codes in three ways. First, the technical component, that is performing the ultrasound, can be billed. Second, the professional component, that is the physician's review and interpretation of the ultrasound can be billed. And third, there is a "global" option that covers both steps, the technical component and the professional component. In other words, there's a code for billing the technical part only; another code for billing the professional part only; and a third code for when the provider bills both parts together.

Relators allege the CPT codes used to bill payors such as Medicare for vascular studies (i.e. vascular ultrasounds) were incomplete when submitted by PVA, and therefore, were not eligible for reimbursement.  This physician service is independent of, and separate from the patient evaluation and management service, which is also billed to Medicare.  Relators further allege that PVA's practices resulted in Medicare being billed under the wrong providers' names for many claims.

The Defendant, PVA, denies Relators' characterization of events and asserts that it billed Medicare appropriately. PVA denies that any of the claims for payment were fraudulent.

**3.     SUMMARY OF REMAINING CLAIMS AND DEFENSES OF EACH PARTY**

**Relators' Summary**:

Relators are pursuing three groups of false claims (which the Court termed "tranches" in the Order on Summary Judgment [Doc. 123]):

(1) "Testing Only" patients:  for many patients, Relators allege there was no visit with a PVA physician—they were only referred to PVA for a study and interpretation, and returned to their own non-PVA physician for treatment;

(2) "Double Billing" claims, where Relators allege that PVA submitted both an E/M charge and a study without a final report; and

(3) "Wrong Provider" claims, where Relators allege that PVA billed Medicare under the name of a physician different from who eventually signed the report.

Under the FCA[1], for each of these theories, Relators must establish four basic elements: (1) that the claims were "false"; (2) that PVA acted recklessly or knowingly ("scienter"); (3) that the falsity could potentially impact the government's payment decision ("materiality"); and (4) damages.

In the Court's Summary Judgment ruling of December 14, 2020 [Doc. 123], on all three theories, the Court ruled that Relators had established "falsity" and "scienter" as a matter of law.[2]

Accordingly, all that remains left for trial on all three tranches is the issue of "materiality," and damages (including both the amount of actual damages to the United States, and the number of false claims for purposes of calculating statutory penalties).

---

[1] Relators assert three separate causes of action under the False Claims Act:  (1) under 31 U.S.C. § 3729(a)(1)(A), that PVA knowingly presented false records and statements in order to obtain payment or approval of charges by the Medicare program; (2) under 31 U.S.C. § 3729(a)(1)(B), that PVA knowingly made, used, and/or caused to be made and used false records and statements material to false or fraudulent claims; and, in the alternative, (3) under 31 U.S.C. § 3729(a)(1)(G), that PVA knew that it had received more money than it was entitled to, and avoided its obligation to return the excess money to the Government.  Based on the Court's rulings on Summary Judgment regarding the falsity of the CMS-1500 forms submitted by PVA, Relators believe it unnecessary to proceed on the second and third Causes of Action.  In other words, Relators intend only to proceed at trial under 31 U.S.C. § 3729(a)(1)(B).  In any event, each of these causes of action require Relators to prove the same four core elements described above.

[2] On the "Wrong Provider" set of claims, the Court also ruled that Relators have shown "materiality."  In its recent Order granting PVA's Motion for Reconsideration, the Court determined that "materiality" must still be presented to the jury.

Defendant contests both liability and damages as to the remaining issues.

**Defendant's Summary**:

Defendants do not dispute that Relators are pursuing the three groups of claims described above. Defendants dispute that any element of the False Claims Act has been established for any alleged claim. Accordingly, Defendant contests both liability and damages as to all claims. The Court's Order on summary judgment did not grant summary judgment on any claim. It did not find that any specific false claims were submitted, leaving that issue open for trial. Further, it did not find that PVA knowingly submitted any specific false claims, leaving that issue open for trial. In the Court's January 7, 2022 Order [Doc. 151], the Court reversed its prior ruling on the materiality of the "wrong provider" claims, leaving materiality for all claims open for trial. Finally, damages is an open issue for trial.

Additionally, to the extent Relators intend to submit a claim under 31 U.S.C. § 3729(a)(1)(G) to the jury, those claims require proof that PVA owed an obligation to the United States Government, which, in turn, requires Relators to prove that PVA identified an overpayment under 42 U.S.C. § 1320a-7k(d), 42 C.F.R. §§ 401.301 through 401.305, and 81 Fed. Reg. 7654.

Relators also cannot prove causation or damages.

4.      **LIST OF FACTS PARTIES HAVE REACHED AGREEMENT UPON**

1.      PVA's charges to Medicare, and the corresponding reimbursement amounts, are reflected in data contained in the "Allscripts" system and produced in discovery.

2.      In the Allscripts data, the following fields have the following meanings:

   a.   "Payments":  Amount paid.  A negative value indicates a payment made by a payor and received by PVA.

   b.   "TransInsName":  Name of the insurer.

   c.   "Billing_Dr_Name" contains the physician whose name appears on PVA's claims to payors.

    d.  "TransCodeAbbr":  Claims submitted by PVA are identified in this field with the value "Charge."

3.    PVA's vascular studies are recorded in the "MedStreaming" system.  Data from the "MedStreaming" system was produced in discovery.

4.    In the MedStreaming data, the following fields have the following meanings:

    a.  "Reading MD":  Name of the physician that finalized and signed the MedStreaming study.

    b.  "FinalDateTime":  Date and time at which the Reading MD finalized and signed a  MedStreaming vascular study report.

5.    Allscripts and MedStreaming entries can be matched on Patient Number ("Patient_Number" and "PatientMRN") and Test Date ("Service_Date_From" and "TestDate").

## 5.    LIST OF CONTESTED ISSUES OF FACT

**Relators' List**:

1. For each of the three tranches, the amount of damages to the United States;

2. For each of the three tranches, the number of false claims for which PVA is responsible;

3. The amount of statutory penalties to be assessed for each false claim (the jury determines the number of false claims; the Court determines the statutory penalty to be assessed for each false claims); and

4. For each of the three tranches, whether the false claims were material.

**Defendant's List**:

1. Whether PVA knowingly submitted a false claim

2. Whether PVA knowingly made a false record or statement material to a false claim

3. Whether PVA knowingly made a false record

4. Whether PVA knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money to the Government

5. Whether PVA knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government

6. Whether PVA identified an overpayment under 42 U.S.C. § 1320a-7k(d), 42 C.F.R. §§ 401.301 through 401.305, and 81 Fed. Reg. 7654

7. Whether any false claims, records, or statements were material to the Government's decision to pay

8. The amount of damages suffered by the United States;

9. The number of false claims, if any, for which PVA is responsible; and

10. The amount of statutory penalties to be assessed for each false claim.

**6.     LIST OF THE LEGAL PROPOSITIONS THAT ARE NOT IN DISPUTE**

In order for Relators to prevail under the False Claims Act, they must prove the following: (1) a false statement; (2) made with the requisite scienter ("knowingly"); (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due.  *See United States ex rel. Longhi v. Lithium Power Technologies*, 575 F.3d 458, 468 (5th Cir. 2009).

**7.     LIST OF CONTESTED ISSUES OF LAW**

**Relators' List**:

In order for Relators to prevail under the False Claims Act, they must prove the following: (1) a false statement or fraudulent course of conduct; (2) made with the requisite scienter ("knowingly"); (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due.  *See United States ex rel. Longhi v. Lithium Power Technologies*, 575 F.3d 458, 468 (5th Cir. 2009).

The following is not in dispute based upon this Court's Order on Relators' Motion for Summary Judgment:

1. Falsity of conduct for all three tranches; and

2. Scienter for all three tranches.

As to materiality, as the Court stated in its Order on Summary Judgment (Doc. No. 123) at page 43, the Fifth Circuit has confirmed that the FCA requires "proof only that the defendant's

8

false statements could have influenced the government's pay decision or had the potential to influence the government's decision, not that the false statements actually did so." *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 661 (5th Cir. 2017).

**Defendant's List**:

For Relators' claim under 31 U.S.C. § 3729(a)(1)(G), Relators must prove, in addition to the elements detailed above, that PVA identified an overpayment that became an obligation to pay or transmit money to the Government.

Whether a "fraudulent course of conduct" is legally sufficient to establish falsity in this case. "Although a defendant may be held liable under the FCA for engaging in a 'fraudulent course of conduct' which does not result in a false claim, this type of liability is, as the district court noted, limited to the fraudulent inducement context found in *Longhi*." *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 478 (5th Cir. 2012). Realtors do not have a fraudulent inducement claim.

Whether Relators can satisfy the materiality standard by showing only that falsity could potentially impact the government's payment decision, when the U.S. Supreme Court has made clear that potential impact on payment is insufficient—ability to deny payment is not enough. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 195, 136 S. Ct. 1989, 2004, 195 L. Ed. 2d 348 (2016) ("These rules lead us to disagree with the Government's and First Circuit's view of materiality: that any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation.).

Whether imposition of penalties under the FCA violates the Due Process Clause of the Fifth and Fourteenth Amendments, and Excessive Fines Clause of the Eighth Amendment.

## 8.    LIST OF EXHIBITS EXPECTED TO BE OFFERED

The Parties' Joint Exhibit List with objections is attached hereto as **Exhibit A**.  Relators exhibits are Exhibits 1-272; PVA's exhibits are Exhibits 501-804.

9.      **LIST OF ALL THE WITNESS NAMES AND BRIEF STATEMENT OF THE
        NATURE OF THEIR TESTIMONY**

**Relators' Witnesses**

    1.    Alicia Burnett

Relator and Registered Vascular Technologist. Ms. Burnett will testify regarding PVA's
practices, as compared to policies and procedures carried-out at other vascular surgery practice
groups and/or hospitals, and how accreditation and billing is handled.

203 Rockhill Dr.

San Antonio, TX 78209

    2.    Barbara Burrow

Former PVA Vascular Lab Technical Director, currently still employed at PVA.  Ms. Burrow
will testify about PVA's billing, vascular lab policies for submitting the billing, and how these
relate to Medicare requirements.

110B Ruelle LN

San Antonio, TX 78209

    3.    Brian Puente

Information Systems Manager for PVA. He will provide testimony about PVA's billing practices
and recordkeeping.

317 Lexington AVE. APT #148,

San Antonio, TX 78215

    4.    Brian Hembling

CEO of Specialists in Vascular Ultrasound and the owner of Frenel Solutions.  Currently Mr.
Hembling leads PVA's Vascular Techinical Department.  He will testify as to billing and
finalizing of reports at PVA, and ultrasound requirements for accrediting agencies and Medicare.

318 Brahan ST APT. #2

San Antonio, TX 78215

5.    <u>John Gilpin</u>

CEO of PVA.  Mr. Gilpin will testify as to PVA's systems and practices and policies related to submission of bills to Medicare.

21614 Bear Ridge

San Antonio, TX, 78258

6.    <u>Demetrios Macris, M.D.</u>

Previous Medical Director at PVA's downtown and satellite location / Physician Shareholder. Dr. Macris will testify about PVA's practices, as well as accrediting agency standards, and Medicare requirements for billing.

21219 Harvest HLS

San Antonio, TX 78258

7.    <u>Grady D. Alsabrook, M.D.</u>

Dr. Alsabrook was the director of PVA's compliance program.  He will testify to the policies and procedures for compliance in place at PVA during the relevant time period, and the reasons for the same.

8.    <u>James E. Alexander, Jr. M.D., F.A.C.S.</u>

Relators' Expert.  Dr. Alexander will testify about Medicare and other payor requirements, and the importance of the requirements from a medical and payor perspective.

1600 Texas Street, Suite 31504

Fort Worth, Texas 76102

9.    <u>Katherine Britt</u>

Clinical Administration Director at PVA.  Ms. Britt will testify about PVA's billing and payment information as related to Medicare and other payors during the relevant time period, as well as PVA's communications about, and policies, related to compliance with Medicare and accreditation agencies.

116 Storm Mountain Rd.,

Cibolo, TX 78108

10.    <u>Lyssa N. Ochoa, M.D.</u>

Former PVA vascular surgeon.  Dr. Ochoa will testify about PVA's policies and policies at other vascular surgery practices, including her own, as related to billing and submission of claims to Medicare.

708 Cannterbury Hill

San Antonio, TX 78209

11.    <u>Martha McGee</u>

Medical Billing Supervisor at PVA.  Ms. McGee will testify about PVA record keeping, billing policies and submissions to Medicare and other payors.

407 Prestwick BLVD

San Antonio, TX 78223

12.    <u>Melissa H. Scott, CHC, CPC, CHIAP</u>

Defendants' Expert.

13.    <u>Paul E. Collier, MD</u>

Defendant's Expert who is a vascular surgeon.  Dr. Collier will testify about his own practice policies and procedures for billing and completing ultrasounds.

249 Scaife Road

Sewickley, Pennsylvania 15143

14.    <u>Randi Balch</u>

Registered Vascular Technologist Lead Quality and Training at PVA.  Ms. Balch will testify about PVA's vascular ultrasound procedures and policies.

6519 Wind Arbor

San Antonio, TX 78239

15.    <u>Robert D. Church, Jr.</u>

Plaintiff's Expert.  Mr. Church will testify about Medicare and other payor requirements for billing, and compliance programs at practice groups.

    16.    <u>Roberta Martinez</u>

Relator and Former Registered Vascular Technologist at PVA.  Ms. Martinez will testify regarding PVA's practices, as compared to policies and procedures carried out at other vascular surgery practice groups and/or hospitals, and how accreditation and billing is handled.

103 Green Meadoq

San Antonio, TX 78221

    17.    <u>Tiffany Montcrieff</u>

Relator and Former PVA Registered Vascular Technologist.  Ms. Montcrieff will testify regarding PVA's practices, as compared to policies and procedures carried-out at other vascular surgery practice groups and/or hospitals, and how accreditation and billing is handled.

4034 city view

San Antonio, TX 78228

    18.    <u>Zachary R. Nye, Ph.D.</u>

Relators' Expert who will testify about damages, including quantifying the number of false claims submitted by PVA.

702 Marshall Street, Suite 200

Redwood City, CA 94063

**<u>Defendant's Witnesses</u>**:

    1.    Alicia Burnett – Ms. Burnett will testify regarding the basis for her claims.

        203 Rockhill Dr. San Antonio, TX 78209

    2.    Roberta Martinez – Ms. Martinez will testify regarding the basis for her claims.

        103 Green Meadow, San Antonio, TX 78221

    3.    Tiffany Montcrieff – Ms. Montcrieff will testify regarding the basis for her claims.

        4034 City View, San Antonio, TX 78228

4.    Katherine Britt – Ms. Britt will testify about PVA's billing, coding, and compliance practices, medical information systems, the number and types of claims submitted to Medicare, and Relators' employment at PVA.

610 N Main Ave, San Antonio, TX 78205

5.    Demetrios Macris, M.D. – Dr. Macris will testify about his practices for treating patients, billing, and use of medical information systems.

610 N Main Ave, San Antonio, TX 78205

6.    Lois Fiala, M.D. – Dr. Fiala will testify about her practices for treating patients, billing, and use of medical information systems.

610 N Main Ave, San Antonio, TX 78205

7.    Daniel Tamez, M.D. – Dr. Tamez will testify about his practices for treating patients and use of medical information systems.

610 N Main Ave, San Antonio, TX 78205

8.    Brian Puente – Mr. Puente will provide testimony about the number and types of claims PVA submitted to Medicare.

610 N Main Ave, San Antonio, TX 78205

9.    John Gilpin – Mr. Gilpin will testify about PVA's billing practices and administration.

610 N Main Ave, San Antonio, TX 78205

10.   Melissa Scott – Ms. Scott will testify about documentation, coding, billing, claim submission, compliance with applicable regulatory and industry standard practices, and provide opinions consistent with her expert report.

3500 Maple Avenue, Suite 420, Dallas, TX 75219

11.   Sunil Lalla, M.D. – Dr. Lalla will testify about Medicare billing, coding, and documentation requirements, practices of the Medicare contractor Novitas, and provide opinions consistent with his expert report.

100 Hunters Oak Court, Pawleys Island, SC 29585

12.    S. Scott Ward – Mr. Ward will testify about Medicare rules and regulations, investigations, and claims processing.

4835 Lyndon B Johnson Fwy #300, Dallas, TX 75244

13.    Sean O'Connell – Mr. O'Connell will testify about the Government's investigation of Relators' claims.

951 East Byrd Street, Richmond, VA 23219

14.    Tomas Gonzales – Mr. Gonzales will testify about the Government's investigation of Relators' claims.

40 NE Loop 410, San Antonio, TX 78216

15.    Witnesses identified by Relators

16.    Witnesses necessary for rebuttal or impeachment

## 10.    ESTIMATED LENGTH OF TRIAL

Trial is estimated to take 5-7 days.

## 11.    JURY TRIAL - PROPOSED QUESTIONS FOR VOIR DIRE EXAMINATION

Relators' proposed questions for Voir Dire examination are attached hereto as **Exhibit B**.

PVA's proposed questions for Voir Dire examination are attached hereto as **Exhibit C**.

## 12.    PROPOSED CHARGE/SPECIAL INTERROGATORIES/JURY INSTRUCTIONS

The Parties' agreed-upon Jury Instructions are attached as **Exhibit D**.

Relators' proposed additional Jury Instructions objected to by Defendant are attached as **Exhibit E**.

PVA's proposed additional Jury Instructions objected to by Relators are attached as **Exhibit F**.

Relators' Proposed Special Interrogatories/Verdict Form is attached hereto as **Exhibit G**.

PVA's Proposed Special Interrogatories/Verdict Form is attached hereto as **Exhibit H**.

///

///

Dated: January 14, 2022                    By:   /s/ Justin T. Berger
                                                 Justin T. Berger (*pro hac vice*)
                                                 Sarvenaz J. Fahimi (*pro hac vice*)
                                                 COTCHETT, PITRE & McCARTHY, LLP
                                                 840 Malcolm Road
                                                 Burlingame, California 94010
                                                 Telephone: (650) 697-6000
                                                 Facsimile: (650) 697-0577
                                                 jberger@cpmlegal.com
                                                 sfahimi@cpmlegal.com
                                                 Wallace M. Brylak, Jr. (Bar No. 03283360)
                                                 BRYLAK LAW
                                                 15900 La Cantera Parkway, Suite 19245
                                                 San Antonio, Texas 78256
                                                 Telephone: (210) 733-5533
                                                 Facsimile: (210) 558-4804
                                                 wbrylak@brylaklaw.com

                                                 *Counsel for Relators*


Dated: January 14, 2022                    By:   /s/ Mark A. Cole
                                                 Sean McKenna (Bar No. 24007652)
                                                 Mark A. Cole  (*pro hac vice*)
                                                 Spencer Fane LLP
                                                 2200 Ross Avenue
                                                 Suite 4800 West
                                                 Dallas, TX 75201
                                                 smckenna@spencerfane.com
                                                 mcole@spencerfane.com

                                                 Jeff Wurzburg (Bar No. 24105140)
                                                 Locke Lord, LLP
                                                 600 Congress Avenue, Suite 2200
                                                 Austin, TX 78701
                                                 jeff.wurzburg@lockelord.com

                                                 *Counsel for Defendant*


Dated: _____        _____
                                              PRESIDING JUDGE


16

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2022, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Wallace M. Brylak, Jr.
Brylak & Associates
15900 La Cantera Pkwy, Suite 19245
San Antonio, TX 78256
wbrylak@brylaklaw.com

Sean McKenna
Mark A. Cole
Spencer Fane LLP
2200 Ross Avenue
Suite 4800 West
Dallas, TX 75201
smckenna@spencerfane.com
mcole@spencerfane.com

Jeff Wurzburg
Locke Lord, LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701
jeff.wurzburg@lockelord.com

John M. Deck
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216
John.deck@usdoj.gov

/s/ Justin T. Berger
Justin T. Berger