# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., | § | |
| TIFFANY MONTCRIEFF, et al., | § | |
| | § | |
| Relators, Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:17-CV-00317-XR |
| | § | |
| PERIPHERAL VASCULAR | § | |
| ASSOCIATES, P.A., | § | |
| | § | |
| Defendant. | § | |

**<u>DEFENDANT PERIPHERAL VASCULAR ASSOCIATES'
PROPOSED ADDITIONAL JURY INSTRUCTIONS</u>**

3150735v.3

INSTRUCTION NO. __

Overview of the Case

The name of this case is United States of America, ex rel. Tiffany Montcrieff, Relator; Roberta A. Martinez, Relator; and Alicia Burnett, Relator, versus Peripheral Vascular Associates, P.A.

This case is brought under a federal statute called the False Claims Act. The parties bringing this lawsuit assert that the Defendant, Peripheral Vascular Associates, violated the False Claims Act.

The False Claims Act allows the United States Government to recover money it has lost as a result of fraud. The word "claims" in the title refers to claims for payment: that is, bills or invoices submitted to the Government. When someone presents the Government with a bill, and that bill turns out to be fraudulent, the False Claims Act creates a particular kind of lawsuit by which the Government can pursue money damages.

In a False Claims Act lawsuit, private citizens who believe fraud has been committed against the Government may file a lawsuit on the Government's behalf. The Plaintiffs in the lawsuit are called "Relators." If the lawsuit is successful, the Relators receive a share in of the Government's monetary recovery.

In this case, there are three Relators: Ms. Montcrieff, Ms. Martinez, and Ms. Burnett.

The Defendant, Peripheral Vascular Associates, is a medical practice. You may hear Peripheral Vascular Associates referred to simply as "PVA."

The Relators assert that PVA engaged in fraudulent billing practices when it billed Medicare for vascular ultrasound services that it had not provided.

Generally speaking, there are two steps in a vascular study. The first step is the technical component, which is doing the ultrasound. The second step is the professional component, which is the physician's analyzing and interpreting the results of the test.

Healthcare professionals and insurance providers throughout the United States use a system of billing codes to describe medical procedures and services. These codes, called Current Procedural Terminology codes, or CPT codes for short, identify the services and procedures that a doctor, hospital, or medical lab has performed on the patient. Just as there are thousands of different medical services and procedures, there are thousands of different CPT codes. The list of CPT codes is updated every year as new codes are added and older ones are revised or deleted.

Federal payers, such as Medicare, require the use of CPT codes. Whenever a doctor's office, a lab, or a hospital submits a claim to Medicare for reimbursement, that bill must include the CPT codes for the services or procedures being billed. Vascular ultrasound studies can be billed using CPT codes in three ways. First, the technical component, that is performing the ultrasound, can be billed. Second, the professional component, that is the physician's review and interpretation of the ultrasound can be billed. And third, there is a "global" option that covers both steps, the technical component and the professional component. In other words, there's a code for billing the technical part only; another code for billing the professional part only; and a third code for when the provider bills both parts together.

Relators allege the CPT codes used to bill payors such as Medicare for vascular studies (i.e. vascular ultrasounds) were incomplete when submitted by PVA, and therefore, were not eligible for reimbursement. This physician service is independent of, and separate from the patient evaluation and management service, which is also billed to Medicare. Relators further

allege that PVA's practices resulted in Medicare being billed under the wrong providers' names for many claims.

The Defendant, PVA, denies Relators' characterization of events and asserts that it billed Medicare appropriately. PVA denies that any of the claims for payment were fraudulent.

INSTRUCTION NO. ____

<u>Violation of 31 U.S.C. § 3729(a)(1)(A), the Federal False Claims Act, Presenting False Claims</u>

Relators have alleged that Defendant PVA violated the False Claims Act, by presenting false claims to government healthcare programs, specifically Medicare.

To prove a violation of 31 U.S.C. § 3729(a)(1)(A), Relators must prove the following four elements against Defendant PVA:

(1) That PVA presented false or fraudulent claims;

(2) That PVA had sufficient knowledge that the claims were false or fraudulent;

(3) That the falsity or fraud was material to the Government's decision to pay PVA; and

(4) That caused damages to the Government.[1]

---

[1] *See* 31 U.S.C. § 3729(a)(1)(A).

INSTRUCTION NO. _____

"Claim" under the FCA

For the False Claims Act, "claim" means any request or demand for money that is made to a contractor to the United States Government for services provided to beneficiaries of a Government healthcare program such as Medicare or TRICARE.[2]

---

[2] S. REP. NO. 99-345, at 21-22 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5286-87; H.R. REP. NO. 99-660 at 21H.R. REP. NO. 99-660 at 21 (1986); S. REP. NO. 110-507, 15-16 (2008); S. REP. NO. 111-10, 11 (2009).

3150735v.3

INSTRUCTION NO. _____

<u>Knowingly</u>

For purposes of the False Claims Act, PVA acted knowingly if:

(1) PVA had actual knowledge of the information; or

(2) PVA acted in deliberate ignorance of the truth or falsity of the information; or

(3) PVA acted in reckless disregard of the truth or falsity of the information.[3]

---

[3] 31 U.S.C.A. § 3729(b)(1).

3150735v.3

INSTRUCTION NO. _____

"Good Faith"

The good faith of a defendant is a complete defense to allegations in this case.[4] The False Claims Act requires a violation be committed knowingly. PVA is not required to prove good faith. Relators' must prove that PVA knowingly violated the False Claims Act by a preponderance of the evidence. An honestly held opinion or an honestly formed belief cannot constitute a knowing violation, even if the opinion or belief turns out to be mistaken, inaccurate, incorrect, or wrong. Similarly, evidence of a mistake in judgment, an error in management, or carelessness cannot establish knowledge. In determining whether PVA violated the False Claims Act, you must consider all the evidence received in the case bearing on its state of mind.[5]

---

[4] 31 U.S.C.A. § 3729(b)(1).
[5] *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1074 (9th Cir.1998); *Hindo v. University of Health Services*, 65 F.3d 608, 613-14 (7th Cir.1995); *See Wang v. FMC Corp.*, 975 F.2d 1412, 1420-21 (9th Cir.1992); *see also U.S. v. Southland Management Corp.*, 326 F.3d 669, 682 (5th Cir.2003) (Jones, E., concurring) ("… [T]he statute's definition of "knowingly" excludes liability for innocent, mistakes or negligence.").

INSTRUCTION NO. _____

<u>Definition of Federal Health Care Program</u>

A "Federal health care program" is defined as any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government (other than the health insurance program under chapter 89 of Title 5).[6]

---

[6] *See* 5th Cir. Crim. Pattern Jury Charge 2.109B.

INSTRUCTION NO. _____

Materiality

"Material" means a fact that has the natural tendency to influence, or be capable in influencing, the payment or receipt of money or property. Materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.[7] It is not sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the alleged noncompliance.

Consider the following factors to the extent you decide that each applies to this case:

- If the Government paid a particular claim in full despite its actual knowledge that certain actions of PVA were occurring or requirements were violated;

- If the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment;

- If the alleged noncompliance was minor or insubstantial;

- If PVA knew that the Government consistently refuses to pay claims in most cases based on noncompliance with the specific statutory, regulatory, or contractual requirement; and

- If the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position.[8]

---

[7] *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193, 136 S. Ct. 1989, 2002, 195 L. Ed. 2d 348 (2016)

[8] *Id.* at 193–96, 136 S. Ct. at 2002–04. The structure of the factors is based on Fifth Circuit Pattern Jury Instruction 11.27.

INSTRUCTION NO. _____

Causation

      Only claims that have the purpose and effect of causing the Government to pay out money not otherwise due are actionable under the False Claims Act. For each allegedly false claim, Relators must prove that PVA caused the United States to pay a claim that it would not otherwise have done so.[9]

---

[9] *United States v. Americus Mortg. Corp.*, No. 4:12-CV-2676, 2017 WL 4117347, at *2 (S.D. Tex. Sept. 14, 2017); *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 329-32 (5th Cir. 2017); 31 USC 3729(a)(1)-(2); John T. Boese, Civil False Claims and Qui Tam Actions 2.05(3d ed.); *U.S. ex. Rel Longhi v. U.S.*, 575 F.3d 458, 473 (5th Cir. 2009); *U.S. v. Miller* 645 F.3d 473, 475-76 (5th Cir. 1981).

INSTRUCTION NO. _____

Consider Damages Only If Necessary

If Relators have proved their False Claims Act claim against PVA by a preponderance of the evidence, you must determine the damages to which Relators are entitled. You should not interpret the fact that I am giving instructions about Relators' damages as an indication in any way that I believe that Relators should, or should not, win this case. It is your task first to decide whether PVA is liable. I am instructing you on damages only so that you will have guidance in the event you decide that PVA is liable and that Relators are entitled to recover money from PVA.[10]

---

[10] Pattern Civ. Jury Instr. 5th Cir. § 15.1 (2020).

INSTRUCTION NO. _____

<u>Number of False Claims</u>

If you find PVA liable under the False Claim Act, then you must determine the number of false claims PVA submitted.

You cannot speculate or guess. If Relators cannot provide you with enough evidence to determine the number of false claims with reasonable certainty, then Relators cannot recover. [11]

---

[11] *U.S. v. Science Applications Intern. Corp.*, 958 F. Supp. 2d 53, 77-78 (D.D.C. 2013) ("Damages must be proven with reasonable certainty" and "a jury's damages calculation cannot be based on speculation or guesswork."); *U.S. v. Killough*, 848 F.2d 1523, 1531 (11th Cir. 1988) ("speculation and guesswork should not be the basis for ascertaining damages" under the False Claims Act); *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1002 (9th Cir. 2002) (relator must show actual false claim for payment, not "generalized, speculative suppositions").

3150735v.3

INSTRUCTION NO. _____

Damages

If you find that PVA violated the False Claims Act in any given instance, you must then determine the damages sustained by the United States because of the violation(s).

Under the False Claims Act, the measure of the United States' damages is the amount that it paid out by reason of the false or fraudulent claims over and above what it would have paid if the claims had not been false or fraudulent. In other words, the appropriate measure of damages resulting from a violation of the False Claims Act is the difference, if any, between what the United States *actually paid* for false or fraudulent claims, and what it *would have paid* if a claim had been truthful and accurate. When the Government gets what it paid for, despite any false statements, it has suffered no actual damages.[12]

Speculation and conjecture cannot form the basis of a damages calculation. However, Relators need not prove an exact amount of damages. It is sufficient for you to reach an approximate amount of damages, based on a just and reasonable inference supported by the evidence.

---

[12] *See United States v. Rogan*, 459 F. Supp. 2d 692, 720 (N.D. Ill. 2006); *U.S. v. United Technologies Corp.*, 782 F.3d 718, 731 (6th Cir. 2015) ("When the government gets what it paid for despite a contractor's misstatements, it has suffered no 'actual damages.' *See United States v. Bornstein*, 423 U.S. 303, 316 n. 13, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976) (collecting cases); *see also United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 923 (4th Cir. 2003). That is not just the law of the False Claims Act; it is the black-letter law of fraud and restitution (putting aside disgorgement of profits, which the government does not seek here)."); *U.S. ex rel. Davis v. District of Columbia*, 679 F.3d 832, 840 (D.C. Cir. 2012) ("A server's failure to bring a receipt after dinner causes no harm when you know you've been properly charged. The same is true here: The government got what it paid for and there are no damages."); *United States ex rel. Harman v. Trinity Indus. Inc.*, 166 F.Supp.3d 737, 753 (E.D. Tex. 2015), *reversed on other grounds* 872 F.3d 645 (5th Cir. 2017) ("Damages under the FCA are calculated under the 'benefit of the bargain theory,' meaning that the loss suffered by the government is measured by the difference between the amount the government bargained to receive and the value of the product or services the government actually received." (citing *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1011 (5th Cir. 1972)).

INSTRUCTION NO. _____

Reasonable Proof Required for Damages

Relators must prove damages with reasonable certainty. You may not award damages that are speculative. Speculative damages are those that might be possible but are remote or based on guesswork.

Relators are not required to prove the exact amount of damages, but they must show sufficient facts and circumstances to permit you to make a reasonable estimate of the Government's damages. If they fail to do so, then they cannot recover.[13]

---

[13] *U.S. v. Killough*, 848 F.2d 1523, 1531 (11th Cir. 1988) (noting the jury may make a "just and reasonable estimate of the damage" based upon "probable and inferential as well as upon direct and positive proof").

3150735v.3

INSTRUCTION NO. _____

<u>Closing Arguments</u>

I will now allow the lawyers for each Party to make their closing arguments. Remember, closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Relators' counsel will present their closing argument first, and then PVA's counsel will have an opportunity to present their closing argument. Counsel, please proceed.[14]

---

[14] *See* Pattern Civ. Jury Instr. 5th Cir. § 1.2 (2020).

3150735v.3