

DEPARTMENT OF HEALTH AND HUMAN SERVICES

# OFFICE OF INSPECTOR GENERAL

WASHINGTON, DC  20201



FOIA Request 2019-1289

Freedom of Information Act Office
Cohen Bldg., Suite 5541
330 Independence Ave., SW
Washington DC 20201

November 25, 2019

Sean McKenna
Norton Rose Fulbright
Frost Tower
111 W. Houston Street
San Antonio, TX 78205

Dear Mr. McKenna:

This is in response to the September 3, 2019, Freedom of Information Act (FOIA) request you submitted to the Department of Health and Human Services (HHS), Office of Inspector General (OIG), seeking all reports, records, communications, and documents that were created, collected, compiled, or received by the United States Department of Health and Human Services Office of the Inspector General during the calendar years 2016 - present that regard, relate to, reference, or concern the investigation and inquiry related to Peripheral Vascular Associates of San Antonio, Texas, NPI No. 1396791570.

This office located eighty-three (83) pages responsive to your request; I have determined to partially release thirty-two (32) pages with portions withheld under FOIA Exemptions (b)(6), (b)(7)(C) and (b)(7)(F) and withhold thirty-four (34) pages in full under FOIA Exemptions (b)(5), (b)(6), (b)(7)(C) and (b)(7)(F).

Exemption (b)(5) permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion and recommendation. This exemption is intended to preserve free and candid internal dialogue leading to decision-making.

Exemption (b)(6) permits the withholding of information that if released would constitute a clearly unwarranted invasion of personal privacy.

Exemption (b)(7)(C) permits the withholding of investigatory records compiled for law enforcement purposes when disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.

Exemption (b)(7)(F) permits the withholding information that could reasonably be expected to endanger the life or physical safety of any individual.

In addition, seventeen (17) pages originated with the U.S. Department of Justice, Executive Offices of the United States Attorney (EOUSA); we have referred those pages to DOJ for review and direct response to you.  Should you wish to contact EOUSA, you may do so using the information below:

Executive Office of the United States Attorneys
Department of Justice
600 E Street, NW, Room 7300
Washington DC 20530-0001
Phone:  202.252.6020

There is no charge for FOIA services in this instance because billable fees are under the Department's
$25 cost effective threshold.

If you have reason to believe that any denied portions should not be exempt from disclosure, you may
appeal.  Your appeal must be postmarked or electronically transmitted within 90 days from the date of
this letter to the Deputy Agency Chief FOIA Officer, U.S. Department of Health and Human
Services, Assistant Secretary for Public Affairs, FOI/Privacy Act Division, Suite 729H, 200
Independence Avenue, SW, Washington, DC 20201.  Clearly mark both the envelope and your letter
"Freedom of Information Act Appeal" or you may email your appeal to FOIARequest@hhs.gov.

In addition, you may contact our FOIA Requester Service Center at 202.619.2541 or
FOIA@oig.hhs.gov, for any further assistance or to discuss any aspect of your request. Additionally,
you may contact the Office of Government Information Services (OGIS) at the National Archives
and Records Administration to inquire about the FOIA mediation services they offer. The contact
information for OGIS is as follows: Office of Government Information Services, National Archives
and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001, e-
mail at ogis@nara.gov telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-
5769.

For your information, Congress excluded three discrete categories of law enforcement and national
security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010).
This response is limited to those records that are subject to the requirements of the FOIA. This is a
standard notification that is given to all our requesters and should not be taken as an indication that
excluded records do, or do not, exist.

Sincerely,

Robin R. Brooks
Director
Freedom of Information

# UNITED STATES OF AMERICA

### DEPARTMENT OF HEALTH AND HUMAN SERVICES
### OFFICE OF INSPECTOR GENERAL

## SUBPOENA DUCES TECUM

Control No.:  18042

*To:*   Custodian of Records
Peripheral Vascular Associates, P.A.
5047 Sherri Ann Road
San Antonio, TX 78233

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE Special Agent* (b)(6), (b)(7)c, (b)(7)f   *an official of the Office of Inspector General, at 40 NE Loop 410, Suite 404, in the City of San Antonio, and State of Texas,* **on the 20th of July 2018, at 9:00 o'clock, A.M. of that day, in connection with** *an investigation into possible false or otherwise improper claims submitted for payment under Title XVIII (Medicare) and Title XIX (Medicaid) of the Social Security Act; and you are hereby required to bring with you and produce at said time and place the following:*

### See Attachment

*which are necessary in the performance of the responsibility of the Inspector General under Public Law 95-452 (5 U.S.C. App. 3 § 6(a)(4)), as amended by Public Law 100-504, to conduct and supervise audits and investigations and to promote economy, efficiency and effectiveness in the administration of and to prevent and detect fraud and abuse in the programs and operations of the Department of Health and Human Services.*



*IN TESTIMONY WHEREOF*

(b)(6), (b)(7)c, (b)(7)f

*the undersigned official of the Office of Inspector General of said DEPARTMENT OF HEALTH AND HUMAN SERVICES, has hereunto set her hand this 19th day of June, 2018.*

(b)(6), (b)(7)c, (b)(7)f

_____

*Special Agent in Charge*

**RETURN OF SERVICE**

*I, being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of –*

   *1.  personal delivery to an individual, to wit:*

(b)(6), (b)(7)c

_____
*(Name)*

Administrator
_____
*(Title)*

5047 Sherri Ann Rd, San Antonio, TX
                          78233
*(Address)*

   *2.  personal delivery to an address, to wit:*

_____
*(Description of premises)*

_____
*(Address)*

_____
*(Address)*

   *3.  registered or certified mailing to:*

_____
*(Name)*

_____
*(Address)*

_____
*(Address)*

at        ( ✓ ) *a.m.*
10:30  *on*  (  ) *p.m.*  June 26, 2018

(b)(6), (b)(7)c, (b)(7)f

_____

"Special Agent"  (b)(6), (b)(7)c, (b)(7)f
*(Title)*

**UNITED STATES OF AMERICA
DEPARTMENT OF HEALTH AND
HUMAN SERVICES
OFFICE OF INSPECTOR GENERAL**

*Upon contumacy or refusal to obey, this subpoena shall be enforceable by order of the appropriate United States District Court.*



DEPARTMENT OF HEALTH AND HUMAN SERVICES

# OFFICE OF INSPECTOR GENERAL



OFFICE OF INVESTIGATIONS
DALLAS REGIONAL OFFICE
1100 COMMERCE STREET
SUITE 629
DALLAS, TX 75242

June 19, 2018

Custodian of Records
Peripheral Vascular Associates, P.A.
5047 Sherri Ann Road
San Antonio, TX 78233

Dear Sir or Madam:

Accompanying this letter is a subpoena addressed to you returnable at the Office of Inspector
General (OIG), Office of Investigations, Dallas Regional Office, before my designee, Special
Agent (SA) (b)(6), (b)(7)c, (b)(7)f   The subpoena has been issued pursuant to the authority
provided to the Inspector General by Public Law 95-452 (see 5 U.S.C. App. 3 § 6(a)(4)), as
amended by Public Law 100-504.

Under the health information privacy regulation that implements the Health Insurance Portability
and Accountability Act of 1996, also known as HIPAA, providing the information requested by
the attached subpoena is a permitted disclosure since it is "required by law" (see 45 C.F.R. §§
164.512(a), 164.103), and will be used for "health oversight" activities by OIG, which meets the
definition of a "health oversight agency" (see 45 C.F.R. §§ 164.512(d), 164.501).

Fully legible and complete copies of the records called for by the subpoena will be accepted in
response to the subpoena, provided that the original records will be made available to employees
of my office, upon request, during normal business hours.  Otherwise, original documents
(including copies as maintained in your files) should be produced.

Failure to appear at the time and place specified in the subpoena may be taken as a failure to
comply with the subpoena.  However, as a convenience and in lieu of your personal appearance,
you may send the records called for by the subpoena by certified mail on or before **July 20, 2018**
to:

**Special Agent** (b)(6), (b)(7)c, (b)(7)f
**U.S. Department of Health and Human Services**
**Office of Inspector General**
**Office of Investigations**
**40 NE Loop 410, Suite 404**
**San Antonio, TX 78216**

Page 2 – Peripheral Vascular Associates

If you have any questions, please feel free to contact SA (b)(6), (b)(7)c, (b)( at (b)(6), (b)(7)c

Sincerely,

(b)(6), (b)(7)c, (b)(7)f

Special Agent in Charge

Enclosure

# UNITED STATES OF AMERICA

## DEPARTMENT OF HEALTH AND HUMAN SERVICES
## OFFICE OF INSPECTOR GENERAL

---

## ATTACHMENT FOR SUBPOENA DUCES TECUM

**A.   DEFINITIONS**

Unless otherwise provided for, the following terms shall have the meanings specified:

1.   "Peripheral Vascular Associates, P.A." or "PVA" or "You" means any and all of the following: Peripheral Vascular Associates, P.A., and any and all predecessors, successors, parent organizations, subsidiaries, affiliates, branches, divisions, units, or offices of such company.

2.   The term "document(s)" means any and all writings and recorded material in any form, including but not limited to, written, printed, typed, photographed, recorded, electronic, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds, or symbols, and any copies of documents, contemporaneously or subsequently created, which have any non-conforming notes or other markings, and the reverse side of any communication or representation that also contains any of the above.

   a.   By way of example, "document(s)" includes: ledgers, books of account, payroll ledgers, financial statements, checks, check stubs and registers, bank statements, wire transfers, powers of attorney, receipts, vouchers, invoices, journals, appointment books or calendars, diaries, reports, correspondence, notes, newsletters, memoranda, minutes of meetings, working papers, directives, manuals, contracts, charts, graphs, drawings, marketing materials, bulletins, training and compliance materials, and other materials stored in any data storage system. This also includes electronic storage media, which incorporates electronic mail, voicemail messages, facsimiles, videotapes, audiotapes, photographs, magnetic tapes, computer discs (including floppy disks, hard drives, hard disks, jump drives, flash memory devices, and writeable or recordable CDs and DVDs of all types), Personal Digital Assistants, BlackBerrys, cell phones, backup media, all programming instructions, record layouts, and other material necessary for the retrieval of all electronic or word processing material and printouts of data or information stored or maintained by electronic means.

   b.   The term "document(s)" also includes preliminary drafts or revisions, any attachments or enclosures, as well as copies or duplicates that are not identical to the original because of additions, deletions, alterations, or notations.

3.   The term "correspondence" means transmittal of information (in the form of facts, ideas, inquiries or otherwise) between two or more persons.

4.   The term "communication" means any transmission or exchange of information between two or more persons, orally or in writing, and includes, without limitation, any conversation or discussion, whether face-to face or by means of telephone, facsimile, letter, notes of conversations, memorandum, text message, instant message, tweets, electronic posts, or

electronic mail message of whatever type and description in Your possession, custody, or control, however made, and includes all handwritten, typed, printed, recorded, transcribed, and taped writing or record of such communications.

5.  The terms "relate to" or "relating to" mean to make a statement about, refer to, discuss, describe, reflect, identify, deal with, or in any way pertain, in whole or in part, to the subject. These terms include, without limitation, the synonyms pertaining, concerning, supporting, refuting, reflecting, describing, containing or connecting in any other manner to the matter described.

6.  The terms "or" and "and" are inclusive, referring to any one or more of the disjoined words or phrases, and "any" and "all" also include "each and every."

7.  All present tenses of verbs or verb forms shall be considered to include within their meaning the future and past tenses as well, and vice versa.

8.  The singular forms of a noun or pronoun shall be construed to include within its meaning the plural form of the word, and vice versa.

## B.   **INSTRUCTIONS**

1.  Time Period:  Unless otherwise specified, this subpoena refers to documents dated, created, revised, or in effect from **January 1, 2015 through the date of issuance of the subpoena** (Subpoena Period), and shall include all documents that relate to such period even though prepared before or after such date.

2.  Possession, Custody, and Control:  Except as otherwise provided in the instructions (including, but not limited to the limitation contained in Instruction 5 with respect to privileges), this subpoena requires the production of all documents responsive to one or more of the specifications set out below that are in Your possession, custody, or control, regardless of where located.

3.  Documents No Longer In Your Possession: To the extent that documents responsive to this subpoena once were, but no longer are, in Your possession, custody, or control, this request requires production of all existing indices, lists, or documents in Your possession, custody, or control that reflect the transfer or destruction of, or references to, such documents.

4.  Statement of "No Responsive Documents":  If no documents exist that are responsive to a specification, You shall provide a written statement to that effect at the time of production.

5.  Privilege: If You withhold any document on the ground of any privilege, You shall provide a log or index setting forth:

    a.  The type of document (e.g., letter, memorandum, contract, etc.);
    b.  The date of the document, if known;
    c.  The title of the document;
    d.  The name and address and position of the author of the document and of any person who assisted in its preparation;

2

    e.   The name, address and position of all persons to whom the document or a copy of the document was sent;

    f.   The number of pages;

    g.   A brief description of the subject matter;

    h.   The paragraph of the subpoena to which it is responsive; and

    i.   The factual and legal basis(es) for Your claim of privilege or grounds for non-production asserted with respect to the document.

    j.   The recommended formats for producing Privilege Logs are MS Excel or MS Access. All documents determined by You to be privileged shall be identified in a manner agreed upon by the parties.

6. <u>Redaction</u>:  When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible.  If a privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration.  Any redaction must be clearly visible on the redacted document and marked accordingly (<u>e.g.</u>, use of the word "REDACTION" within or adjacent to the redaction box).

7. <u>Organization of Documents Produced</u>:  All documents produced pursuant to this subpoena shall to be organized in such a manner that all documents relating to a particular specification are grouped together and identified as being responsive to that specification.

8. <u>Physically Stored Documents</u>:  All documents provided in response to this subpoena are to include all marginalia and post-its, as well as any attachments referred to or incorporated by the documents.  All documents that contain handwriting, marginalia, or post-its shall be produced in color-scanned copies.

To the extent that documents are found attached to other documents, by means of paper clips, staples or other means of attachment, such documents shall be produced together in the same grouping.

9. <u>Electronically Stored Information</u>:  The definition of "document," includes data stored in any electronic form.  All responsive data that are stored electronically must be produced in an electronic format according to the instructions in Section D below (ESI Instructions).

10. <u>Non-Destruction</u>:  No document called for by this subpoena shall be destroyed, modified, redacted, removed, or otherwise made inaccessible, except insofar as documents are withheld under a claim of privilege in compliance with the instructions herein.  Any decision by the United States to permit a partial or limited response to a request in the subpoena is not a waiver of the request and does not extinguish Your obligation to maintain and preserve all documents called for by the subpoena.

11. <u>Bates Labeling</u>:  To facilitate the handling and return of the submitted documents, please mark each page with an identifying logo or the first three letters of Your name and number each page sequentially beginning with "000001."  The marks should be placed in the lower right hand corner of each page, but should not obscure any information on the document.

12. Transmittals:  All documents shall be accompanied by a transmittal letter that includes (1) the subpoena control number, (2) Your name, (3) the date of production, (4) the paragraphs of the subpoena to which the documents respond, and (5) the Bates range.

## C.   SPECIFICATIONS

For the Subpoena Period, provide the following:

1.   Documents sufficient to identify the owners, executives, officers, directors, employees, and contractors of PVA during the Relevant Period.  In lieu of producing documents, PVA may produce a list identifying each owner, executive, officer, director, employee and contractor during the Relevant Period.  For each person identified, PVA shall provide contact information, including email address; title or position; brief job description; period of association (e.g., begin date and end date of employment).

2.   Produce a complete medical file/chart for each patient identified on the attached list for the Relevant Period, including but not limited to: patient history, progress notes, diagnostic, procedure, surgical records, and records from MedStreaming and Allscripts.

3.   Produce complete billing records for each patient identified on the attached list for the Relevant Period, including but not limited to: superbills; charge sheets; claim forms, bills or invoices; and other billing records identifying dates of service, diagnostic codes, procedure or service codes, and records from MedStreaming and Allscripts.

4.   Produce a complete patient account history for each patient identified on the attached list for Relevant Period.

5.   Produce records sufficient to identify all overpayments and corresponding refunds, reimbursements or offsets that PVA made to any federal health care program during the Relevant Period related to services billed under any of the following CPT codes: 93880, 37252, 93922, 93926, 93990.

6.   Produce all documents and communications related to the coding, billing, and documentation procedures under the following CPT codes: 93880, 37252, 93922, 93926, 93990.

7.   Produce all documents and communications related to complaints, notices, reports, concerns, compliance issues, and corrective actions associated with PVA's procedure coding, billing, and documentation practices during the Relevant Period.

8.   Produce all records related to any audits, reviews or investigations of PVA's procedure coding, billing, or documentation practices during Relevant Period, including without limitation: (1) internal audits, reviews, and investigations, with working papers and management responses; (2) federal, state, or administrative audits, reviews, or investigations; and (3) other audits, reviews, or investigations.

9.    Produce all communications with federal health care programs during the Relevant Period related to the coding, billing, and documentation of the following CPT codes: 93880, 37252, 93922, 93926, 93990.

**SECTION D OF ATTACHMENT FOR SUBPOENA DUCES TECUM**
**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

### Collection of Electronically Stored Information (ESI)

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

**1.      Specification Modifications**

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

**2.      Production Format of ESI and Imaged Hard Copy**

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 5 – 20, shall be rendered to TIFF image format, and accompanied by a Concordance® Image Cross Reference file. All applicable metadata/database (see section 3 below) shall be extracted and provided in Concordance® load file format.

     **a.      Image File Format:** All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

       i.   All TIFF file names shall include the unique Bates number burned into the image. (See paragraph 21, below, regarding Bates number instructions.)
      ii.   All TIFF image files shall be stored with the ".tif" extension.
    iii.   Images shall be OCR'd using standard COTS products.
          1.   An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.
             a.   All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
             b.   No image folder shall contain more than 2000 images.

     **b.      Concordance® Image Cross Reference file:** Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

       i.   Image Cross Reference Sample Format:

           ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,

ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

**c.** **Concordance® Load File**: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

i. Text delimited load files are defined using the standard Concordance delimiters. For example:

| *Field Separator* | ¶ *or Code 020* |
|---|---|
| *Text Qualifier* | þ *or Code 254* |

ii. This load file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.
iii. There should be one line for every record in a collection.
iv. The load file must contain a header listing the metadata/database fields contained within. For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

**d.** **The extracted/OCR** text should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

**e.** **Directory and folder structure:** The directory structure for productions should be:
   \\*CaseName*\\**LoadFiles**
   \\*CaseName*\\**Images** < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)
   \\*CaseName*\\**Natives** <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)
   \\*CaseName*\\**Text** <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

3.      **Required Metadata/Database Fields**

A "✓" denotes that the indicated field should be present in the load file produced. "Other ESI" includes data discussed in sections 5 – 20 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9). Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/ box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name. | Text | 160 | | ✓ | ✓ |
| TO | Recipient - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line/Document Title | Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYYY | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date Sent (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | |
| PARAGRAPH REQUEST NUMBER | Subpoena/request paragraph number to which the document is responsive. Use semicolon to delimit multiple entries. | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Identifies the application that created the file Type of file, not to be confused with file extension | Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Text | 10 | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | 600 | | ✓ | ✓ |

11

**4.      Search, De-Duplication, Near-Duplicate Identification, E-mail Conversation Threading and Other Culling Procedures**

De-duplication of exact copies <u>within</u> a custodian's data may be done at the family level, but all file paths and custodians must be provided for each duplicate document in an exception report in .csv format. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the government.

**5.      Hidden Text**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

**6.      Embedded Files**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

**7.      Image-Only Files**

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with OCR text and metadata/database fields identified in section 3 for "Other ESI."

**8.      Encrypted Files**

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

> **a.**      The unencrypted text shall be extracted and provided per section 2.c. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-20.
> **b.**      If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

**9.      Production of Imaged Hard Copy Records**

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

**a.**       Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).

**b.**       The first document in the collection represents the parent document and all other documents will represent the children.

**c.**       All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

**d.**       All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.

**10.      Production of Spreadsheets and Presentation Files**

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. *See* section 20 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

**11.      Production of E-mail Repositories**

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. For purposes of production, responsive items shall include the "E-mail" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to e-mail or other items) with the parent/child relationship preserved. Our preferred format for e-mail productions is PST. E-mail should NOT be provided in X400 or X500 format. E-mail databases from systems other than Microsoft Exchange shall be produced after consultation with and written consent of the government about the format for the production of such databases.

**12.      Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items**

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

**13.      Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.**

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other

less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

### 14.     Production of Social Media

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.) the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts. Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering. Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements. If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data (i.e., html files) as well as load files in .csv format must be produced with the associated content.

### 15.     Production of Structured Data

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be provided in native Excel (.xls or .xlsx) format.

### 16.     Production of Structured Data from Proprietary Applications

Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (.xls or .xlsx) format.

### 17.     Production of Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

**18.     Production of Images from which Text Cannot be OCR Converted**

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

**19.     Production of ESI from Non-PC or Non-Windows-based Systems**

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

**20.     Production of Native Files (When Applicable Pursuant to These Specifications)**

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

> **a.**     AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.
> **b.**     GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
> **c.**     Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

**21.     Bates Number Convention**

All images should be assigned Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the load/dat file. The load/dat file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

> PREFIX0000001          PREFIX0000003
> PREFIX0000001.001     PREFIX0000003.001
> PREFIX0000001.002     PREFIX0000003.002

**22.**     **Media Formats for Storage and Delivery of Production Data**

Electronic documents and data shall be delivered on any of the following media:

    **a.**     CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.

    **b.**     External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format specifications) or flash drives.

    **c.**     Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

    **d.**     Media should be labeled with the case name, production date, Bates range, and producing party.

**23.**     **Virus Protection and Security for Delivery of Production Data**

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the government.

**24.**     **Compliance and Adherence to Generally Accepted Technical Standards**

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

**25.**     **Read Me Text File**

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

**26.**     **Exception Report**

An exception report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic Bates number (DOCID or control numbering) assigned during the collection, processing, and production phases.

**27.**     **Transmittal Letter to Accompany Deliverables**

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates number range produced.

-XXX-

 

**Department of Health and Human Services**

# OFFICE OF INSPECTOR GENERAL
## OFFICE OF INVESTIGATIONS

## REPORT OF INVESTIGATIVE ACTIVITY

An investigative activity was conducted on August 22, 2018 by Special Agent (b)(6), (b)(7)c, (b)(7)f
The following was the nature of the activity:

A meeting to discuss the production of documents requested via an OIG Subpoena regarding Peripheral Vascular Associates (PVA) was conducted.  Also present for the meeting was Assistant United States Attorney Sean O'Connell, Defense Criminal Investigative Service Special Agent (b)(6), (b)(7)c, (b)(7)f  PVA Counsel Sean McKenna and Peter Wickersham, and PVA representative RN (b)(6), (b)(7)c

McKenna provided the production bates labeled, PVA-0000001 – PVA-0238037.  (b)(6), (b discussed the documents provided and reviewed one of the patient files to demonstrate how PVA documented its procedures and Medicare billing.  (b)(6), (b explained how the documents were extracted from the Electronic Medical records.  (b)(6), also explained the steps that were taken by clinicians and physicians to produce and review the diagnostic imaging reports.

McKenna and Wickersham discussed the history of PVA and provided statistics detailing the reasons PVA had a high volume of patients and high volume of ultrasounds.  They highlighted successful audit results.  They also explained the standards and guidelines PVA followed to produce the diagnostic imaging reports.  McKenna added PVA will fully cooperate and is willing to answer any future inquiries.

| | | | |
|---|---|---|---|
| Investigative Activity conducted on 8/22/2018 | | At  San Antonio USAO | |
| By (b)(6), (b)(7)c, (b)(7)f | | SA Phone Number (b)(6), (b)(7)c | |
| Date Prepared  8/27/2018 | By (b)(6), (b)(7)c, (b)(7)f | Case Number 6-17-2-0239-9 | |

*This document, including any attachments and information contained therein, is the property of HHS OIG and is for OFFICIAL USE ONLY. The original and any copies of the report must be appropriately controlled and maintained. Disclosure to unauthorized persons without prior written approval of the Deputy Inspector General for Investigations or his/her designee is strictly prohibited and may subject the disclosing party to liability. Unauthorized persons may include, but are not limited to, individuals referenced in the report, contractors, and individuals outside the HHS. Public disclosure is determined by the Freedom of Information Act (Title 5, U.S.C., Section 552) and the Privacy Act (Title 5, U.S.C., Section 552a).*

**OI-3A  (12/2017)ʰ**



# Department of Health and Human Services
# OFFICE OF INSPECTOR GENERAL
# OFFICE OF INVESTIGATIONS



## REPORT OF INVESTIGATIVE ACTIVITY

An investigative activity was conducted on October 5 to 9, 2018 by Special Agent (b)(6), (b)(7)c, (b)(7)f   The following was the nature of the activity:

Peripheral Vascular Associates (PVA) provided four hundred and fourteen patient files in response to an OIG Subpoena. (b)(5)

(b)(5)

---

Investigative Activity conducted on   October 5 to 9, 2018    At   San Antonio Field Office

By  (b)(6), (b)(7)c, (b)(7)f                                     SA Phone Number   (b)(6), (b)(7)c

Date Prepared    10/15/2018            By   (b)(6), (b)(7)c, (b)(7)f          Case Number  6-17-2-0239-9

*This document, including any attachments and information contained therein, is the property of HHS OIG and is for OFFICIAL USE ONLY. The original and any copies of the report must be appropriately controlled and maintained. Disclosure to unauthorized persons without prior written approval of the Deputy Inspector General for Investigations or his/her designee is strictly prohibited and may subject the disclosing party to liability. Unauthorized persons may include, but are not limited to, individuals referenced in the report, contractors, and individuals outside the HHS. Public disclosure is determined by the Freedom of Information Act (Title 5, U.S.C., Section 552) and the Privacy Act (Title 5, U.S.C., Section 552a).*

OI-3A  (12/2017)h



## Department of Health and Human Services
# OFFICE OF INSPECTOR GENERAL
## Office of Investigations



## REPORT OF INVESTIGATIVE ACTIVITY

An investigative activity was conducted on September 30, 2019 by Special Agent (b)(6), (b)(7)c, (b)(7)f
The following was the nature of the activity:

On September 9, 2019, SA (b)(6), (b)(7)c, (b received a FOIA Request for reports, records, and communications regarding Peripheral Vascular Associates (PVA).

On September 10, 2019, SA (b)(6), (b)(7)c, (b received a subpoena for reports, records, and communications regarding PVA.

On September 10, 2019, SA (b)(6), (b)(7)c, (b received a Touhy Request to be deposed on information regarding PVA.

On September 12, 2019 (b)(6), (b)(7)c, (b)(7)f, (b)(5)
(b)(5)

(b)(5), (b)(6), (b)(7)c, (b)(7)f

On September 30, 2019, SA (b)(6), (b)(7)c, (b)(7)f, (b)(5)

---

| | | | | |
|---|---|---|---|---|
| Investigative Activity conducted on | 9/30/2019 | At | SAFO | |
| By (b)(6), (b)(7)c, (b)(7)f | | | SA Phone Number | (b)(6), (b)(7)c |
| Date Prepared | 9/30/2019 | By (b)(6), (b)(7)c, (b)(7)f | Case Number | 6-17-2-0239-9 |

*This document, including any attachments and information contained therein, is the property of HHS OIG and is for OFFICIAL USE ONLY. The original and any copies of the report must be appropriately controlled and maintained. Disclosure to unauthorized persons without prior written approval of the Deputy Inspector General for Investigations or his/her designee is strictly prohibited and may subject the disclosing party to liability. Unauthorized persons may include, but are not limited to, individuals referenced in the report, contractors, and individuals outside the HHS. Public disclosure is determined by the Freedom of Information Act (Title 5, U.S.C., Section 552) and the Privacy Act (Title 5, U.S.C., Section 552a).*

**OI-3A  (12/2017)**h

September 5, 2019

*Via FedEx Overnight*

Joanne Chiedi
Acting Inspector General
U.S. Department of Health and Human Services Office of Inspector General
330 Independence Avenue, SW
Washington, DC 20201

Robert Charrow
General Counsel
U.S. Department of Health and Human Services
200 Independence Ave., SW
Washington, DC 20201

Re:   *United States ex rel. Montcrieff, et al. v. Peripheral Vascular Associates*, No. 5:17-CV-00317-XR (W.D.T.X.)

Dear Ms. Chiedi and Mr. Charrow:

On behalf of Peripheral Vascular Associations ("PVA"), Defendants in the above captioned lawsuit ("Lawsuit") against whom the United States of America declined to intervene, this letter serves as a *Touhy* request to interview and depose Special Agent (b)(6), (b)(7)c, (b)(7)f or a Rule 30(b)(6) representative of the Office of Inspector General ("OIG"). We have also enclosed a Rule 45 subpoena (Exhibit A) seeking production of documents from the OIG that are relevant to the above-captioned litigation in which the United States is not a party. We would be glad to coordinate with your office in order to modify this request and the attached subpoena, if necessary, to accommodate any concerns you have.

This request is being made pursuant to the Department of Health and Human Services ("DHHS") *Touhy* regulations at 45 C.F.R. § 2.1 *et seq*, to the extent those regulations are applicable. According to the DHHS *Touhy* regulations, it is the policy of DHHS "when subject to the jurisdiction of a court or other tribunal presiding over non-federal party litigation, to follow all applicable procedural and substantive rules relating to the production of information, data, and records by a non-party." 45 C.F.R. § 2.1(b). The above-captioned matter is a *qui tam* lawsuit brought under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, in which the United States has declined to intervene but remains the real party in interest. Nevertheless, the United States is a non-party for the purposes of this *Touhy* request.[1]

PVA submits this *Touhy* request in order to interview and depose Special Agent (b)(6), (b)(7)c, (b)(7)f or a Rule 30(b)(6) representative of OIG on these topics:

---

[1] *United States ex rel. Lamers v. City of Green Bay*, 924 F. Supp. 96, 98 (E.D. Wis. 1996) (holding that because the United States is not a party to a *qui tam* suit in which it has not intervened, private litigants must use an agency's *Touhy* regulations to seek discovery from the United States); *see also United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) ("The United States . . . is a 'party' to a privately filed FCA action only if it intervenes . . . .").

1. The Office of Inspector General *Subpoena Duces Tecum* dated June 19, 2018 (the "Subpoena");

2. The investigation that resulted from the PVA production in response to the Subpoena; and

3. All interviews conducted in the investigation of the instant Lawsuit.

The DHHS *Touhy* regulations instruct DHHS (and its subsidiary agencies) regarding how to respond to a subpoena:

> Whenever a subpoena duces tecum has been served upon a DHHS employee or former employee commanding the production of any record, such person shall refer the subpoena to the Office of the General Counsel (including regional chief counsels) for a determination of the legal sufficiency of the subpoena, whether the subpoena was properly served, and whether the issuing court or other tribunal has jurisdiction over the Department.)   If the General Counsel or his designee determines that the subpoena is legally sufficient, the subpoena was properly served, and the tribunal has jurisdiction, the terms of the subpoena shall be complied with unless affirmative action is taken by the Department to modify or quash the subpoena in accordance with Fed. R. Civ. P. 45 (c).

45 C.F.R. § 2.5(a).  The attached subpoena follows the Rule 45 requirements and is therefore legally sufficient; it was properly served upon the agency head per the DHHS *Touhy* regulations; and the relevant tribunal—the United States District Court for the Western District of Texas—has jurisdiction over agencies of the federal government.  As these requirements have been met, OIG should respond to the attached subpoena per the procedures set forth in Rule 45.

## Background on Litigation

The parties to the Lawsuit are identified in the enclosed First Amended Complaint (Exhibit B). The Plaintiffs purport to sue on behalf of the U.S. under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733.  The United States declined to intervene in the Lawsuit.  The Plaintiffs allege that PVA submitted false claims for reimbursement under the Medicare and Medicaid programs. The focus of the lawsuit is claims submitted by PVA to the Medicare and Medicaid programs for reimbursement.

## Nature of the Requested Documents and Testimony

The testimony and documents requested by this *Touhy* request are directly related to the substance of the Lawsuit and to Special Agent (b)(6), (b)(7)c, (b)(7)f s specialized experience and expertise.  Special Agent (b)(6), (b)(7)c, (b)(7)f is a key employee of the Office of Inspector General ("OIG") and has critical knowledge regarding the investigation related to the Subpoena, which directly addresses the allegations made by Plaintiffs in the Lawsuit.  Records cannot substitute (b)(6) extensive personal knowledge and experience.

Given the scope and complexity of the Lawsuit, discovery of Special Agent (b)(6), (b)(7)c, (b)(7)f s understanding and historic familiarity with the subject matter of the Lawsuit, related documents, and his investigation is absolutely necessary for Defendants to prepare an adequate defense.

## Importance of the Requested Evidence to this Litigation

PVA, the defendant in the lawsuit, seeks the testimony of Special Agent (b)(6), (b)(7)c, (b)(7)f      and the documents detailed in the attached subpoena because they are relevant and material to its defenses.   As described in the First Amended Complaint, this lawsuit involves the alleged submission of false claims related to the Medicare and Medicaid programs. According to the First Amended Complaint, the false information in those claim requests was material to the Medicare and Medicaid programs reimbursing the claims.  In other words, absent the falsified or fraudulent data, the Medicare and Medicaid programs would not have approved these claims and made payments to PVA.

As emphasized in a recent U.S. Supreme Court decision, "materiality" is a required element of a False Claims Act claim.[2]  A false claim or statement made to the government does not give rise to False Claims Act liability unless it was material to the government's decision to pay a claim. "[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."[3]  In this case, the Plaintiffs need to show that DHHS would have rejected the examined claims (or otherwise halted government payments) if it had known about incomplete or falsified claims.

Accordingly, obtaining information about OIG's investigation is critical to PVA's defense because the testimony and documents requested could contain exculpatory information that does not exist elsewhere.

## This Information is Unavailable by Other Means

Both Special Agent (b)(6), (b)(7)c, (b)(7)f      and OIG's specific, direct involvement in this litigation is unusual, and thus this *Touhy* request will have limited implications for future *Touhy* requests of the OIG.  As PVA is requesting testimony relating to their own interactions with the relevant government entities and data, dissemination of privileged or confidential information is of minimal concern.  To the extent it exists though, the enclosed Protective Order Regarding Confidentiality addresses the handling of confidential materials in the Lawsuit (Exhibit C).

## Compliance with this Request Would Promote the Objectives of OIG and the Federal Government

The U.S., although not a party to the Lawsuit because it has declined to intervene, is nonetheless the real party in interest for Plaintiffs' False Claims Act claims and thus has a direct and substantial stake in the Lawsuit's outcome.  Plaintiffs purport to represent the U.S. in the Lawsuit, which addresses whether PVA has complied with applicable federal regulations.  It would be inequitable for the United States to refuse to respond to this request or otherwise decline to participate in discovery in this lawsuit when the United States stands to gain a substantial amount if Plaintiff's claims are successful.

## Responding to this Request Would Not Disrupt Official Duties

The documents requested are limited and narrow in scope.  This *Touhy* request will not unduly burden Special Agent (b)(6), (b)(7)c, (b)(7)f      OIG, or the DHHS, nor interfere with official business or

---

[2] *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).
[3] *Escobar*, 136 S. Ct. at 2003.

your ability to maintain impartiality in conducting your business. PVA has already limited the scope of the requested testimony and has designed their discovery efforts in order to streamline the process and eliminate duplicative and burdensome requests to DOI, to OIG, and to you.

To further reduce the government's burden, PVA would be willing to reimburse DHHS and OIG for its costs in responding to these requests.

### Compliance with this Subpoena Would Not Undermine the Impartiality of OIG

Responding to the subpoena would not suggest favoritism toward PVA or prejudice against Relators. Rather, both parties have an interest in discovering more about the claims at issue in this matter.

* * * * *

Per 45 C.F.R.§ 2.6, we request that OIG certify the authenticity of copies of records disclosed in response to this request.

Very truly yours,

Sean McKenna

cc:     AUSA Thomas A. Parnham, Jr.
        United States Attorney's Office for the Western District of Texas
        816 Congress Avenue, Suite 1000
        Austin, Texas 78701

        Sarvenaz (Nazy) Fahimi, Esq. (via email)
        Justin Berger, Esq. (via email)
        Wallace M. Brylak, Jr. (via email)

# Kim Tindall & Associates, LLC

16414 San Pedro Avenue #900
San Antonio, TX 78232
OFFICE: 210.697.3400  FAX:  210.697.3408

*Please use this one - Amended*
Kindly Disregard any other request*

**TOTAL PAGES:** 6

CUSTODIAN OF RECORDS
(b)(6), (b)(7)(C)            **United States Department of Health and Human Services**
**Office of Inspector General**
**40 NE Loop 410, Suite 404**
**San Antonio, TX 78216**
**512-491-2000,  fax**

Please find enclosed a Notice of Production of Documents and Tangible Things for:

**Those documents requested in the attached Exhibit "A"**

You will receive a Subpoena in approximately 10 days for the production of the documents.  Please mail the records back to our office as soon as possible.

IF YOUR FEES EXCEED $50.00, please call for approval before sending records. Thank you for your cooperation.

***Payment will not be made for invoices received without prior fee approval or for invoices received after cancellation of request.***

**Alex Jimenez**
**Phone Number: 210-641-3166**
**ajimenez@ktanda.com**

Order No. 7497.001

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

UNITED STATES OF AMERICA ex rel., :
TIFFANY MONTCRIEFF, et al :
 :
vs. : CIVIL ACTION NO. **5:17-CV-00317-XR**
 :
 :
PERIPHERAL VASCULAR ASSOCIATES, P.A :

## AMENDED NOTICE OF PRODUCTION
## OF DOCUMENTS AND TANGIBLE
## THINGS

To  by and through their attorney(s) of record: **Justin T. Berger & Sarvenaz J. Fahimi (Cotchett Pitre & McCarthy, LLP), Thomas Parnham, Jr. (United States Attorney's Office for the Western District of Texas) and Wallace M. Brylak, Jr. (Brylak & Associates, LLC)To other party/parties by and through their attorney(s) of record: Sean McKenna (Law Office of Sean McKenna, PLLC)**

You will please take notice a subpoena compelling production of documents will be served on the following witness:

(b)(6), (b)(7)c, (b)(7)f **, United States Department of Health and Human Services (Those documents requested in Exhibit "A")**
**Thomas Parnham, Jr. (Those documents requested in Exhibit "A")**

Notice is further given that request is hereby made as authorized under Rule 34 Federal Rules of Civil Procedure, to the Officer authorized to issue a Subpoena Duces Tecum under Rule 45 Federal Rules of Civil Procedure and cause it to be served on the witness to produce on October 01, 2019 at 10:00 a.m. CST/CDT at the office of Norton Rose Fulbright US LLP c/o Jeff Wurzburg, Frost Tower, 111 W. Houston Street, Suite 1800 San Antonio, Texasany and all documents and tangible things as requested in the attached Exhibit "A" and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:
**Those documents requested in the attached Exhibit "A"**

       ___/s/ Stephen J. Romero_____
       **Stephen J. Romero**
       **State Bar No. 24046756**
       **Email: stephen.romero@nortonrosefulbright.com**
       **Jeff Wurzburg**
       **State Bar No. 24105140**
       **Email: jeff.wurzburg@nortonrosefulbright.com**
       **Norton Rose Fulbright US LLP**
       **Frost Tower**
       **111 W. Houston Street, Suite 1800**
       **San Antonio, TX  78205**
       **Telephone: (210) 224-5575**
       **Facsimile: (210) 270-7205**
       **and**
       **Sean McKenna**
       **State Bar No. 24007652**
       **Email: sean@seanmckennalaw.com**
       **Law Office of Sean McKenna, PLLC**
       **8710 Greenville Avenue, Suite B**
       **Dallas, TX  75240**
       **Telephone: (786)-973-3762**
       **Facsimile: 1-888-492-2847**
       **Counsel for Defendant Peripheral Vascular Associates, P.A.**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, electronic delivery, FAX, and/or certified mail, return receipt requested, on this day.

Dated: September 04, 2019    by_____
Order No.  **7497**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
#### Western District of Texas

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. Montcrieff ____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 5:17-CV-00317-XR |
| Peripheral Vascular Associates | ) |
| | ) |
| *Defendant* | ) |

### AMENDED SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: (b)(6), (b)(7)c, (b)(7)f **and any other individual with requisite knowledge of Case No. 5:17-CV-00317-XR**

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All reports, records, communications, and documents that were created, collected, compiled, or received by the U.S. Department of Health and Human Services OIG during the calendar years 2016 - present that regard, relate to, reference, or concern the investigation and inquiry related to Peripheral Vascular Associates.

| Place: Norton Rose Fulbright US LLP c/o Jeff Wurzburg<br>Frost Tower, 111 W. Houston Street, Suite 1800<br>San Antonio, Texas | Date and Time:<br><br>10/01/2019 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/03/2019

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | *Sean McKenna/ wp MRC* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ____
Peripheral Vascular Associates _____, who issues or requests this subpoena, are:
Sean McKenna, 8710 Greenville Ave., Building D, Dallas, TX 75243, sean@seanmckennalaw.com, (786) 973-3762

#### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

(b)(6), (b)(7)c, (b)(7)f **and any other individual with requisite knowledge of Case No. 5:17-CV-00317-XR**

All reports, records, communications, and documents that were created, collected, compiled, or received by the U.S. Department of Health and Human Services OIG during the calendar years 2016 - present that regard, relate to, reference, or concern the investigation and inquiry related to Peripheral Vascular Associates.

7497 001