IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., | § | |
| TIFFANY MONTCRIEFF, et al., | § | |
| | § | |
| Relators, Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:17-CV-00317-XR |
| | § | |
| PERIPHERAL VASCULAR | § | |
| ASSOCIATES, P.A., | § | |
| | § | |
| Defendant. | § | |

DEFENDANT PERIPHERAL VASCULAR ASSOCIATES'
SECOND MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant Peripheral Vascular Associates, P.A. ("PVA") files this Motion for Judgment as a Matter of Law and respectfully states the following:

## I.     INTRODUCTION

All of Relators' claims fail as a matter of law because PVA did not knowingly present or cause to be presented any false or fraudulent claim for payment or approval, or any false record or statement material to a false or fraudulent claim within the meaning of the False Claims Act ("FCA") to any federal healthcare program.[1]

## II.     JUDGMENT AS A MATTER OF LAW STANDARD

Federal Rule of Civil Procedure 50 "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular

---

[1] Relators plead, and their contentions allege, only Medicare violations. The Relators have offered no evidence that PVA submitted any false or fraudulent claim for reimbursement to any other federal healthcare program beyond Medicare. Any belief by Relators that any non-Medicare damages are relevant or material to this case therefore is not supported by any of Relators' evidence.

result.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 447–48 (2000) (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed.1995)). The granting of judgment as a matter of law is not discretionary but is a conclusion of law "based upon a finding that there is insufficient evidence to create a fact question for the jury." *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir.1994) (quoting *In re Letterman Bros. Energy Sec. Litig.*, 799 F.2d 967, 972 (5th Cir. 1986)).

The standard for granting judgment as a matter of law under Federal Rule of Civil Procedure 50 is the same as that for granting summary judgment under Rule 56. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). The Court should consider all evidence on the record and must draw "all reasonable inferences in favor of the nonmoving party." *U.S., ex rel., Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 476 (5th Cir. 2015) (quoting *Reeves*, 530 U.S. at 150). The Court shall not make credibility determinations or weigh the evidence. *Id.*

Judgment as a matter of law is not limited to those circumstances where "there is a complete absence of probative facts to support a jury verdict." *Nichols Construction Corp. v. Cessna Aircraft Co.*, 808 F.2d 340, 346 (5th Cir. 1985). "A mere scintilla of evidence is insufficient to present a question for the jury." *Id.*

## III.    ARGUMENT AND AUTHORITIES

To find a defendant like PVA liable for an FCA claim, a relator must prove that "(1) 'there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009). Relators cannot satisfy the most basic elements of an FCA claim, and this Court should enter judgment as a matter of law in favor of PVA.

Relators' claims against PVA based on Medicare Advantage and Tricare must fail. The Court's Order on the Parties' Motions for Summary Judgment did not make findings relating to Medicare Advantage and Tricare claims. (Dkt. 123). Relators failed to prove any Medicare Advantage or Tricare requirements relating to vascular ultrasound studies. Relators' evidence focused only on Medicare. Relators' claims based on Medicare Advantage and Tricare are unsupported, and PVA is entitled to judgment as a matter of law.

On December 14, 2020, this Court entered an Order on the Parties' Motions for Summary Judgment finding that Relators had proven the existence of a fraudulent course of conduct and that PVA acted with scienter with regard to Medicare claims. (Dkt. 123). This Court reconsidered its December 14, 2020, Order and refined its findings as to materiality, finding that genuine issues of material fact still exist as to materiality on all claims in this lawsuit. (Dkt. 151). Relators also must prove damages for all remaining claims. While PVA disagrees with the Court's findings relating to the elements of falsity and scienter, and preserves its right to appeal those findings, PVA focuses on materiality and damages for the purposes of this Motion as those are the elements at issue at this trial.

A.      **Relators' Claims Based On Medicare Advantage And Tricare Fail As A Matter Of Law.**

Relators failed to introduce evidence relating to Medicare Advantage or Tricare. Relators' evidence at trial focused solely on Medicare. There was no testimony or evidence regarding Medicare Advantage plans or Tricare on any of the FCA elements. Relators presented no evidence on Medicare Advantage or Tricare requirements, or what those payors would find material.

Medicare Advantage plans are administered by private companies that set the rules for payment. *See generally* 42 U.S.C. § 1395w–23; 42 C.F.R. Part 422. Relators introduced no evidence of those rules. There was no reference to provider agreements with Medicare Advantage

plans or how those plans pay claims. Relators' witnesses provided testimony about what they thought might be material to Medicare, but offered no testimony about Medicare Advantage plans.

The same is true of Tricare. Relators presented no evidence of Tricare requirements or what Tricare would find material.

Medicare Advantage plans and Tricare have their own rules for payment. *See generally* 42 U.S.C. § 1395w–23; 42 C.F.R. Part 422; 10 U.S.C. § 1074; 32 CFR Part 199. Those plans and programs make their own payment decisions. Relators provided no proof to satisfy the FCA elements on Medicare Advantage Plans and Tricare. PVA is therefore entitled to judgment as a matter of law on those claims.

**B.    Each of Relators' Claims Fail Because They Cannot Satisfy the Rigorous and Demanding Materiality Requirement to Prove a Violation of the FCA**

Relators have failed to prove that PVA "knowingly violated a requirement that [PVA] knows is material to the Government's payment decision." *See Escobar*, 136 S. Ct. at 1996. Relators cannot, and have not, proven that any alleged false claims or statements made by PVA were material to the Government's payment decision, a standard elevated and required by *Escobar*. The Supreme Court's unanimous decision in *Escobar* "clarif[ied] some of the circumstances in which the False Claims Act imposes liability." *Escobar*, 136 S. Ct. at 1995. In narrowing and specifying appropriate claims under the False Claims Act, the Supreme Court held that a "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act" and clarified "how that rigorous material requirement should be enforced." *Id.* at 1996. The Supreme Court emphasized:

> The materiality standard is demanding. The False Claims Act is not "an all-purpose antifraud statute," or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory,

regulatory, or contractual requirement as a condition of payment.   Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.

*Id.* at 2003 (internal citations omitted).   Acknowledging the "essentially punitive" nature of the FCA—treble damages plus a civil penalty of up to $23,331 per false claim—*Escobar* reinforces the "rigorous" and "demanding" materiality inquiry.  *Id.* at 1994, 1996, 2002–03; 15 C.F.R. 6.3. The Court in *Escobar* provided evidence and factors to consider on the materiality issue, which include:

1) "the Government's decision to expressly identify a provision as a condition of payment"

2) "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement."

3) Materiality cannot be found where noncompliance is minor or insubstantial.

*United States ex rel Lemon v. Nurses to Go, Inc.*, 924 F.3d 155, 160 (5th Cir. 2019) (quoting *Escobar*, 136 S. Ct. at 2003).

Relators have failed to satisfy the test mandated by the Supreme Court in *Escobar* requiring proof (not mere allegations) of materiality.  *Id.* at 2003.  Relators have not pointed to a single act taken by the Government that supports their burden to prove materiality.  To the contrary, the situation described in *Escobar* is precisely the case here.  Specifically, where "the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id.* at 2003-04.

Regarding the first factor, Relators wholly failed to present any evidence of a condition of payment violated by PVA. Relators' theory boils down to a dispute about timing of when a

vascular study was interpreted, not whether it was interpreted or should be paid.  This is not an FCA violation.  Relators contend it is improper to submit a claim for a vascular study until a Medstreaming report is signed.  But even under Relators' analysis, 94.12% of those claims had a completed Medstreaming report within 30 days of claim submission.[2]  If PVA waited to submit those claims until the Medstreaming report was signed, it would have submitted them 30 days later at most, and would have used the same date of service of when the technical component was performed.[3]  There would have been no effect on the reimbursement of those services.[4]  Given these facts, the first factor in *Escobar* and subsequent cases weighs in favor of PVA's motion.

In this case, the Government consistently paid Medicare claims submitted by PVA, all with actual and constantly updated knowledge of Relators' allegations.  If the Government thought or even suspected PVA's practice of billing for vascular studies was material, it would have taken some action to avoid paying PVA or recouping money previously paid (as the Government routinely does when it discovers an overpayment).  It did not.  As was testified to by Katherine Britt, she met with the United States Department of Health and Human Services Office of Inspector General (OIG) on August 22, 2018, at which meeting they discussed PVA's practices regarding the timing and submission of claims to Medicare. PVA shared over 230,000 pages of documents with OIG before the meeting. Since that time, the Department of Health and Human Services has continued to reimburse PVA for treating Medicare beneficiaries, has not requested that PVA

---

[2] Doc. 86-1, Nye Report, Ex. 3.

[3] Additionally, PVA's expert witness Ms. Scott detailed how Novitas, PVA's Medicare Administrative Contractor, will accept as adequate documentation attestations of signatures for documents after a service is performed.  Doc. 84-1, Expert Report of Melissa Scott, at 24-25 (citing FAQ: Signatures, *available at* https://www.novitas-solutions.com/webcenter/portal/MedicareJH/pagebyid?contentId=00005015 (last accessed August 19, 2020)).

[4] The same is true of the studies with Medstreaming reports signed more than 30 days after submission of a claim.

change their practices, or undertaken any activities to further examine PVA's practice at issue in this matter.

For comparison, it is instructive to look at the case of *United States v. Luce*, 873 F.3d 999 (7th Cir. 2017). In *Luce*, the United States brought an action under the FCA alleging that the defendant, owner of a mortgage company, defrauded the Government by falsely asserting that he had no criminal history so he could participate in the Fair Housing Act's ("FHA's") insurance program. *Id.* at 1000. Citing *Escobar*, the Seventh Circuit described the facts relevant to the materiality inquiry:

> HUD's action upon learning of Mr. Luce's indictment and false certifications confirms the centrality of this requirement: It instituted debarment proceedings to end Mr. Luce's participation in the program. It did not simply refuse payment in one instance, but terminated its relationship with the loan originator so that no future payments could be made.

*Id.* In sharp contrast to *Luce*, the Government has taken no action—no regulatory, administrative, or legal action—against PVA despite learning of the facts supporting Relators' claims and thoroughly investigating those claims. The Government's continual lack of any action is more than enough to show that Relators cannot satisfy their burden of proving the FCA's "demanding" and "rigorous" materiality requirement. Relators also failed to show that PVA knew the Government consistently refuses to pay claims in the cases based on noncompliance with alleged Medicare guidance. Moreover, Relators have not proved there is any particular statutory or regulatory requirement applicable in this case. In fact, the evidence shows the opposite is true. PVA had no knowledge that any particular requirement was a basis for the Government to refuse payment. Therefore, the second factor also weighs in favor of granting PVA's Motion for Judgment as Matter of Law.

Lastly, Relators completely failed to show how any alleged noncompliance is anything but minor or insubstantial. Relators rely solely on expert testimony to support materiality in this case. That reliance is misplaced as the experts can only offer conjecture on what is material to the Government. At no point has anyone actually working on behalf of the Government or its contractors, during the period of alleged non-compliance, provided any shred of evidence supporting Relators' contentions. Relators simply have not presented any evidence that the Government would not have paid PVA's claims had the Government known they were false, as alleged by Relators. Relators cannot prove PVA "knowingly violated a requirement that [PVA] knows is material to the Government's payment decision." *See id.* This Court should therefore grant PVA's Motion and enter judgment for PVA on all claims.

## C.     Relators Cannot Prove Damages.

Relators have put forth no evidence of the specific damages suffered by the Government. Relators' theory is that PVA billed for the professional component before a separate, stand-alone report was signed. However, Relators have presented no evidence of the amount the Government paid for the professional component on each study Relators allege was billed improperly. In fact, PVA has proved that Medicare would have paid it the same amount regardless of the timing of a signature on a Medstreaming report or the name on the claim form.

Relators merely calculated the total amount billed for vascular studies—they did not break out the amount for the technical component and professional component and, aside from one Medicare category, did not offer an opinion on whether a payer was governmental.[5]

As Relators' expert witness Dr. Alexander admitted, once the technical component for a vascular study is rendered, it may be immediately billed. He testified that PVA could have billed

---

[5] *See* Doc. 86, Defendant's Opposed Motion to Exclude Relators' Expert Witness Zachary Nye and Strike his Supplemental Reports, at 7.

for the technical component in all instances and Medicare would have paid those claims. Dr. Alexander offered no criticism about the actual performance of the technical or professional components—he conceded those tests were properly performed. He simply opined that they were billed too early. Thus, it is not an issue about whether PVA would be paid for those services, but simply when. The method in which PVA billed had no impact on the total amount of money it was paid. Testimony from Dr. Alexander, Melissa Scott, and Barbara Burrow support that clear conclusion. Ms. Burrow testified that the total money paid to PVA would not have changed, but simply shifted a few days into the future. That testimony is unrebutted.

PVA did not extract money from the government that would never have been paid. The government suffered no monetary harm. At most, the issue of the timing of when PVA would be paid amounts to a minor compliance issue. The FCA is not a tool to police all compliance issues, or even simple negligence. Even when a potential statutory or regulatory violation is at issue, "the False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations." *Escobar*, 136 S. Ct. at 2004. Medicare was not harmed and as a result, Relators' cannot prove any damages.

## IV.  CONCLUSION

For these reasons, PVA requests the Court grant its Motion for Judgment as a Matter of Law and enter judgment for Defendant PVA on all claims.

Respectfully submitted,

By: */s/ Sean McKenna*
        Sean McKenna
        State Bar No. 24007652
        smckenna@spencerfane.com
        Mark A. Cole
        *Admitted Pro Hac Vice*
        mcole@spencerfane.com
        Lauren M. Nelson
        State Bar No. 24058016
        lnelson@spencerfane.com
SPENCER FANE LLP
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
Telephone: 214-459-5890
Facsimile: 214-750-3612

        Jeff Wurzburg
        State Bar No. 24105140
        jeff.wurzburg@nortonrosefulbright.com
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701
Telephone: 512-305-4840
Facsimile: 512-305-4800

*Counsel for Peripheral Vascular Associates, P.A.*

CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2022 I caused this pleading to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Justin T. Berger                          Wallace M. Brylak, Jr.
Sarvenaz J. Fahimi                        Brylak & Associates
Cotchett Pitre & McCarthy, LLP            15900 La Cantera Parkway, Suite 19245
840 Malcolm Road                          San Antonio, Texas 78256
Burlingame, California 94010

AUSA John M. Deck
United States Attorney's Office for the Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

                                    _/s/ Sean McKenna_____
                                    Sean McKenna