IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., TIFFANY MONTCRIEFF, et al., | § | |
| Relators, Plaintiff, | § | |
| v. | § | Civil Action No. 5:17-CV-00317-XR |
| PERIPHERAL VASCULAR ASSOCIATES, P.A., | § | |
| Defendant. | § | |

**DEFENDANT'S OPPOSED MOTION FOR FINDING OF FACT REGARDING AN OMITTED ELEMENT OF RELATORS' CLAIM**

Pursuant to Federal Rule of Civil Procedure 49(a)(3), Defendant Peripheral Vascular Associates, P.A. (PVA), respectfully requests that this Court make findings of fact regarding an essential element of False Claims Act liability—namely, knowledge of materiality.

## ARGUMENT

PVA has repeatedly warned Relators that they cannot prove that PVA "knowingly violated a requirement that [PVA] **knows is material** to the government's payment decision." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016) (emphasis added). Rather than confront this requirement, Relators ignored it.

As confirmed by the Supreme Court's recent decision in *United States ex rel. Schutte v. SuperValu*, this requirement is separate and distinct from the scienter element (*i.e.*, knowledge of falsity) that this Court adjudicated by way of partial summary judgment. *See* 143 S. Ct. 1391, 1398-99 (2023) (discussing "scienter," *i.e.*, "knowledge of the claim's falsity"). Nor was knowledge of materiality submitted to the jury. Relators should not be allowed to recover $21 million in requested statutory penalties without confronting this essential element of their case. Instead, "the court may make a finding on the issue." Fed. R. Civ. P. 49(a)(3).

## I. This Court should make findings—based on the trial evidence—regarding whether PVA knew that the signed MedStreaming report was material to the government's payment decision.

Where is the evidence that PVA knew that the timing of when PVA's physicians affixed their signature to the ultrasound report in PVA's "MedStreaming" software was material to the government's payment decision? In the vast majority of cases, PVA's provider had **already** reviewed and interpreted the vascular ultrasounds in their electronic medical record system, Allscripts Clinical Manager, before Medicare was billed.[1]

The jury found that the absence of a timely signature on the MedStreaming reports was material to the government's payment decisions. But there has been no finding that PVA knew that the timing of signatures was material to the government—let alone that PVA was aware of the materiality of applying a physician's signature to an ancillary document in their "MedStreaming system." Hence this request for a finding under Federal Rule of Civil Procedure 49(a)(3).

### A. *Escobar:* Knowledge of materiality is an essential element.

The Court should start with *Escobar*, which explained that liability under 31 U.S.C. § 3729(a)(1)(A) requires proof of both knowledge of falsity and knowledge of materiality:

> We further hold that False Claims Act liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment…. What matters is not the label the Government attaches to a requirement, but **whether [1] the defendant knowingly violated a requirement that [2] <u>the defendant knows is material</u> to the Government's payment decision**.

[1] *See* Transcript at 144 (Barbara Burrow: "[W]hen we pass a patient on to our physicians for him to see, we give them the measurements and the findings of what we found on the ultrasound, and he looks at that while he's in the room with the patient while he's talking to the patient…. He's interpreting it right then and there. His interpretation doesn't necessarily happen when he signs in the computer in MedStreaming."); Transcript at 534 (Dr. Macris: "When we see the patient we are in Allscripts. We are talking about our encounter with a patient. We are writing down why we are doing what we are doing. We look at the study. We talk to the patients. We evaluate the study. We are doing our professional responsibility to look at these studies. That's in Allscripts.").

579 U.S. at 181 (emphasis added).[2] If the defendant does not know that a misrepresentation is significant enough to induce government action, then the "punitive" penalties set forth in the statute should not be imposed. *Id.*; *see id.* at 182 ("essentially punitive in nature") (quoting *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784 (2000)).

There is nothing novel about this element. The False Claims Act incorporates "all other elements of common-law fraud that are consistent with the statutory text." *Escobar*, 579 U.S. at 187 n.2. The Court need look no further than the Restatement (Second) of Torts, which the Supreme Court has embraced as "the most widely accepted distillation of the common law of torts." *Field v. Mans*, 516 U.S. 59, 70 (1995). *Cf. Schutte*, 143 S. Ct. at 1400-01 (citing the Restatement (Second) of Torts for the "common law"). Under the Restatement, mere knowledge of falsity is not enough to establish fraud; rather, there must also be an "**expectation of influencing the other's conduct by the misrepresentation**." Restatement (Second) of Torts § 526 cmt. a (1976) (emphasis added).

For example, this Court addressed the common law of fraud earlier this year in *Hueseman*. The common law requires both "knowledge of [the statement's] falsity" and "**intent to deceive**." *See United States ex rel. Hueseman v. Prof'l Compounding Centers of Am., Inc.*, No. SA-14-CV-00212-XR, 2023 WL 2669879 at *22 (W.D. Tex. Mar. 27, 2023) (emphasis added). In other words, at a minimum, the defendant must know that the falsehood will induce reliance.

---

[2] *See also United States ex rel. Jehl v. GGNSC Southaven, L.L.C.*, No. 22-60209, 2022 WL 17443684, at *3 (5th Cir. Dec. 6, 2022) (quoting *Escobar*: "What matters is not the label that the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant **knows is material** to the Government's payment decision.") (emphasis added); *United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-CV-0920-B, 2022 WL 976161, at *21 (N.D. Tex. Mar. 31, 2022) (examining whether plaintiff had adequately pleaded a violation that the "*defendant knows* is material"); *Waldmann v. Fulp*, 259 F. Supp. 3d 579 (S.D. Tex. 2016) (quoting *Escobar*: "knows is material").

Sitting en banc, the Fifth Circuit has made the same point. *In re Mercer*, 246 F.3d 391, 410 (5th Cir. 2001) (en banc) (distinguishing "whether a representation is fraudulently made" with the "maker's purpose to induce the recipient to act in reliance upon the misrepresentation"). This common-law rule carries over into the False Claims Act. *Escobar*, 579 U.S. at 181 ("knows is material").

Perhaps Relators will respond that the definition of "knowing" and "knowingly" does not require "proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). But as the Supreme Court has explained, this definition merely disclaims "specific intent with regard to the truth or falsity of the 'information'"; it does not refer to "a defendant's purpose in making" that misstatement. *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 n.2 (2008). As *Escobar* confirms, knowledge of materiality is required.

### B. *Schutte:* Scienter (which was adjudicated by way of partial summary judgment) is different.

This Court's partial summary judgment order adjudicated the element of scienter—*i.e.*, knowledge of falsity.[3] The order did not adjudicate knowledge of materiality (indeed, Relators' motion did not even mention this requirement). As the Restatement confirms, the term "scienter" captures only the first half of the equation:

> The word "fraudulent" is here used as referring solely to the maker's knowledge of the untrue character of his representation. This element of the defendant's conduct frequently is called **"scienter"** by the courts. **Intent and expectation of influencing the other's conduct by the misrepresentation are … a <u>separate and distinct element</u> necessary to liability**….

Restatement (Section) of Torts § 526 cmt. a (1977) (emphasis added).

[3] ECF 123 at 48 ("The FCA defines 'knowingly' as not only 'actual knowledge' of information, but also 'deliberate ignorance' or 'reckless disregard of **the truth or falsity** of the information'…."); *id.*at 49 ("reckless disregard to the **truth or falsity** of their statements"); *id.* at 52 ("Relators must prove that PVA acted with at least 'deliberate ignorance' or 'reckless disregard' of **the truth or falsity** of the information that it submitted to Medicare."); *id.* at 53 ("At the very least, PVA acted with 'deliberate ignorance' or 'reckless disregard of the **truth or falsity** of the information' it was providing to Medicare.").

This accords with the Supreme Court's recent teachings in *Schutte* regarding "scienter." 143 S. Ct. at 1404 ("For scienter, it is enough if respondents believed that their claims were not accurate."). That decision focused entirely on the proper standard for proving a defendant's state of mind as to falsity. Knowledge of materiality is a separate element.

As the Fifth Circuit explained in *Mercer*, "the Restatement treats the elements separately." 246 F.3d at 410 (distinguishing between knowledge of falsity and intent to deceive). Although this Court granted summary judgment on "scienter," that ruling did not implicitly adjudicate knowledge of materiality. Rather, it is an essential element that should be adjudicated based on the evidence that was presented at trial.

### C. Pursuant to Federal Rule of Civil Procedure 49(a)(3), this Court should make a finding of fact regarding this omitted element.

Throughout the case, PVA has consistently emphasized Relators' failure to prove that PVA "knowingly violated a requirement that [PVA] **knows is material**." *Escobar*, 579 U.S. at 181 (emphasis added).[4] Although Relators did not raise the element at the charge conference, that does not make the element disappear. Under Civil Procedure Rule 49(a)(3), this simply means that Relators impliedly consented to a bench trial on this element.

The element itself is still essential:

> A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. **If the party does not demand submission, the court may make a finding on the issue.** If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

Fed. R. Civ. P. 49(a)(3) (emphasis added). Before signing a judgment imposing crushing penalties, this Court should first make findings on this essential element.

---

[4] *See* ECF 112 at 19 (summary-judgment response); ECF 196 at 4 (Rule 50(a) Motion for Judgment as a Matter of Law); ECF 197 at 4 (Second Rule 50(a) Motion for Judgment as a Matter of Law); ECF 208 at 4 (Rule 50(b) Renewed Motion for Judgment as a Matter of Law).

Historically, the procedure set forth in Federal Rule 49(a)(3) was derived, in part, from the preexisting Texas procedure regarding omitted findings.[5] "In the absence of a demand by the parties that an issue be submitted, and if such issue is omitted, [Rule 49(a)(3)] allows the Court to make its own findings on the omitted issue." *Raicevic v. Fieldwood Energy, L.L.C.*, 979 F.3d 1027, 1034 (5th Cir. 2020) (quoting *Taherzadeh v. Clements*, 781 F.2d 1093, 1100 (5th Cir. 2020)). This Court's role is not to guess what the jury would have done (for Relators waived any right to have the jury resolve this particular question). Rather, it is "within the discretion of the trial court to resolve" this omitted element. *Kelly v. City of Leesville*, 897 F.2d 172, 177 (5th Cir. 1990).

Because trial was over a year ago, the Court deserves a brief summary of the key evidence. Despite PVA's warnings before trial,[6] during trial,[7] and after trial,[8] Relators never attempted to prove this element. There is no evidence (let alone a preponderance of the evidence) that PVA acted with knowledge of the materiality of when PVA's physicians reviewed and signed the MedStreaming reports—which were largely duplicative of the reports in Allscripts CM that PVA's providers had already interpreted before Medicare was billed.

---

[5] 1 Fed. Jury Prac. & Instr. § 8:2 (6th ed.) ("Rule 49(a) … was based in large part upon the experience of three states—North Carolina, Wisconsin and Texas….").

[6] ECF 112 at 19 (MSJ response: "Relators cannot prove PVA 'knowingly violated a requirement that [PVA] **knows is material** to the government's payment decision.'") (emphasis added).

[7] ECF 196 at 4 (Rule 50(a) Motion: "Relators have failed to prove that PVA 'knowingly violated a requirement that [PVA] **knows is material** to the Government's payment decision.'") (emphasis added); ECF 197 at 4 (Second Rule 50(a) Motion: "Relators have failed to prove that PVA 'knowingly violated a requirement that [PVA] **knows is material** ….'") (emphasis added).

[8] ECF 208 at 4 (Rule 50(b) Motion: "Relators failed to prove that PVA 'knowingly violated a requirement that [PVA] **knows is material** ….'") (emphasis added).

***Allscripts CM vs. MedStreaming.*** PVA's witnesses explained that the providers review and interpret vascular ultrasounds shortly after they are performed, saving the interpretation in the patient's medical record (*i.e.*, the Allscripts Clinical Manager system).[9] The contents would later be moved into MedStreaming to create a separate stand-alone report:

> [W]e have Allscripts, which is where we document the patient encounter and our findings and our plans. Allscripts is an electronic medical record. We have MedStreaming, a different software where we eventually put together the easy-to-read picture associated [with] vascular lab findings. When we see the patient we are in Allscripts. We are talking about our encounter with a patient. We are writing down why we are doing what we are doing. We look at the study. We talk to the patients. We evaluate the study. We are doing our professional responsibility to look at these studies. That's in Allscripts. Eventually it's in MedStreaming.[10]

PVA's witnesses denied that the MedStreaming report was material to Medicare.[11] Where is the evidence that PVA knew the opposite to be true? At trial, this Court noted that "the issue of materiality gets awfully close."[12] But there is even less (if any) evidence that PVA knew that the signatures in MedStreaming were material to the government.

***Pre-2017 vs. post-2017.*** Perhaps Relators will point to PVA's "Compliance Billing" project in 2017, when PVA considered changing its workflow to require that reports be completed in MedStreaming before billing for the procedure.[13] But a PVA witness denied knowing that this

---

[9] Transcript at 536 (Dr. Macris: "the interpretation of the study is in Allscripts").

[10] Transcript at 534 (Dr. Macris); *see also* Transcript at 333 (Dr. Alsabrook: "Then back in the room I discuss what the vascular laboratories tests showed by me either independently reviewing the test with them at that time, or potentially seeing it on the computer monitor of the technologist performing the test at that time. And then I give them the interpretation plan at that time before they leave my office.").

[11] *E.g.*, Transcript at 312 (Dr. Alsabrook: Q. "would you agree with me that it is not proper to bill Medicare, and Medicare will not pay for a vascular diagnostic study, until a physician has completed a final report reflecting their full interpretation?" A. "I would disagree with that statement, sir.").

[12] Transcript at 660.

[13] *E.g.*, Transcript at 133, 144.

concerned the requirements of any particular payor (*e.g.*, Medicare vs. private payors).[14] Moreover, even if this project somehow gave rise to an inference that PVA knew that signatures in MedStreaming were material to Medicare in 2017, it sheds no light on PVA's state of mind beforehand.

This timeline is significant, for Relators' expert (Dr. Nye) testified that a significant number of the purportedly false claims took place **before** 2017.[15] Without evidence of what PVA knew at the time that the claims were made, Relators cannot recover damages or penalties for the claims that predate 2017. As *Schutte* confirms, "the focus is … on what the defendant knew when presenting the claim." 143 S. Ct. at 1401 ("the focus is not … on *post hoc* interpretations").

***Other facts.*** PVA's witnesses explained that there are indeed times where a "provider is allowed to bill for those [services] at the time of the procedure and receive compensation for the post-care based on when the procedure is performed."[16] Medicare "definitely pays forward."[17] Even if those facts do not hold true in the context of vascular ultrasounds, Relators have not demonstrated that PVA knew of this fact. Indeed, even after the government met with PVA in 2018, it never "sanctioned or reprimanded PVA in any way related to its billing."[18]

---

[14] *E.g.*, Transcript at 143 (Barbara Burrow: "not my area.").

[15] *E.g.*, Transcript at 472; *see* Transcript at 473 (Relator's counsel: "[T]his is the important part for our case, it shows that the percentage of false claims is consistently high until the 2017 compliance project was put into place.").

[16] Transcript at 598 (Melissa Scott).

[17] Transcript at 541 (Dr. Macris); *see id.* at 531 ("Nobody pays attention to when you sign the report. There's no Medicare rule for that.").

[18] Transcript at 632 (Katherine Britt).

* * *

With respect to knowledge of materiality, this Court sits as factfinder and may make any finding that is supported by the trial evidence—including one that is contrary to Relators' case. If the Court is not persuaded by the Relators' trial evidence with respect to PVA's knowledge of materiality, then the Relators should take nothing. If the Court finds that PVA acquired this knowledge sometime during the damages period, then (at the least) the damages and penalty awards should be reduced accordingly.

Alternatively, if the Court is persuaded by the Relators' trial evidence, then PVA intends to challenge the legal sufficiency of the evidence supporting such a finding. *See* Fed. R. Civ. P. 52(a)(5) ("A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings…."). Relators never attempted to satisfy this element. No evidence supports it.

## Conclusion

Before this Court enters judgment awarding $21+ million in statutory penalties, this Court should first make finding(s) of fact regarding whether—**or not**—PVA acted with knowledge that its purported misrepresentations were material to the government's payment decision. *See* Fed. R. Civ. P. 49(a)(3). If the Court finds that PVA had such knowledge, then the Court should also make a finding regarding when PVA acquired that knowledge. *See id.*

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
E-mail: dprichard@prichardyoungllp.com
David R. Montpas
State Bar No. 00794324
E-mail: dmontpas@prichardyoungllp.com
Glenn W. MacTaggart
State Bar No. 12787680
E-mail: gmactaggart@prichardyoungllp.com

Prichard Young, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

Sean McKenna
State Bar No. 24007652
smckenna@spencerfane.com
Mark A. Cole
*Admitted Pro Hac Vice*
mcole@spencerfane.com
Lauren M. Nelson
State Bar No. 24058016
lnelson@spencerfane.com
SPENCER FANE LLP
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
Telephone: 214-459-5890
Facsimile: 214-750-3612

Jeff Wurzburg
State Bar No. 24105140
jeff.wurzburg@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone: 210-224-5575
Facsimile: 210-270-7205

*Counsel for Defendant*

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with opposing counsel regarding this motion, and counsel advises that Relators oppose the motion.

*/s/ David M. Prichard*
David M. Prichard

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June 2023, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ David Prichard*
David Prichard