IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., TIFFANY MONTCRIEFF, et al., | § | |
| Relators, Plaintiff, | § | |
| v. | § | Civil Action No. 5:17-CV-00317-XR |
| PERIPHERAL VASCULAR ASSOCIATES, P.A., | § | |
| Defendant. | § | |

**PERIPHERAL VASCULAR ASSOCIATES, P.A.'S**
**MOTION TO RECONSIDER PARTIAL SUMMARY JUDGMENT ON SCIENTER**

TO UNITED STATES DISTRICT JUDGE XAVIER RODRIGUEZ:

Defendant Peripheral Vascular Associates, P.A. ("PVA") respectfully moves that the Court reconsider its granting of partial summary judgment on the issue of scienter (ECF No. 123) in light of the recent decision in *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391 (2023).

## ARGUMENT

The Supreme Court's landmark decision in *Schutte* will almost certainly play a prominent role in any appeal, and so this Court deserves an opportunity to consider its impact in the first instance. Under Federal Rule of Civil Procedure 54(b), this Court may revisit its prior partial summary judgment order at any time before entry of judgment:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … **may be revised at any time before the entry of a judgment** adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added); *see Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 726-27 (5th Cir. 2012) (applying the plain text of Rule 54(b)). Based on *Schutte*, the Court should revise its partial summary judgment ruling here.

## I. Under *Schutte*, the partial summary judgment on scienter is improper.

Two teachings in *Schutte* justify reconsideration. The first teaching confirms that summary judgment was improper as to the claims that PVA submitted to Medicare before 2017. The second teaching demonstrates that summary judgment was improper as to the claims submitted thereafter.

### A. <u>No retroactive scienter</u>: The 2017 "compliance billing" email and notes do not conclusively establish PVA's state of mind in 2014, 2015, or 2016.

First, *Schutte* teaches that scienter turns on "what the defendant thought when submitting the false claim—not what the defendant may have thought *after* submitting it." 143 S. Ct. at 1401. This flows squarely from the text of the statute:

> As noted above, the text encompasses those who "knowingly presen[t] ... a false or fraudulent claim"; the term "knowingly" thus modifies present-tense verbs like "presents." § 3729(a)(1)(A). As such, the focus is not, as respondents would have it, on *post hoc* interpretations that might have rendered their claims accurate. **It is instead on what the defendant knew when presenting the claim.**

*Id.* (emphasis added; alterations in original). This rule from *Schutte* repudiates Relators' pre-*Schutte* summary-judgment arguments.

Relators have sought damages and penalties for numerous claims that PVA submitted in 2014, 2015, 2016, and early 2017. Yet the factual bulwark of Relators' motion was PVA's state of mind in 2017. Here is an excerpt from Relators' summary-judgment briefing. ECF 95 at 12.

> **1. In 2017, PVA recognized that is practices were noncompliant, but continued them anyway.**
>
> As described above, it was PVA's standard practice to trigger its billing process as soon as the vascular study was conducted on the patient by the technologist, and to bill on a "global" basis, irrespective of whether a PVA physician had completed a written report, or even looked at the results. *See* Ex. 2 (Burrow Dep. Tr.) at 110:10-23; App. No. 45. Because PVA's physicians did not timely review the studies and complete written reports, this inevitably led to billing Medicare and other payors for services that had not been rendered. PVA knew this was occurring, and in 2017, finally decided to do something about it. App. Nos. 16, 46, 47, 79. The 2017 compliance project, and documents surrounding it, show that PVA knew that is practices were not compliant.

The same evidence from 2017 was also front and center in this Court's partial summary judgment order. *See, e.g.*, ECF No. 123 at 49 ("In 2017, PVA embarked on a 'compliance project'"); *id.* ("On February 8, 2017, PVA's Vascular Lab Committee identified three motives for its 'transition to billing after studies are read.'"); *id.* ("April 5, 2017 PVA Vascular Lab Committee meeting …."); *id.* at 53 ("2017").

As the Court's order recognized, "most of the evidence comes from PVA's own Technical Director and member of the Vascular Lab Committee, Barbara Burrow." *Id.* at 52. But as the Court's order also confirms, Burrow denied that PVA had always had the same state of mind. The alteration in the following quotation is original to this Court's summary-judgment order:

> Finally, Relators cite portions of Burrow's deposition, in which she says that her "understanding is that for a time we thought that we needed to have the study interpreted before it was billed … **before [2016] we were not in the understanding that we had to have a report completed in Medstreaming to bill for it.**" ECF No. 95 Ex. 2, Burrow Dep. Tr. At 143:21-144:14.

ECF No. 123 at 50 (emphasis added; alteration in original). But under *Schutte*, PVA's state of mind in 2017 does not conclusively establish its state of mind beforehand.

In their summary judgment motion, Relators emphasized only two pieces of pre-2017 evidence regarding scienter. ECF 95 at 13-14 (citing Relators' MSJ Exs. 12 & 14). One exhibit is an email where Burrow generically wrote (without even referencing Medicare's requirements) that certain studies "were not actually interpreted and cannot be billed until they are." ECF 95 at 13-14 (citing Ex. 14); *see* ECF 96 at Ex. 14. But even this goes only to the need for a physician to do the work of **interpreting** the report prior to submission of a claim to Medicare; it does not support Relators' theory that PVA was aware of Medicare's supposed paperwork requirement of a signed stand-alone report prior to the submission of a claim to Medicare.

In the other exhibit, Burrow warned one of the physicians that although "62 reports in focus [are] ready for your signature," only "[o]ne is being held for billing awaiting the **complete** report." *See* ECF 95 at 14 (citing Ex. 12) (emphasis added); ECF 96 at Ex. 12. Tellingly, Burrow was holding only the incomplete report for billing—not necessarily the unsigned reports.

*Schutte* highlights that there is no conclusive evidence in the record as to PVA's state of mind prior to the 2017 compliance billing email and notes. Indeed, there is no evidence at all that before 2017, PVA knew that signed stand-alone reports were somehow required. Following *Schutte*, this Court would be justified in revisiting PVA's motion for summary judgment (ECF 94), ruling as a matter of law that Relators take nothing for pre-2017 claims. At the least, the Court should hold that fact issues exist. The partial summary judgment on scienter should be rescinded as to claims that predate the 2017 compliance billing email.

**B. <u>Conscious awareness</u>: Under *Schutte*, the analysis should have turned on whether PVA was conscious that its claims were false or that there was a substantial risk of falsehood.**

Nor is there conclusive evidence of PVA's state of mind in 2017 or thereafter. The 2017 "compliance billing" email and notes did not identify **Medicare** (or any specific payor) as requiring a signed stand-alone report.[1] PVA's witnesses did not know the exact reason for the 2017 change.[2]

---

[1] ECF 97 at Ex. 32 (2017 email attaching notes referring to "Compliance billing").

[2] ECF 96 at Ex. 2 (Barbara Burrow depo at 114:18: "I don't remember."); Ex. 3 (John Gilpin depo at 66:25-67:4 ("Q. Okay. Do you know what compliance billing is that's referred in that language?" "A. No. Not directly"); Ex. 5 (Dr. Fiala depo at 71:25-72:8, 83:9-16: "Q. And do you know why these changes were considered or discussed at PVA at the vascular lab committee?" "A. No."; "Q…. What does the term 'compliance billing' mean?" "A. I do not know.").

Indeed, PVA's witnesses consistently denied that a signed MedStreaming report was required.[3] There is no conclusive evidence that PVA's witnesses were lying and knew the opposite to be true. This is confirmed by the definitions of "knowledge," "deliberate indifference," and "reckless disregard" that are set forth in *Schutte*:

- "First, the term 'actual knowledge' refers to whether a person is '**aware of' information**." *Schutte*, 143 S. Ct. at 1400 (emphasis added).
- "Second, the term 'deliberate ignorance' encompasses defendants who are **aware of a substantial risk** that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity." *Id.* (emphasis added).
- "And, third, the term 'reckless disregard' similarly captures defendants who are **conscious of a substantial and unjustifiable risk** that their claims are false, but submit the claims anyway." *Id.* at 1400-01 (emphasis added).

Under *Schutte*, even deliberate ignorance and recklessness require a conscious awareness of a risk, which was not in the record before this Court at the time of the partial summary judgment order, or any time thereafter.

Relators did not attempt to meet this standard. Nor did this Court's summary-judgment order employ the rubric set forth in *Schutte*. Rather, the Court's order stated that PVA's compliance billing email "**strongly suggests** that PVA knew its practices skirted the lines of

[3] ECF 96 at Ex. 2 (Barbara Burrow depo at 114:25-115:10: "The guidance we have now says to bill on the date of service for the technical component. We're now required to have a completed report to be signed and read before it is billed, but our completed report is when the physician has reviewed it in his note…. So if you were simply talking about the MedStreaming report, then, no, this would not increase our compliance."); Ex. 3 (John Gilpin depo at 49:4-10: "Q. Do you believe that these changes were made to be more compliant with billing guidelines?" "A. No. Again, I stated earlier I think it was more for just operating more efficiently."); *see* ECF 96 at Ex. 1 (Dr. Alsabrook depo at 51:17-20: "I'm unaware of the subtle distinction between – under the first sentence in terms of the word 'separately' as an apposition to what they're not saying"); Ex. 5 (Dr. Fiala depo at 47:11-19: "Q. So would you agree with me in saying that physicians cannot bill for the interpretation of a scan and additionally bill for the E&M visit unless the interpretation includes a finalized documented standalone report?" "A. It says that here. I am not -- I do not know."); Ex. 10 (Brian Hembling depo at 60:9-12: "At some point we got guidance that it would be any time after the technical component was completed before the professional component was completed….").

compliance." ECF 123 at 53 (emphasis added). But summary judgment should be based on conclusive evidence—not mere suggestions. The Court further held that "[a]t the very least, PVA acted with 'deliberate ignorance' or 'reckless disregard of the truth or falsity of the information' it was providing to Medicare.'" *Id.* But there is no conclusive evidence that PVA was "aware of a substantial risk" or "conscious of a substantial and unjustifiable risk" that its approach was wrong. As already discussed, PVA's witnesses testified to the opposite.

Perhaps Relators will respond by attacking the credibility of PVA's witnesses. But as this Court noted when ruling on PVA's Rule 50(b) motion, "[c]redibility determinations … are jury functions, not those of a judge." ECF 221 (Order Dated Jan. 9, 2023 at 6) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The same rule applies at the summary judgment stage. Therefore, the partial summary judgment on scienter should also be rescinded as to claims that postdate the 2017 compliance billing email and notes.

## CONCLUSION

This Court should vacate its partial summary judgment order on scienter. With respect to claims that were submitted prior to the 2017 "compliance billing" email and notes, the Court should go even further—granting PVA's motion for summary judgment and holding that these earlier claims fail as a matter of law.

Respectfully submitted,

*/s/ David M. Prichard*

David M. Prichard
State Bar No. 16317900
E-mail: dprichard@prichardyoungllp.com
David R. Montpas
State Bar No. 00794324
E-mail: dmontpas@prichardyoungllp.com
Glenn W. MacTaggart
State Bar No. 12787680
E-mail: gmactaggart@prichardyoungllp.com
PRICHARD YOUNG, LLP

Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

Sean McKenna
State Bar No. 24007652
smckenna@spencerfane.com
Mark A. Cole
*Admitted Pro Hac Vice*
mcole@spencerfane.com
Lauren M. Nelson
State Bar No. 24058016
lnelson@spencerfane.com
SPENCER FANE LLP
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
Telephone: 214-459-5890
Facsimile: 214-750-3612

Jeff Wurzburg
State Bar No. 24105140
jeff.wurzburg@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone: 210-224-5575
Facsimile: 210-270-7205

***Counsel for Defendant Peripheral Vascular Associates, P.A.***

## CERTIFICATE OF SERVICE

I certify that on the **10th** day of **July 2023,** I submitted the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, using the electronic case files system of the Court. I hereby certify that I have served all counsel of record in the manner authorized by Federal Rule of Civil Procedure 5(b)(2):

*/s/ David Prichard*
David Prichard