IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., TIFFANY MONTCRIEFF, et al., | § | |
| | § | |
| Relators, Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:17-CV-00317-XR |
| | § | |
| PERIPHERAL VASCULAR ASSOCIATES, P.A., | § | |
| | § | |
| Defendant. | § | |

**PERIPHERAL VASCULAR ASSOCIATES, P.A.'S**
**REPLY IN SUPPORT OF MOTION FOR NEW TRIAL**

TO UNITED STATES DISTRICT JUDGE XAVIER RODRIGUEZ:

Defendant Peripheral Vascular Associates, P.A. ("PVA") respectfully files this reply in support of its new trial motion. *See* ECF No. 247 (new trial motion); ECF No. 249 (response).

**INTRODUCTION**

As a preliminary matter, the Court deserves a brief update regarding developments in the law. On the same day that PVA filed its motion for a new trial, the Ninth Circuit issued an opinion that carefully explains why PVA is right. *See Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, Nos. 21-56276, 21-56288, 2023 WL 5025265, at *7 (9th Cir. Aug. 8, 2023).[1]

---

[1] Meanwhile, the Fifth Circuit recently addressed whether legally sufficient evidence supported jury findings on materiality and scienter. *United States ex rel. Aldridge v. Corporate Mgmt., Inc.*, Nos. 21-60568, 22-60145, 2023 WL 5343778 (5th Cir. Aug. 21, 2023). Of course, PVA's new trial motion does not implicate materiality. As for scienter, the *Aldridge* decision involved the standard for reviewing a jury finding, whereas PVA's new trial motion involves whether—or not—scienter was established as a matter of law.

*Hendrix* collects cases (including a Fifth Circuit decision) confirming that for purposes of tallying the number of false claims, the law counts the number of batched submissions to the government, not the number of items (*e.g.*, patient visits) covered by a single submission:

> The Supreme Court has held that collusive bidding on fifty-six projects gave rise to only fifty-six FCA penalties, not one "for every form submitted by respondents in the course of their enterprise." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 552, 63 S.Ct. 379, 87 L.Ed. 443 (1943), *superseded by statute on other grounds*, Act of Dec. 23, 1943, 57 Stat. 609. Our cases are in accord. *See United States v. Woodbury*, 359 F.2d 370, 378 (9th Cir. 1966) (holding that documents attached to applications for funds do not give rise to separate penalties); *United States v. Nat'l Wholesalers*, 236 F.2d 944, 950 (9th Cir. 1956) (holding that when seventeen invoices were attached to ten vouchers for payment, "the number of claims should be computed on the number of vouchers rather than the number of invoices").
>
> Similarly, when determining penalties for false claims associated with goods, courts applying the federal FCA have awarded penalties based on the number of contracts or invoices but not on each good. *See, e.g.*, *United States v. Bornstein*, 423 U.S. 303, 311-13, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976) (awarding three penalties for three separately invoiced shipments rather than a penalty for each falsely marked tube); *see also United States v. Aerodex, Inc.*, 469 F.2d 1003, 1011 (5th Cir. 1972) (awarding a penalty for each of three invoices but not for each of the mislabeled bearings). The district court thus did not err in declining to award a statutory penalty for the stamp on each piece of pipe.

*Id.* at *7 (footnote omitted; paragraph break added).

Here, Relators' expert (Dr. Nye) calculated the number of unique patient visits—not the number of false claims (*i.e.*, the number of batched submissions to Medicare). Dr. Nye's tally of patient visits is neither reliable nor relevant. It should have been excluded, and Relators do not argue otherwise. Their only argument is that the charge conference somehow waived PVA's distinct admissibility point. As set forth below (*infra* Part III.B), Relators' argument is incorrect.

## ARGUMENT

Aside from the legal developments set forth in the Introduction, this reply follows the same structure as PVA's new trial motion: (a) damages, (b) scienter, and (c) number of false claims. Although Relators oppose a new trial, their response proves why one is needed.

Relators do not seriously deny that PVA is the sole provider of critical medical services in many South Texas communities—all the way to the border. *See* Relators' Response at 2 n.1 (addressing the "San Antonio region" instead). Nor do Relators deny that an adverse judgment will have immediate and irreversible consequences. It would accelerate attrition among PVA's physicians, reducing local access in medically underserved areas. If those communities are to suffer the consequences of an adverse judgment, it should be the result of a trial that was free of the shortcuts that Relators have taken.

**I. <u>Damages</u>: A remittitur cannot be based on post-trial evidence.**

Relators did not present an interest-based damages model at trial, and so they suggest that this Court can cure the problem by suggesting a remittitur. In the process, Relators overlook a crucial rule of law: "the verdict must be reduced to the maximum amount **the <u>jury</u> could properly have awarded.**" *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983) (emphasis added); *see Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003) (similar).

Relators do not even attempt to identify trial evidence that could support any interest-based damages. At trial, Dr. Nye explained that he relied on "statistical software called SAS" to analyze the data and "slice it and dice it." Transcript (2/14/22) at 458:15-459:1. After trial, Dr. Nye had to go back and recreate an interest-based model based on an analysis that is not in the trial record. *See* ECF No. 222-3 (Dr. Nye's post-trial affidavit). When Relators submitted their new post-trial damages model, they did not ground it in the trial evidence. ECF No. 222 at 5 (Joint Advisory Re: Proposed Models for Interest-Based Damages). Instead, they confessed that Dr. Nye had to go back to the drawing board to come up with interest-based damages. *Id.* (image below).

**B. Dr. Nye's calculation of Interest-Based Damages yields $1.46 million in Single Damages.**

As detailed in the accompanying Declaration, Dr. Nye was able to easily calculate interest-based damages in accordance with the Court's direction using PVA's datasets on which all of his prior work was based. Specifically, the data Dr. Nye previously analyzed from PVA's Medstreaming system includes fields for (among others): transaction type (*e.g.*, charge, payment, adjustment, or refund); transaction amount; and posting date. Dr. Nye and his team already processed and utilized these same data fields for a variety of calculations underlying his three expert reports and various schedules in this matter.

As this Court's January 9, 2023 Order explains, "the Court has insufficient information from which to calculate damages at this time." ECF No. 221 at 25. Without trial evidence of interest-based damages, even a remittitur is out of bounds.

**II. Scienter: Relators apply the wrong summary judgment standard.**

Relators do not even attempt to argue that their summary-judgment evidence regarding scienter was conclusive. Instead, they insist that "PVA failed to rebut ample evidence of scienter both pre- and post-2017." Relators' Response at 4. Of course, having "ample" evidence may be enough to go to trial—but it is not enough to avoid one.

PVA respectfully asks this Court to apply the same standard that the Court applied in *Amadasun v. Datasearch, Inc.*:

> Thus, summary judgment based on questions of fact (as opposed to pure questions of law) requires that the movant submit evidence showing the fact **conclusively**.
>
> Plaintiff bears the burden of proof on the various causes of action he asserts, and thus to obtain summary judgment, he must prove with **conclusive evidence** that Defendant has violated the FDCPA.

No. SA-19-CV-01130-XR, 2020 WL 4718053, at *1 (W.D. Tex. April 7, 2020) (emphasis added).

As set forth in PVA's motion to reconsider, Relators' summary-judgment evidence falls far short of being conclusive; indeed, abundant evidence points in PVA's favor. ECF No. 234 at

3-5 (motion to reconsider). PVA will not burden the Court by detailing the facts or the legal standard again here. The key point is that Relators have never even attempted to meet their burden.

## III. Number of false claims: The expert opinion that Relators offered should have been excluded.

On the merits, Relators have no answer to PVA's admissibility challenge to Dr. Nye's expert opinion. Instead, Relators look to a demonstrative exhibit, closing arguments, and the jury charge to fill the gaps in Dr. Nye's analysis. *See* Relators' Response at 5-8.

Those developments, however, cannot cure the flaws that PVA raised in advance at the admissibility stage. ECF No. 86 (motion to exclude Dr. Nye); ECF No. 103 (reply in support of motion to exclude); ECF No. 123 at 26-30 (ruling on motion to exclude); *see Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 198 (5th Cir. 2016) (motion to exclude preserved challenge to expert testimony). Two distinct shortcuts in Dr. Nye's opinion confirm that a new trial is proper.

### A. Dr. Nye never identified the number of double-billing claims submitted to Medicare Part B.

First, before trial, PVA sought to exclude Dr. Nye's opinion as irrelevant and unreliable because "he wasn't asked to isolate sources of payment." ECF No. 96 at 7. The same flaw plagues Dr. Nye's trial testimony. He never identified the number of double-billing claims that were submitted to Medicare Part B. Relators have no answer—other than to cite (1) a demonstrative exhibit that was never admitted into evidence and (2) their counsel's jury argument regarding the number of double-billing claims that were submitted to Medicare Part B. *See* Response at 5-7.

But as this Court noted at trial, "demonstrative exhibits" are not substantive evidence: "that's not evidence." Transcript (2/15/22) at 703:20-21. And as Relators confess: "On the stand, however, Dr. Nye did **not** break down the 25,072 unique patient visit count for the double-billing tranche by each federal payor…." Relators' Response at 6 (emphasis added). Dr. Nye's global

number is irrelevant. It is an unreliable indicator of the number of claims that were submitted to Medicare Part B. It should have been excluded.

Curiously, Relators assert that their counsel was able to calculate the number of double-billing claims during closing argument. *See* Relators' Response at 6-7 (citing Transcript at 750:15-17). Relators use numbers such as "45,452 total studies," "20,422 unique patient visits," and "average of 1.8 studies per visit." But Dr. Nye did not testify to those figures either. They have no support. Relators also cite numbers regarding the testing-only tranche, but those do not prop up Dr. Nye's separate opinion regarding the number of double-billing claims.

As exposed by PVA's motion to exclude, Dr. Nye's global number is irrelevant and unreliable. It should have been excluded. Because no other evidence is left that might go to the number of double-billing claims, a new trial is necessary. *See Echeverry v. Jazz Casino Co.*, 988 F.3d 221, 235 (5th Cir. 2021) ("For example, a party's substantial rights are affected if the erroneously admitted evidence was the only evidence admitted to prove an element.").

**B. Admissibility complaints do not have to be reurged at the charge conference.**

Second, as *Hendrix* demonstrates, Dr. Nye's opinion regarding the number of patient visits (for both the testing-only and the double-billing tranches) is irrelevant and unreliable; it does not address the issue before the jury—namely, the number of false claims. *See Hendrix*, 2023 WL 5025265, at *7 (collecting authorities). Relators do not deny that a single Medicare submission could batch together multiple patient visits, and that such a submission would constitute just one "claim" for purposes of the False Claims Act. Relators do not even attempt to defend Dr. Nye's testimony on the merits.

Instead, Relators change the subject to the jury instructions. *See* Relators' Response at 7-8. But Relators cite no authority for the notion that jury instructions can moot a *Daubert* challenge. The rules governing (a) admissibility and (b) jury instructions prove Relators wrong.

Regarding admissibility, a "pre-trial objection is sufficient to preserve the error for appellate review." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). There is no need to reurge an evidentiary objection or a *Daubert* challenge at the charge conference. For example, an expert's opinion must be reliable, which turns on "whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). Similarly, relevance depends on "whether [that] reasoning or methodology properly can be applied to **the facts** in issue." *Id.* (emphasis added). Relevance depends on the link between the expert's opinion and "the facts"—not the link between the expert opinion and the jury instructions.

Regarding the jury instructions, it is black-letter law that unobjected-to jury instructions do not even become law of the case for purposes of evaluating whether a motion for judgment as a matter of law should have been granted.[2] Technically, this is because such a motion should have been presented originally **before** the jury instructions were submitted. In the same way, admissibility rulings are made long before jury instructions are finalized. These are separate inquiries.

There is no "estoppel." *See* Relators' Response at 2 ("estopped"). After the Court rejected PVA's *Daubert* challenge and allowed Dr. Nye to testify to the number of unique patient visits, it is not surprising that everyone expected the jury charge to track the Court's prior rulings. There is no need to reurge admissibility rulings at the charge conference. *See Mathis*, 302 F.3d at 459 (holding that a pretrial admissibility ruling is sufficient).

---

[2] *Boyle v. United Techs. Corp.*, 487 U.S. 500, 513-14 (1988) (explaining that judgment as a matter of law is proper even if the losing party "failed to object to jury instructions that expressed the [theory] differently, and in a fashion that would support a verdict"); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 284 n.5 (5th Cir. 1999) ("Needless to say, failure to request a jury instruction does not preclude a later JMOL.").

Regardless, Relators' depiction of the charge conference is incomplete. At the end of the charge conference, PVA reurged its own proposed jury instructions, which would have required the jury to count the number of claims (as opposed to patient visits). Transcript (2/15/22) at 716:1-12; *see* ECF No. 163-6 at 7, 14 (PVA's proposed instructions regarding "Claim" and "Number of False Claims"). This Court considered and ruled on PVA's objection. Transcript at 716:1-12.

In summary, Relators neither defend Dr. Nye's opinion on the merits nor cite authority for their novel estoppel theory. His opinion should have been excluded as irrelevant and unreliable. It is also the only evidence that might go to the number of false claims. Because it should have been excluded, a new trial is proper. *See Echeverry*, 988 F.3d at 235.

**CONCLUSION AND PRAYER**

Relators lack trial evidence to support even a remitted damages award. Relators do not even attempt to conclusively demonstrate scienter (as would be needed to support a summary judgment). And Relators do not defend the admissibility of Dr. Nye's opinion on the merits. These gaping holes cry out for a new trial.

PVA's patients should not be forced to suffer the consequences of Relators' shortcuts. It would be unfair for PVA's patients (and the government) to have to pay extra for services at a hospital or outpatient clinic—even though Relators are unable to properly defend the jury's verdict. The mistakes that Relators have taken throughout this proceeding are no reason to deprive PVA's patients of local access to critical medical care.

Respectfully submitted,

*<u>/s/ David M. Prichard</u>*
David M. Prichard
State Bar No. 16317900
E-mail: dprichard@prichardyoungllp.com
David R. Montpas
State Bar No. 00794324

E-mail: dmontpas@prichardyoungllp.com
Glenn W. MacTaggart
State Bar No. 12787680
E-mail: gmactaggart@prichardyoungllp.com
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

Sean McKenna
State Bar No. 24007652
smckenna@spencerfane.com
Mark A. Cole
*Admitted Pro Hac Vice*
mcole@spencerfane.com
Lauren M. Nelson
State Bar No. 24058016
lnelson@spencerfane.com
SPENCER FANE LLP
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
Telephone: 214-459-5890
Facsimile: 214-750-3612

Jeff Wurzburg
State Bar No. 24105140
jeff.wurzburg@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone: 210-224-5575
Facsimile: 210-270-7205

***Counsel for Defendant Peripheral Vascular Associates, P.A.***

**CERTIFICATE OF SERVICE**

I certify that on the 6th day of **September 2023,** I submitted the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, using the electronic case files system of the Court. I hereby certify that I have served all counsel of record in the manner authorized by Federal Rule of Civil Procedure 5(b)(2):

*/s/ David Prichard*
David Prichard